**VENABLE LLP**
Ari N. Rothman (SBN 296568)
*anrothman@venable.com*
Allison C. Nelson (SBN 319321)
*acnelson@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

*Attorneys for Defendant*
800-FLOWERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANAYANCY PAIZ, SUSAN FINKBEINER, LARISSA RAPADAS, and TESSIBLE "SKYLER" FOSTER

Plaintiff,

v.

800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY AND DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE

Defendant.

Case No. 23-cv-07441-AB-PVC

Hon. André Birotte Jr.
Courtroom 7B

**DEFENDANT 800-FLOWERS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed Concurrently With Declaration of Alejandro Colman and [Proposed] Order*]

Hearing Date: December 15, 2023
Hearing Time: 10:00 A.M.

Action Filed: September 7, 2023
Trial Date: None Set.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 15, 2023 at 10:00 A.M. or as soon thereafter as the matter may be heard in courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, California, 90012, defendant 800-Flowers, Inc. will and hereby does move the Court to compel plaintiffs Anayancy Paiz and Larissa Rapadas to arbitrate their claims, and to stay this litigation pending completion of their arbitrations. 800-Flowers also requests that the Court dismiss plaintiff Susan Finkbeiner's claims for lack of standing. 800-Flowers is entitled to the relief it seeks pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, Federal Rule of Civil Procedure 12(b)(1), and the legal authorities cited in the accompanying Memorandum of Points and Authorities.

This motion is made on the grounds that plaintiffs Anayancy Paiz and Larissa Rapadas agreed to arbitrate their claims when they purchased their Celebrations Passport memberships on 800-Flowers' website (the memberships over which they sue in their complaint). Additionally, Susan Finkbeiner lacks standing because she purchased her membership outside of California and 800-Flowers is located outside of California. Therefore, California law has no connection to and does not apply to her purchase. She this did not suffer, and could not have suffered, any injury by reason of any alleged violation of California's unfair competition and false advertising laws – the only two laws she invokes in her complaint – and there is no redress for the Court to provide to her.

This motion is based on this notice, the accompanying Memorandum of Points and Authorities, the Declaration of Alejandro Colman, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

***Local Rule 7-3 Compliance***. This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3 which occurred on November 10, 2023.

Dated: November 14, 2023

VENABLE LLP

By: Ari N. Rothman
Allison C. Nelson
*Attorneys for Defendant*
800-FLOWERS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. FACTS ........ 1

III. THE COURT SHOULD COMPEL PAIZ AND RAPADAS TO ARBITRATION ........ 5

A. Legal Standard ........ 5

B. A Valid Agreement to Arbitrate Exists ........ 6

C. Plaintiffs' Claims Fall Squarely Within the Arbitration Agreement's Scope ........ 10

D. The Court Should Stay This Action Pending Resolution of the Arbitration. ........ 12

IV. THE COURT SHOULD DISMISS FINKBEINER BECAUSE SHE LACKS STANDING ........ 12

V. CONCLUSION ........ 15


VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 (1995) .......... 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .......... 10, 11

*Berman v. Freedom Financial Network LLC*, 30 F.4th 849 (9th Cir. 2022) .......... *passim*

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 5

*Capital Grp. Commc'ns Inc. v. Xedar Corp*, No. C–13–01793 EDL, 2013 WL 4013711 (N.D. Cal. Aug. 5, 2013) .......... 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F. 3d 1115 (9th Cir. 2010) .......... 13

*Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126 (9th Cir. 2000) .......... 6

*Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) .......... 5

*DMI v. Med. Security Card Co. LLC*, No. 5:13-CV-00713, 2013 WL 12171848 (C.D. Cal. Oct. 3, 2013) .......... 14

*Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) .......... 12

*Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) .......... 6

*Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113 (Cal. Ct. App. 2015) .......... 11

*Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947 (9th Cir. 2012) .......... 5

*Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 3, 2022) .......... 7

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) .......... 13

*Levya v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857 (9th Cir. 1979) .......... 12

*Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......... 6

*Mayron v. Google LLC*, 54 Cal. App. 5th 566 (2020) .......... 13

*McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855 (N.D. Cal. Mar. 13, 2020) .......... 5

*Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042 (9th Cir. 2009) .......... 10

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) .......... 6, 7, 8, 10

*Patrick v. Running Warehouse, LLC*, No. 2:21-cv-09978-ODW, 2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) .......... 7

*Snow v. Nectar Brand, LLC*, No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) .......... 7

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) .......... 14

*Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .......... 14, 15

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......................................................................13, 15

*U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l Ltd.*,
750 F. 2d 1422 (9th Cir. 1985) ..........................................................................5

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*,
512 F.3d 555 (9th Cir. 2008) ..........................................................................10

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...........................................................13, 15

*Warner v. Tinder Inc.*,
105 F. Supp. 3d at 1095–96 ..............................................................................13

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .....................................................................13, 15

**Statutes**

Business & Professions Code
§§ 17600 *et seq.* ................................................................................................2

Cal. Bus. & Prof. Code
§ 17200 ......................................................................................13, 14, 15
§ 17500 ......................................................................................13, 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...................................................1, 12, 15

U.S. Constitution Article III ..............................................................12, 13, 15

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Anayancy Paiz and Larissa Rapadas agreed to arbitrate their causes of action in their complaint when they purchased Celebrations Passport memberships on defendant 800-Flowers, Inc.'s website. Accordingly, 800-Flowers requests that the Court compel them to arbitrate their claims against 800-Flowers.

If the Court compels Paiz and Rapadas to arbitration then the Court should also stay this action pending resolution of their arbitrations especially if they argue in arbitration that their claims should be litigated in court. Otherwise, the litigation will proceed without them as one plaintiff (Tessible Foster who is not part of this motion) will remain if this motion is granted, thereby leading to duplication and inefficiencies if Paiz and Rapadas return to this Court to litigate their claims.

Additionally, 800-Flowers requests that the Court dismiss plaintiff Susan Finkbeiner's claims under Federal Rule of Civil Procedure 12(b)(1) because she lacks standing. Finkbeiner claims 800-Flowers caused her to suffer injuries by violating California law when it allegedly failed to disclose purchase terms associated with a membership to Celebrations Passport that she purchased. However, she did not suffer, and could not have suffered, any injury by reason of any violation of any California law because she is an Illinois resident who purchased her membership from a New York company. Thus, California law does not apply to her transaction; she could not have been and was not injured by any alleged violation of any California law; and there is no injury for the Court to redress.

## II. FACTS

### A. Celebrations Passport and Plaintiffs' Allegations

Defendant 800-Flowers, Inc. is a leading floral and gift retailer that provides delivery service for flowers and gifts. (Declaration of Alejandro Colman ("Colman Decl."), ¶ 2.) 800-Flowers operates the 1-800-Flowers.com family of brands

website, located at www.1800flowers.com, through which customers can enroll in the Celebrations Passport membership program. (Id.) Celebrations Passport is an annual membership that provides members with free standard shipping and no service charges for one full year on eligible purchases made across the 1-800-Flowers.com family of brands. (Id.) Celebrations Passport also provides members with opportunities to unlock additional perks and benefits. (Id.)

Plaintiffs allege they purchased Celebrations Passport memberships on a website managed by 800-Flowers, and that they incurred automatic renewal fees for Celebrations Passport without consenting to them in violation of California's Automatic Renewal Law codified at Business & Professions Code §§ 17600 *et seq*. (ECF No. 1 at ¶¶ 4, 28–31, 33–35, 34, 71, 81.) They only seek redress for automatic renewal charges they allege they incurred for Celebrations Passport. (Id.) Plaintiffs' only causes of action are for alleged violations of California law. (Id.)

### B. <u>Paiz's and Rapadas' Purchases and Agreements to Arbitrate</u>.

Paiz made a purchase that included Celebrations Passport in 2020 from a desktop computer on the website 1800flowers.com. (Colman Decl. ¶ 3.) To do so, Paiz clicked "PLACE ORDER" as depicted in the following screenshot representative of the screen presented to her when she purchased her membership:




(Colman Decl., ¶ 4.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

The above appeared on the website as follows:

PLACE ORDER

By clicking the "Place Order" button, I agree to be bound by the Terms of Use and Privacy Notice. I have read and agree to the Celebrations Passport Terms and Conditions.

Cart Summary — Return to cart

2 Items — Collapse

| | |
|---|---|
| Merchandise: | $79.98 |
| Passport Shipping: | Passport Free Shipping |
| Total before tax: | $79.98 |
| Taxes: | $5.30 |
| **Order Total** | **$85.28** |

CELEBRATIONS PASSPORT

Has been added to your cart for $29.99
Free Shipping / No Service Charge TODAY and for Year

(Colman Decl., ¶ 5.) Given the layout of the checkout page above, Paiz and others purchasing Celebrations Passport using the screen above could not click "PLACE ORDER" without seeing the following disclosure, also depicted above, in black and blue lettering against a light grey background stating: "By clicking the 'Place Order' button, I agree to be bound by the Terms of Use and Privacy Notice. I have read and agree to the Celebrations Passport Terms and Conditions." (*See id.* ¶¶ 4–7, Ex. A.) Thus, by clicking "PLACE ORDER" on the above screen, Paiz and others who purchased Celebrations Passport this way agreed to the Celebrations Passport Terms of Use, Privacy Notice, and Terms and Conditions.

Rapadas made a purchase that included Celebrations Passport in 2022 from a desktop computer on the website 1800flowers.com and followed the same steps as Paiz. (Colman Decl., ¶¶ 8–9). Thus, she also agreed to the Terms of Use, Privacy Notice, and Terms and Conditions in the same way that Paiz did.

The Terms of Use to which Paiz and Rapadas agreed contain an arbitration provision stating:

> You agree that any and all claims, disputes, controversies, actions or

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

> proceedings relating to, or arising out of, the creation, production, manufacture, distribution, promotion, marketing, advertising (including oral and written statements), use of, exploitation, or sale of any and all products and services of the Company and its Affiliates, through all merchandising channels, including but not limited to the internet, this Service, telephone, catalog, radio, television, mobile device and participating retail stores or the Content (collectively referred to as 'Claims') shall be governed by the internal substantive laws of the State of New York without regard to its conflicts of laws principals and that any and all Claims **shall be resolved exclusively by final and binding arbitration** administered by the American Arbitration Association ('AAA') [or by a state small claims court of competent jurisdiction over the Claim and the parties.]

(Colman Decl., ¶ 7, Ex. A) (emphasis added).

Additionally, the Terms of Use include a severability clause stating:

> If any term or other provision of these Terms of Use are deemed by a final court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law, or public policy, all other terms, conditions and provisions of these Terms of Use shall nevertheless remain in full force and effect to the maximum extent permitted by law. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the court shall modify only the affected term, condition or provision to effect the original intent of the parties as closely as possible so that the contemplated transactions are fulfilled and the Company and its Affiliates are protected to the greatest extent possible.

(Id.)

### D. Susan Finkbeiner's Purchase from Outside California

Finkbeiner made a purchase which included Celebrations Passport in 2020 on the website 1800flowers.com and listed an address in Rockford, Illinois as her residence in connection with this purchase. (Colman Decl., ¶ 10.) No customer named Susan Finkbeiner both purchased Celebrations Passport on 800-Flowers' website and provided a California address when doing so. (Id.) Susan Finkbeiner's profile on 800-Flowers' website lists the same physical address for her in Rockford, Illinois that she provided when she first purchased Celebrations Passport in 2020. (Id.) Additionally, 800-Flowers is a New York company. (ECF No. 1 at ¶ 12). There is thus no connection between California and Finkbeiner's purchase.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

## III. THE COURT SHOULD COMPEL PAIZ AND RAPADAS TO ARBITRATION

### A. Legal Standard

The Federal Arbitration Act "makes enforceable a written arbitration provision 'in a contract evidencing a transaction involving commerce.'" *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268 (1995) (citing 9 U.S.C. § 2). Under the Act, a district court "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Courts may stay the entire action pending resolution of the arbitration. *See U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l Ltd.*, 750 F. 2d 1422, 1427 (9th Cir. 1985).

"The Federal Arbitration Act . . . represents a 'liberal federal policy favoring arbitration agreements.'" *Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, there is a "presumption of arbitration [that] dictates that courts should not deny a motion to compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855, at *3 (N.D. Cal. Mar. 13, 2020) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

"[I]n deciding whether to compel arbitration a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

"When faced with a petition to compel arbitration, the district's court's role is a discrete and narrow one." *Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Further, "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAX), 2012 WL 7683512, at *7 (C.D. Cal. Feb. 24, 2012) (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995)).

### B. A Valid Agreement to Arbitrate Exists

A valid agreement to arbitrate exists under the Ninth Circuit's decision in *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), and the other authorities discussed herein.

In *Oberstein*, users had to click a confirmation button to complete their purchases. *Id.* at 515. The text above each confirmation button told users that by clicking it, they agreed to the defendants' terms of use. *Id.* at 515–16. That text also featured a hyperlink to the terms, which was offset in bright blue font. *Id.* at 516. Considering these features, the Ninth Circuit affirmed the district court's finding that plaintiff agreed to arbitration, and agreed that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* The notice was conspicuously displayed immediately above or below the button to proceed at each stage of purchasing tickets on the defendants' sites. *Id.* Additionally, the notice

clearly told users that clicking each button would manifest intent to be bound to the terms of use. *Id.* Because the defendants' websites gave reasonably conspicuous notice of the terms, and because the plaintiffs manifested their assent by continuing with their purchases, the Ninth Circuit affirmed that the terms were valid and binding. *Id.* at 517.

Other cases are in accord. In *Patrick v. Running Warehouse, LLC*, the court found that the plaintiff had notice of and agreed to the defendants' terms because they were hyperlinked in contrasting font, were located immediately below the "Place Order" button, and clearly told the plaintiff that submitting an order constituted assent. *Patrick v. Running Warehouse, LLC*, No. 2:21-cv-09978-ODW (JEMx), 2022 WL 10584136, at *5–6 (C.D. Cal. Oct. 18, 2022). Likewise, the court in *Snow v. Nectar Brand, LLC* held that the plaintiff agreed to the defendant's terms and conditions when they were hyperlinked immediately above the "Place Order" button and the plaintiff did not uncheck a box stating that she accepted them. *Snow v. Nectar Brand, LLC*, No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544, at *2–3 (C.D. Cal. Mar. 2, 2023). And, applying Ninth Circuit precedent, the court in *Kravets v. Anthropologie, Inc.* found that plaintiff was bound by terms containing arbitration provision even where hyperlinks were bolded and underlined but did not use blue or capital letters to indicate they were clickable and notice stating: "GET FREE SHIPPING NOW *when you sign up for email and texts*." *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712, at *7 (S.D. Fla. June 3, 2022) (applying *Berman v. Freedom Financial Network LLC*, 30 F.4th 849, 855–858 (9th Cir. 2022)).

Here, 800-Flowers gave Paiz and Rapadas reasonably conspicuous notice of its terms of use, and they manifested assent to those terms by continuing with their purchases. Text immediately below the "PLACE ORDER" button informed plaintiffs that by clicking that button they were agreeing to be bound by 800-Flowers' Terms of Use. (Colman Decl., ¶¶ 4–9.) That text featured a hyperlink to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

the Terms of Use, which was underscored and distinguished in bright blue font. (Id.) Like in *Oberstein* and the other cases cited above, a reasonable user would have been able to see the notice and locate the terms of use. *Oberstein*, 60 F.4th at 516. Further, the notice clearly stated that clicking the "PLACE ORDER" button constituted agreement to be bound by the terms. (Id.)

Additionally, the process by which Paiz and Rapadas agreed to arbitration does not contain any of the deficiencies that the Ninth Circuit found in a pre-*Oberstein* decision, *Berman v. Freedom Financial Network LLC*, 30 F.4th 849, 855–858 (9th Cir. 2022). In *Berman*, the Ninth Circuit found that the defendant failed to bind the plaintiff to the arbitration provision because the defendant's webpage "did not provide reasonably conspicuous notice of the terms and conditions." *Id.* at 856. The Court noted the text "is printed in a tiny gray font" that "is so small it is barely legible to the naked eye" and "[t]he comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id.* at 856–57. The Court then noted that "the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.* at 857.

The Court also found that the defendant's webpage failed to provide reasonably conspicuous notice of the terms because the defendant's notice "fail[ed] to clearly denote the hyperlinks." *Id.* The Court offered examples of "[c]ustomary design elements denoting the existence of a hyperlink" including "the use of a contrasting font color (typically blue)." *Id.*

Further, plaintiff "did not take any action that unambiguously manifested [her] assent to be bound by the terms and conditions." *Berman*, 30 F.4th at 857. The webpage stated only "'I understand and agree to the Terms & Conditions,' but [it] did not indicate to the user what action would constitute assent to those terms and conditions" and "the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." *Id.* at 858. Thus, the notice failed to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

"explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement" because it did not explicitly advise the plaintiffs that the act of clicking the button would "constitute assent to the terms and conditions." *Id.* The Court noted that "[t]his notice defect could easily have been remedied by including language such as 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id.*

Here, the process by which 800-Flowers obtained Paiz's and Rapadas' agreement to arbitrate follows *Berman's* guidance and contains none of the deficiencies that the Ninth Circuit identified in that decision. The 800-Flowers website provided reasonably conspicuous notice of the Terms of Use by featuring the notice directly under the "PLACE ORDER" button in easy-to-read black text against a light grey or white background in the same font size as – indeed sometimes larger than – the surrounding text. (Colman Decl., ¶¶ 4–9.) Unlike the webpage in *Berman*, which featured a notice in "tiny gray font" that was "so small it is barely legible to the naked eye," 800-Flowers' notice was clear, conspicuous, legible, and readable. And, rather than drawing the user's attention away from the notice, the design of the webpage is such that the user's attention is drawn *towards* it since it is directly under the green "PLACE ORDER" button and above the order summary with pricing – the most important part of the page. Further, the hyperlinks to the Terms of Use and Terms & Conditions in the notice were both underlined and in blue font, which distinguished them from the rest of the text in the notice. Thus, it was "readily apparent" that the notice contained hyperlinks. *Berman*, 30 F.4th at 857 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2nd Cir. 2017) (finding hyperlinks reasonably conspicuous because they were both in blue and underlined)). These are the exact features that the Court in *Berman* stated would provide conspicuous notice of the hyperlinks. *Id.*

Further, *Berman* held that a disclosure stating "By clicking the Continue >> button, you agree to the Terms & Conditions" would have been sufficient to bind

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

plaintiff to the terms containing the arbitration provision. 30 F.4th at 857. The notice on the 800-Flowers website comports with this guidance as it clearly and expressly states the legal significance of clicking on that button: "By clicking the 'Place Order' button, I agree to be bound by the Terms of Use and Privacy Notice. I have read and agree to the Celebrations Passport Terms and Conditions." (Colman Decl., ¶ 4.)

Accordingly, even under *Berman* – and certainly under *Oberstein* and the other authorities cited herein – a valid agreement to arbitrate exists between Paiz and 800-Flowers and Rapadas and 800-Flowers.

### C. Plaintiffs' Claims Fall Squarely Within the Arbitration Agreement's Scope

When an agreement contains an arbitration clause, a presumption of arbitrability applies, and doubts regarding whether the arbitration clause applies to the particular claims at issue should be resolved in favor of coverage. *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The presumption is particularly strong when the arbitration clause is broad. *Id.* Courts in this circuit have held that the presumption in favor of arbitration applies unless it is rebutted by the language of the agreement at issue. *Capital Grp. Commc'ns Inc. v. Xedar Corp*, No. C–13–01793 EDL, 2013 WL 4013711, at *2–3 (N.D. Cal. Aug. 5, 2013); *see also Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1044 (9th Cir. 2009) ("In determining whether parties have agreed to arbitrate a dispute, we apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'") (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

Where the presumption of arbitrability applies, the court "can only deny arbitration if it can be said 'with positive assurance' that the dispute is 'not susceptible of an interpretation' that would cause it to fall within the arbitration clause." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of*

*ASARCO, Inc.*, 512 F.3d 555, 561 (9th Cir. 2008) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Additionally, arbitration clauses that broadly apply to claims "arising out of or relating to" the agreement are interpreted to cover extracontractual disputes between the parties. *Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113, 119 (Cal. Ct. App. 2015).

Paiz's and Rapadas' claims against 800-Flowers are squarely within the scope of the arbitration provision. Paiz and Rapadas broadly agreed to arbitrate all claims relating to or arising out of the use or sale of any and all of 800-Flowers' products and services through all merchandising channels, including on its website. (Colman Decl. Ex. A.) This unequivocally includes the claims at issue in this lawsuit because Paiz's and Rapadas' claims arise out of 800-Flowers' "sale of" its Celebrations Passport service to them and 800-Flowers' "promotion, marketing, [and] advertising" of the renewal policy for its Celebrations Passport service. (ECF No. 1.) Thus, their claims fall squarely within the scope of the parties' arbitration provision. But even if there were doubts regarding the applicability of the arbitration provision to plaintiffs' claims, any such doubts must be resolved in favor of arbitration. *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Finally, 800-Flowers' terms provide that New York law applies. However, compelling arbitration is required regardless of whether New York or California law applies because the laws of those states are materially identical. *Berman*, 30 F.4th at 855 (noting that either New York or California law governed enforceability of arbitration agreement and that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term") (internal citation and quotations omitted).

Accordingly, because a valid, binding arbitration agreement exists between Paiz and 800-Flowers and Rapadas and 800-Flowers which covers their claims at issue in this case, the Court should compel arbitration of Paiz's and Rapadas' claims.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**D. The Court Should Stay This Action Pending Resolution of the Arbitration.**

The Court may stay an action pending resolution of claims compelled to arbitration. 9 U.S.C. § 3; *Levya v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."). Courts in the Ninth Circuit stay actions where only some of the named plaintiffs are compelled to arbitration. *See, e.g.*, *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379, 2017 WL 253985, at *10 (C.D. Cal. Jan. 19, 2017).

Here, the Court should stay this action pending resolution of the arbitrations especially if Paiz and Rapadas argue in arbitration that their claims should be litigated in court. Otherwise, the litigation will proceed without them as one plaintiff who is not subject to this motion will remain if this motion is granted, thereby leading to duplication and inefficiencies if for some reason Paiz and Rapadas return to this Court to litigate their claims. Meanwhile, the remaining plaintiff (Foster) will not suffer any prejudice; to the contrary, she and her counsel will need to duplicate efforts if Paiz and Rapadas return to court. Thus, to promote judicial efficiency and conserve resources, the Court should stay the action.

## IV. THE COURT SHOULD DISMISS FINKBEINER BECAUSE SHE LACKS STANDING

The court should dismiss Susan Finkbeiner's claims because she lacks standing to pursue her claims under Article III of the U.S. Constitution, as she did not suffer any injury by reason of the causes of action in her complaint.

Under Federal Rule of Civil Procedure 12(b)(1), Courts dismiss claims for

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

lack of subject matter jurisdiction where the plaintiff lacks standing to pursue claims asserted in the complaint. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F. 3d 1115, 1121 (9th Cir. 2010). In deciding a 12(b)(1) jurisdictional challenge, the court "may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Similarly, private individuals only have standing to assert claims under the California's unfair competition law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), and false advertising law, Cal. Bus. & Prof. Code § 17500 (the "FAL"), where they "suffered injury in fact" and "lost money or property as a result of the unfair competition" or false advertising. *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) (citing Bus. & Prof. Code § 17204); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) ("under the false advertising law, in materially identical language, standing extends to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter") (citing Bus. & Prof. Code § 17535). And, "[t]he UCL and FAL limit standing to individuals who suffer losses … that are eligible for restitution." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015). Thus, a plaintiff lacks standing under Article III, the UCL, and the FAL where the plaintiff cannot demonstrate that he or she is entitled to restitutionary relief under the UCL or FAL.

Further, the UCL and FAL (the only two laws over which Finkbeiner sues) do not apply extraterritorially; thus, plaintiffs lack standing to pursue claims for violation of these statutes where they do not reside in California and the transactions underlying their claims took place outside of California. *Warner v. Tinder Inc.*, 105

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

F. Supp. 3d at 1095–96 (plaintiff's UCL and FAL claims failed because "California does not permit extraterritorial application of either statute"); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 2017 (2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force.").

Thus, courts in the Ninth Circuit dismiss UCL and FAL claims for lack of standing where neither party is a citizen of California and the conduct alleged in the complaint occurred outside of California. *DMI v. Med. Security Card Co. LLC*, No. 5:13-CV-00713, 2013 WL 12171848, at *3–4 (C.D. Cal. Oct. 3, 2013) (granting motion to dismiss UCL and FAL claims for lack of standing where neither party was a citizen of California and the alleged misconduct consisted of transactions which took place in New York).

For instance, in *Tidenberg v. Bidz.com*, the court found that a Texas resident lacked standing to pursue UCL and FAL claims against a California company because her alleged injury occurred in Texas given the "reasonable inference" that she accessed the defendant's website from a computer in Texas where she resided. *Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *3 (C.D. Cal. Mar. 4, 2009). The court also found that even though the defendant's principal place of business was in California, the plaintiff failed to allege "any specific facts linking Defendants' contacts with California to the claims." *Tidenberg*, 2009 WL 605249, at *5. As such, the court dismissed the plaintiff's UCL and FAL claims for lack of standing. *Tidenberg*, 2009 WL 605249, at *4–5.

Here, plaintiff Susan Finkbeiner alleges she is a California resident and that she made a purchase on 800-Flowers' website which included Celebrations Passport. (ECF No. 1 at ¶¶ 9, 31.) However, 800-Flowers' records show that when Finkbeiner made her first purchase on its website in 2020 which included Celebrations Passport, she provided an address in Rockford, Illinois for her residence in connection with

this purchase. (Colman Decl., ¶ 10); *see Fox Fam. Worldwide, Inc.*, 328 F.3d at 1141 n.5 (in deciding a 12(b)(1) jurisdictional challenge, the court "may look beyond the complaint and consider extrinsic evidence."). Further, as of the date of this filing, Finkbeiner's profile address remains in Illinois. (Colman Decl., ¶ 10.) And, 800-Flowers is a New York company. (ECF No. 1 at ¶ 12.) As such, this transaction on which she bases her claims occurred in Illinois, not California. *Tidenberg*, 2009 WL 605249, at *3–4 (it was reasonable for court to infer that plaintiff's purchase on defendant's website took place in state where she resided). Accordingly, Finkbeiner lacks standing to assert claims for violation of the UCL and FAL because she cannot sue under these statutes. *See id*. at *3–5.

Given that Finkbeiner's alleged injury occurred outside of California, she is not entitled to pursue restitutionary relief under California law and thus cannot show that her alleged injury can be redressed by judicial relief. She thus lacks Article III standing. *Warner v. Tinder Inc.*, 105 F. Supp. 3d at 1093 ("The UCL and FAL limit standing to individuals who suffer losses … that are eligible for restitution"); *Ramirez*, 141 S. Ct. at 2203 (establishing Article III standing requires showing that the plaintiff's alleged injury "would likely be redressed by judicial relief").

## V. CONCLUSION

For any and all of these reasons, the Court should compel plaintiffs Anayancy Paiz and Larissa Rapadas to arbitrate their claims against 800-Flowers, Inc. and stay this litigation pending the outcome of the arbitrations. The Court should also dismiss the claims brought by Susan Finkbeiner for lack of standing pursuant to Rule 12(b)(1).

Dated: November 14, 2023

VENABLE LLP

By: Ari N. Rothman
Allison C. Nelson
*Attorneys for Defendant*
800-FLOWERS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 14, 2023, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

Ari N. Rothman