**VENABLE LLP**
Ari N. Rothman (SBN 296568)
 *anrothman@venable.com*
Allison C. Nelson (SBN 319321)
 *acnelson@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

*Attorneys for Defendant*
800-FLOWERS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAYANCY PAIZ, LARISSA RAPADAS, TESSIBLE "SKYLER" FOSTER, MARIE SCOTT, KIMBERY MOORE KELLER, KRISTA BAUMBACH, and LATRICIA ANDERSON THOMPSON<br><br>Plaintiffs,<br><br>v.<br><br>800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY AND DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE<br><br>Defendant. | Case No. 23-cv-07441-AB-PVC<br><br>Hon. André Birotte Jr.<br>Courtroom 7B<br><br>**DEFENDANT 800-FLOWERS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently With Declaration of Alejandro Colman and [Proposed] Order*]<br><br>Hearing Date:    March 1, 2024<br>Hearing Time:    10:00 a.m.<br><br>Action Filed:    September 7, 2023<br>Trial Date:    None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 1, 2024 at 10:00 A.M. or as soon thereafter as the matter may be heard in courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, California, 90012, defendant 800-Flowers, Inc. will and hereby does move the Court to compel plaintiffs Anayancy Paiz, Larissa Rapadas, Marie Scott, Kimberly Moore Keller, and LaTricia Anderson Thompson to arbitrate their claims, and to stay this litigation pending completion of their arbitrations. 800-Flowers alternatively requests that the Court dismiss the claims brought by plaintiffs Kimberly Moore Keller and LaTricia Anderson Thompson for lack of standing. 800-Flowers is entitled to the relief it seeks pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, Federal Rule of Civil Procedure 12(b)(1), and the legal authorities cited in the accompanying Memorandum of Points and Authorities.

This motion is made on the grounds that plaintiffs Anayancy Paiz, Larissa Rapadas, Marie Scott, Kimberly Moore Keller, and LaTricia Anderson Thompson agreed to arbitrate their claims and forgo pursuing class claims accepting as true the allegations in the first amended complaint. Alternatively, the Court should dismiss the claims brought by Kimberly Moore Keller and LaTricia Anderson Thompson for lack of subject matter jurisdiction because neither of them where charged the automatic renewal fees that underlie their claims. Thus, they lack standing to pursue the claims they assert in the first amended complaint.

This motion is based on this notice, the accompanying Memorandum of Points and Authorities, the Declaration of Alejandro Colman, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-1-

Case No. 23-cv-07441-AB-PVC                    DEFENDANT 800-FLOWERS, INC.'S MOTION
                                               TO COMPEL ARBITRATION AND STAY CASE
                                               AND MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Local Rule 7-3 Compliance***.  This motion is made following the conferences of counsel pursuant to Central District Local Rule 7-3 which occurred on December 12, 2023 and January 11, 2024.

Dated:  January 18, 2024

VENABLE LLP

By:  _____
      Ari N. Rothman
      Allison C. Nelson
      *Attorneys for Defendant*
      800-FLOWERS, INC.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-2-

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   FACTS ........................................................................................................ 2

III.  THE COURT SHOULD COMPEL PAIZ, RAPADAS, SCOTT, KELLER, AND THOMPSON TO ARBITRATION .................................. 7

    A.    Legal Standard ................................................................................. 7

    B.    A Valid Agreement to Arbitrate Exists............................................ 8

    C.    Plaintiffs' Claims Fall Squarely Within the Arbitration Agreement's Scope ......................................................................... 13

    D.    The Court Should Stay This Action Pending Resolution of the Arbitration.................................................................................... 14

IV.   THE COURT SHOULD DISMISS KELLER AND THOMPSON BECAUSE THEY LACK STANDING ................................................... 15

V.    CONCLUSION........................................................................................ 18

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)................................................................13, 14

*Berman v. Freedom Fin. Network LLC*,
30 F.4th 849 (9th Cir. 2022) ........................................10, 11, 12, 13, 14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................8

*Capital Grp. Commc'ns Inc. v. Xedar Corp*,
No. C–13–01793 EDL, 2013 WL 4013711 (N.D. Cal. Aug. 5, 2013) ...........13

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F. 3d 1115 (9th Cir. 2010) ...............................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ...............................................8

*Davis v. Einstein Noah Rest. Grp., Inc.*,
No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ...........7

*Galvan v. Michael Kors USA Holdings, Inc.*,
No. CV16-07379-BRO, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017)............15

*Guerrero v. Equifax Credit Info. Servs., Inc.*,
No. CV 11-6555 PSG, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) ...........8

*Kaplan v. Athletic Media Co.*,
No. 23-cv-00229-JST, 2023 WL 8587981 (N.D. Cal. Dec. 8, 2023) ...........10, 12

*Khalatian v. Prime Time Shuttle, Inc.*,
188 Cal. Rptr. 3d 113 (Cal. Ct. App. 2015) ..................................13

*Kilgore v. KeyBank, Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012) ................................................7

*Kravets v. Anthropologie, Inc.*,
No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) .................9, 10

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011).......................................................16, 18

*Levya v. Certified Grocers of Cal., Ltd.*,
593 F. 2d 857 (9th Cir. 1979) ...............................................7, 15

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-ii-

DEFENDANT 800-FLOWERS, INC.'S MOTION
TO COMPEL ARBITRATION AND STAY CASE
AND MOTION TO DISMISS

*Lewis v. UBS Fin. Servs.*,
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) ................................................................8

*McKellar v. Mithril Cap. Mgmt. LLC*,
   No. 19-CV-07314-CRB, 2020 WL 1233855 (N.D. Cal. Mar. 13, 2020) ..................8

*Mundi v. Union Sec. Life Ins. Co*,
   555 F.3d 1042 (9th Cir. 2009) ...........................................................................13

*United States ex rel. Newton v. Neumann Caribbean Int'l Ltd.*,
   750 F. 2d 1422 (9th Cir. 1985) ...........................................................................7

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ............................................................8, 9, 10, 13

*Patrick v. Running Warehouse, LLC*,
   No. 2:21-cv-09978-ODW, 2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) .............9

*Snow v. Nectar Brand, LLC*,
   No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) .......9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .........................................................................................18

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...............................................................................16, 18

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*,
   512 F.3d 555 (9th Cir. 2008) .............................................................................13

*Warren v. Fox Fam. Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ...........................................................................16

**Statutes**

Business & Professions Code §§ 17600 *et seq.* ......................................................2, 17

Cal. Bus. & Prof. Code § 17200 .......................................................................16, 17, 18

Cal. Bus. & Prof. Code § 17500 .......................................................................16, 17, 18

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...............................................................1, 16, 18

U.S. Constitution Article III ...............................................................................15, 16, 18

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-iii-

DEFENDANT 800-FLOWERS, INC.'S MOTION
TO COMPEL ARBITRATION AND STAY CASE
AND MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Anayancy Paiz, Larissa Rapadas, Marie Scott, Kimberly Moore Keller, and LaTricia Anderson Thompson agreed to arbitrate the causes of action in their first amended complaint accepting as true their allegations that they each purchased Celebrations Passport membership on an 800-Flowers, Inc. website. Accordingly, 800-Flowers requests that the Court compel them to arbitrate their claims against 800-Flowers.

If the Court compels Paiz, Rapadas, Scott, Keller, and Thompson to arbitrate then the Court should also stay this action pending resolution of their arbitrations especially if they argue to the arbitrator that their claims should be litigated in court. Otherwise, the litigation will proceed without them as two plaintiffs (Tessible Foster and Krista Baumbach, who are not part of this motion) will remain if this motion is granted, thereby leading to duplication and inefficiencies and uncertainties if Paiz, Rapadas, Scott, Keller, and Thompson later return to this Court to litigate their claims.

If the Court does not compel these plaintiffs to arbitrate their claims, then 800-Flowers requests that the Court dismiss the claims brought by plaintiffs Keller and Thompson under Federal Rule of Civil Procedure 12(b)(1) because these plaintiffs lack standing and thus the Court lacks subject matter jurisdiction over their claims. These plaintiffs never incurred any automatic renewal fee—the only fee that plaintiffs challenge and for which they seek redress in this lawsuit—and thus lack standing to pursue their claims, as they did not suffer the injury for which they seek redress in this lawsuit.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Case No. 23-cv-07441-AB-PVC    DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

## II.    FACTS

### A.    Celebrations Passport

Defendant 800-Flowers, Inc. is a leading floral and gift retailer that provides delivery service for flowers and gifts. (Declaration of Alejandro Colman ("Colman Decl."), ¶ 2.)   800-Flowers operates the 1-800-Flowers.com family of brands website, located at www.1800flowers.com, through which customers can enroll in the Celebrations Passport membership program. (Id., ¶¶ 2–3.) Celebrations Passport is an annual membership that provides members with free standard shipping and no service charges for one full year on eligible purchases made across the 1-800-Flowers.com family of brands. (Id., ¶ 2.)   Celebrations Passport also provides members with opportunities to unlock additional perks and benefits. (Id.)

### B.    Plaintiffs' Complaint Contains the Same Fatal Defects as Predecessor Complaints.

Plaintiffs allege they purchased Celebrations Passport memberships on a website managed by 800-Flowers, and that they incurred automatic renewal fees for Celebrations Passport without consenting to them in violation of California's Automatic Renewal Law codified at Business & Professions Code §§ 17600 *et seq*. (ECF No. 20 at ¶¶ 1, 4, 31–36, 40–45, 49–51, 74.)   They only seek redress for automatic renewal charges they allege they incurred for Celebrations Passport. (Id., ¶¶ 83, 93.)   However, Keller and Thompson never incurred any automatic renewal fee for Celebrations Passport memberships or otherwise. (Colman Decl., ¶¶ 13, 18.)   And, Paiz, Rapadas, Scott and Keller agreed to arbitrate their claims.

In fact, plaintiffs' amended complaint is actually the fourth pleading their counsel filed against 800-Flowers alleging that consumers incurred renewal fees supposedly imposed by 800-Flowers.

Initially, plaintiff Damon Tate filed a complaint alleging that 800-Flowers charged him renewal fees for Celebrations Passport even though he agreed to arbitrate his claims and forgo pursuing class claims. (ECF No. 1-2, C.D. Cal. Case

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

No. 2:23-cv-04340-AB-PVC.)  Tate then filed an amended complaint adding four new plaintiffs. (Id. at ECF No. 11.)  In response, 800-Flowers filed a motion to compel arbitration or in the alternative to dismiss, and demonstrated therein that all of the plaintiffs agreed to arbitrate while four of the plaintiffs lacked standing because they did not incur any renewal charges – the only charges they complained about in their amended complaint. (Id. at ECF No. 16.)  These new plaintiffs then voluntarily dismissed their claims. (ECF No. 22.)

Plaintiffs Anayancy Paiz, Susan Finkbeiner, Larissa Rapadas, and Tessible "Skyler" Foster then filed the complaint underlying this lawsuit and made substantially the same allegations that the plaintiffs in the *Tate* litigation raised. (ECF No. 1.)  And, as in the *Tate* litigation, the facts mandated compelling Paiz and Rapadas to arbitrate their claims, and dismissing Susan Finkbeiner's claims because she lacked standing to pursue alleged California law violations given that she purchased her membership outside of California and 800-Flowers is located outside of California. (ECF No. 14.)

Nonetheless, plaintiffs filed their fourth complaint that is the subject of this motion.  In it, they removed Finkbeiner but continue to ignore that Paiz and Rapadas agreed to arbitrate, and added new plaintiffs including Marie Scott, Kimberly Moore Keller, and LaTricia Anderson Thompson.  Yet, Thompson, Keller, Scott and Thompson also agreed to arbitrate their claims while Keller and Thompson did not incur any renewal charges at all.  Indeed, despite repeated requests, plaintiffs failed to prove that Keller or Thompson incurred the renewal charges – the only charges they sue over.  This, in turn, warrants dismissal for the reasons set forth herein.

## C.    Paiz, Rapadas, and Keller Agreed to Arbitrate.

Paiz made a purchase that included Celebrations Passport in 2020 from a desktop computer on the website 1800flowers.com. (Colman Decl., ¶ 3.)  To do so, Paiz clicked "PLACE ORDER" as depicted in the following screenshot representative of the screen presented to her when she purchased her membership:

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-3-

DEFENDANT 800-FLOWERS, INC.'S MOTION TO
COMPEL ARBITRATION AND STAY CASE AND
MOTION TO DISMISS



(Colman Decl., ¶ 4.)

The above appeared on the website as follows:

(Colman Decl., ¶ 5.)  Given the layout of the checkout page above, Paiz and others purchasing Celebrations Passport using the screen above could not click "PLACE ORDER" without seeing the following disclosure, also depicted above, in black and blue lettering against a light grey background stating: "By clicking the 'Place Order' button, I agree to be bound by the Terms of Use and Privacy Notice.  I have read and agree to the Celebrations Passport Terms and Conditions." (*See* Colman Decl., ¶¶ 4–7, Ex. A.)  Thus, by clicking "PLACE ORDER" on the above screen, Paiz and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-4-

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

others who purchased Celebrations Passport in this manner agreed to the Celebrations Passport Terms of Use, Privacy Notice, and Terms and Conditions.

Rapadas made a purchase that included Celebrations Passport in 2022 from a desktop computer on the website 1800flowers.com and followed the same steps as Paiz. (Colman Decl., ¶¶ 8–9.)  Keller made a purchase that included Celebrations Passport in 2021 from a desktop computer on the website 1800flowers.com and also followed the same steps as Paiz. (Id., ¶¶ 13–14.) Thus, Rapadas and Keller also agreed to the Terms of Use, Privacy Notice, and Terms and Conditions in the same way that Paiz did.

The Terms of Use to which Paiz, Rapadas, and Keller agreed contain an arbitration provision stating:

> You agree that any and all claims, disputes, controversies, actions or proceedings relating to, or arising out of, the creation, production, manufacture, distribution, promotion, marketing, advertising (including oral and written statements), use of, exploitation, or sale of any and all products and services of the Company and its Affiliates, through all merchandising channels, including but not limited to the internet, this Service, telephone, catalog, radio, television, mobile device and participating retail stores or the Content (collectively referred to as 'Claims') shall be governed by the internal substantive laws of the State of New York without regard to its conflicts of laws principals and that any and all Claims **shall be resolved exclusively by final and binding arbitration** administered by the American Arbitration Association ('AAA') [or by a state small claims court of competent jurisdiction over the Claim and the parties.]

(Colman Decl., ¶ 7, Ex. A) (emphasis added).

Additionally, the Terms of Use include a severability clause stating:

> If any term or other provision of these Terms of Use are deemed by a final court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law, or public policy, all other terms, conditions and provisions of these Terms of Use shall nevertheless remain in full force and effect to the maximum extent permitted by law. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the court shall modify only the affected term, condition or provision to effect the original intent of the parties as closely as possible so that the contemplated transactions are fulfilled and the Company and its Affiliates are protected to the greatest extent possible.

(Colman Decl., ¶ 7, Ex. A)

## C.  Marie Scott's Agreement to Arbitrate

Scott alleges that she made a purchase on the 1800flowers.com website in July 2020 which included Celebrations Passport. (ECF No. 20 at ¶ 40.)   800-Flowers' records do not reflect any purchase of Celebrations Passport or anything else by plaintiff Marie Scott on one of 800-Flowers' websites. (Colman Decl., ¶ 10.) But if she had purchased Celebrations Passport on 800-Flowers' website via a mobile device, she would have agreed to arbitration in the same manner as Paiz. (Id.)

## D.  LaTricia Anderson Thompson's Agreement to Arbitrate

Thompson also made a purchase that included Celebrations Passport in 2022 from a mobile device on the website 1800flowers.com. (Colman Decl., ¶ 14.) To purchase Celebrations Passport, Thompson clicked "PLACE ORDER" on the following screen representative of the screens presented to Thompson:



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-6-

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

(Colman Decl., ¶ 15.)  As with Paiz, Rapadas, Scott, and Keller, given the layout of the checkout page above, Ms. Thompson and others purchasing Celebrations Passport using the screen above could not click "PLACE ORDER" without seeing the following disclosure, also depicted above, in black lettering against a white background stating: "By clicking the 'Place Order' button, I agree to be bound by the <u>Terms of Use</u> and <u>Privacy Notice</u>." (*See* Colman Decl., ¶¶ 15–17, Ex. C.)  Thus, by clicking "PLACE ORDER" on the above screen, Thompson agreed to the Celebrations Passport Terms of Use containing an arbitration clause and class action waiver. (Id.)

### III.  <u>THE COURT SHOULD COMPEL PAIZ, RAPADAS, SCOTT, KELLER, AND THOMPSON TO ARBITRATION</u>

#### A.  <u>Legal Standard</u>

The Federal Arbitration Act "makes enforceable a written arbitration provision 'in a contract evidencing a transaction involving commerce.'" *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 268 (1995) (citing 9 U.S.C. § 2).  Under the Act, a district court "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Courts may stay the entire action pending resolution of the arbitration. *See United States ex rel. Newton v. Neumann Caribbean Int'l Ltd.*, 750 F. 2d 1422, 1427 (9th Cir. 1985).

"The Federal Arbitration Act . . . represents a 'liberal federal policy favoring arbitration agreements.'" *Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Thus, there is a "presumption of arbitrability [that] dictates that courts should not deny a motion to compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

*McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855, at *3 (N.D. Cal. Mar. 13, 2020) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

"[I]n deciding whether to compel arbitration a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

"When faced with a petition to compel arbitration, the district's court's role is a discrete and narrow one." *Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Further, "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAX), 2012 WL 7683512, at *7 (C.D. Cal. Feb. 24, 2012) (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995)).

### B.    A Valid Agreement to Arbitrate Exists

A valid agreement to arbitrate exists under the Ninth Circuit's decision in *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), and the other authorities discussed herein.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

In *Oberstein*, users had to click a confirmation button to complete their purchases. *Id.* at 515. The text above each confirmation button told users that by clicking it, they agreed to the defendants' terms of use. *Id.* at 515–16. That text also featured a hyperlink to the terms, which was offset in bright blue font. *Id.* at 516. Considering these features, the Ninth Circuit affirmed the district court's finding that plaintiff agreed to arbitration, and agreed that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* The notice was conspicuously displayed immediately above or below the button to proceed at each stage of purchasing tickets on the defendants' sites. *Id.* Additionally, the notice clearly told users that clicking each button would manifest intent to be bound to the terms of use. *Id.* Because the defendants' websites gave reasonably conspicuous notice of the terms, and because the plaintiffs manifested their assent by continuing with their purchases, the Ninth Circuit affirmed that the terms were valid and binding. *Id.* at 517.

Other cases are in accord. In *Patrick v. Running Warehouse, LLC*, the court found that the plaintiff had notice of and agreed to the defendants' terms because they were hyperlinked in contrasting font, were located immediately below the "Place Order" button, and clearly told the plaintiff that submitting an order constituted assent. *Patrick v. Running Warehouse, LLC*, No. 2:21-cv-09978-ODW (JEMx), 2022 WL 10584136, at *5–6 (C.D. Cal. Oct. 18, 2022). Likewise, the court in *Snow v. Nectar Brand, LLC* held that the plaintiff agreed to the defendant's terms and conditions when they were hyperlinked immediately above the "Place Order" button and the plaintiff did not uncheck a box stating that she accepted them. *Snow v. Nectar Brand, LLC*, No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544, at *2–3 (C.D. Cal. Mar. 2, 2023). And, applying Ninth Circuit precedent, the court in *Kravets v. Anthropologie, Inc.* found that plaintiff was bound by terms containing an arbitration provision even where hyperlinks were bolded and underlined, but did not use blue or capital letters to indicate they were clickable and notice stating: "GET

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-9-

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

FREE SHIPPING NOW *when you sign up for email and texts*." *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712, at *7 (S.D. Fla. June 6, 2022) (applying *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 855–858 (9th Cir. 2022)).

Here, 800-Flowers gave Paiz, Rapadas, Scott, Keller, and Thompson reasonably conspicuous notice of its terms of use, and they manifested assent to those terms by continuing with their purchases. Text immediately below the "PLACE ORDER" button informed plaintiffs that by clicking that button they were agreeing to be bound by 800-Flowers' Terms of Use. (Colman Decl., ¶¶ 4–6, 8–16.) That text featured a hyperlink to the Terms of Use, which was underscored and distinguished in bright blue or black font. (Id.) Like in *Oberstein* and the other cases cited above, a reasonable user would have been able to see the notice and locate the terms of use. *Oberstein*, 60 F.4th at 516; *see also Kaplan v. Athletic Media Co.*, No. 23-cv-00229-JST, 2023 WL 8587981, at *3–4 (N.D. Cal. Dec. 8, 2023) (applying *Berman* and holding users had reasonably conspicuous notice of defendant's terms where the terms were hyperlinked in bolded black text). Further, the notice clearly stated that clicking the "PLACE ORDER" button constituted agreement to be bound by the terms. (Colman Decl., ¶¶ 4–6, 8–16.)

Additionally, the process by which Paiz, Rapadas, Scott, and Keller agreed to arbitration does not contain any of the deficiencies that the Ninth Circuit found in a pre-*Oberstein* decision, *Berman v. Freedom Financial Network LLC*, 30 F.4th 849 (9th Cir. 2022). In *Berman*, the Ninth Circuit found that the defendant failed to bind the plaintiff to the arbitration provision because the defendant's webpage "did not provide reasonably conspicuous notice of the terms and conditions." *Id.* at 856. The Court noted the text "is printed in a tiny gray font" that "is so small it is barely legible to the naked eye" and "[t]he comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id.* at 856–57. The Court then noted that "the textual notice is further deemphasized by the overall design of

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-10-

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.* at 857.

The Court also found that the defendant's webpage failed to provide reasonably conspicuous notice of the terms because the defendant's notice "fail[ed] to clearly denote the hyperlinks." *Id.* The Court offered examples of "[c]ustomary design elements denoting the existence of a hyperlink" including "the use of a contrasting font color (typically blue)." *Id.*

Further, plaintiff "did not take any action that unambiguously manifested [her] assent to be bound by the terms and conditions." *Berman*, 30 F.4th at 857. The webpage stated only "'I understand and agree to the Terms & Conditions,' but [it] did not indicate to the user what action would constitute assent to those terms and conditions" and "the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." *Id.*, 30 F.4th at 858. Thus, the notice failed to "explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement" because it did not explicitly advise the plaintiffs that the act of clicking the button would "constitute assent to the terms and conditions." *Id.* The Court noted that "[t]his notice defect could easily have been remedied by including language such as 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id.*

Here, the process by which 800-Flowers obtained Paiz's, Rapadas's, Scott's, and Keller's agreement to arbitrate follows *Berman's* guidance and contains none of the deficiencies that the Ninth Circuit identified in that decision. The 800-Flowers website provided reasonably conspicuous notice of the Terms of Use by featuring the notice directly under the "PLACE ORDER" button in easy-to-read black text against a light grey or white background in the same font size as – indeed sometimes larger than – the surrounding text. (Colman Decl., ¶¶ 4–6, 8–16.) Unlike the webpage in *Berman*, which featured a notice in "tiny gray font" that was "so small it is barely legible to the naked eye," 800-Flowers' notices were clear, conspicuous,

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

legible, and readable.  And, rather than drawing the user's attention away from the notice, the design of the webpage is such that the user's attention is drawn *towards* it since it is directly under the green "PLACE ORDER" button and above the order summary with pricing – the most important part of the page.  Further, the hyperlinks to the Terms of Use and Terms & Conditions in the notice were both underlined and in blue font, which distinguished them from the rest of the text in the notice.  Thus, it was "readily apparent" that the notice contained hyperlinks. *Berman*, 30 F.4th at 857 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2nd Cir. 2017) (finding hyperlinks reasonably conspicuous because they were both in blue and underlined)).  These are the exact features that the Court in *Berman* stated would provide conspicuous notice of the hyperlinks. *Id.*

Additionally, applying *Berman*, the Court in *Kaplan* held that web users had reasonably conspicuous notice of a defendant's terms even where the hyperlinks to the terms were the same color as the text in the rest of the notice. *Kaplan*, 2023 WL 8587981, at *1, 3–4 (applying *Berman* and holding users had reasonably conspicuous notice of defendant's terms where the terms were hyperlinked in bolded black text).  Thus, the screen presented to Thompson also provided her and other users presented with that screen with reasonably conspicuous notice of 800-Flowers' terms. *Id.*; (Colman Decl., ¶¶ 15–16.)

Further, *Berman* held that a disclosure stating "By clicking the Continue >> button, you agree to the Terms & Conditions" would have been sufficient to bind plaintiff to the terms containing the arbitration provision. 30 F.4th at 858.  The notice on the 800-Flowers website comports with this guidance as it clearly and expressly states the legal significance of clicking on that button: "By clicking the 'Place Order' button, I agree to be bound by the Terms of Use and Privacy Notice.  I have read and agree to the Celebrations Passport Terms and Conditions" (Colman Decl., ¶ 4); and "By clicking the 'Place Order' button, I agree to be bound by the Terms of Use and Privacy Notice" (Colman Decl., ¶ 15.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-12-

Accordingly, even under *Berman* – and certainly under *Oberstein* and the other authorities cited herein – a valid agreement to arbitrate exists between 800-Flowers and Paiz, Rapadas, Scott, Keller, and Thompson, respectively.

C.    **Plaintiffs' Claims Fall Squarely Within the Arbitration Agreement's Scope**

When an agreement contains an arbitration clause, a presumption of arbitrability applies, and doubts regarding whether the arbitration clause applies to the particular claims at issue should be resolved in favor of coverage. *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  The presumption is particularly strong when the arbitration clause is broad. *Id.*  Courts in this circuit have held that the presumption in favor of arbitration applies unless it is rebutted by the language of the agreement at issue. *Capital Grp. Commc'ns Inc. v. Xedar Corp*, No. C–13–01793 EDL, 2013 WL 4013711, at *2–3 (N.D. Cal. Aug. 5, 2013); *see also Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1044 (9th Cir. 2009) ("In determining whether parties have agreed to arbitrate a dispute, we apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'") (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

Where the presumption of arbitrability applies, the court "can only deny arbitration if it can be said 'with positive assurance' that the dispute is 'not susceptible of an interpretation' that would cause it to fall within the arbitration clause." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 561 (9th Cir. 2008) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).  Additionally, arbitration clauses that broadly apply to claims "arising out of or relating to" the agreement are interpreted to cover extracontractual disputes between the parties. *Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113, 119 (Cal. Ct. App.

-13-

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

2015).

Paiz's, Rapadas's, Scott's, Keller's, and Thompson's claims against 800-Flowers fall squarely within the scope of the arbitration provision. These plaintiffs broadly agreed to arbitrate all claims relating to or arising out of the use or sale of any and all of 800-Flowers' products and services through all merchandising channels, including on its website. (Colman Decl., Exs. A–C.) This unequivocally includes the claims at issue in this lawsuit because Paiz's, Rapadas's, Scott's, Keller's, and Thompson's claims arise out of 800-Flowers' "sale of" its Celebrations Passport service to them and 800-Flowers' "promotion, marketing, [and] advertising" of the renewal policy for its Celebrations Passport service. (Colman Decl., Exs. A–C.) Thus, their claims fall squarely within the scope of the parties' arbitration provision. But even if there were doubts regarding the applicability of the arbitration provision to these plaintiffs' claims, any such doubts must be resolved in favor of arbitration. *AT & T Techs.*, 475 U.S. at 650.

Finally, 800-Flowers' terms provide that New York law applies. However, compelling arbitration is required regardless of whether New York or California law applies because the laws of those states are materially identical. *Berman*, 30 F.4th at 855 (noting that either New York or California law governed enforceability of arbitration agreement and that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term") (internal citation and quotations omitted).

Accordingly, because a valid, binding arbitration agreement exists between 800-Flowers and Paiz, Rapadas, Scott, Keller, and Thompson, respectively, which covers their claims at issue in this case, the Court should compel arbitration of these plaintiffs' claims.

**D.** **The Court Should Stay This Action Pending Resolution of the Arbitration.**

The Court may stay an action pending resolution of claims compelled to

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

arbitration. 9 U.S.C. § 3; *Levya v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857, 863–64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."). Courts in the Ninth Circuit stay actions where a plaintiff is compelled to arbitration. *See, e.g.*, *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV16-07379-BRO (AFMx), 2017 WL 253985, at *10 (C.D. Cal. Jan. 19, 2017).

Here, the Court should stay this action pending resolution of the arbitrations especially if Paiz, Rapadas, Scott, Keller, and Thompson argue to the arbitrator in arbitration that their claims should be litigated in court. Otherwise, the litigation will proceed without them as two plaintiffs who are not subject to this motion will remain if this motion is granted, thereby leading to duplication and inefficiencies if for some reason Paiz, Rapadas, Scott, Keller, and Thompson return to this Court to litigate their claims. Meanwhile, the remaining plaintiffs (Foster and Baumbach) will not suffer any prejudice; to the contrary, they and their counsel will need to duplicate efforts if Paiz, Rapadas, Scott, Keller, and Thompson return to court. Thus, to promote judicial efficiency and conserve resources, the Court should stay the action.

## IV.    THE COURT SHOULD DISMISS KELLER AND THOMPSON BECAUSE THEY LACK STANDING

The court should alternatively dismiss Keller's and Thompson's claims because they lack standing to pursue their claims under Article III of the U.S. Constitution and under California's unfair competition and false advertising laws, as they did not incur any automatic renewal fees – the only fees for which they seek redress in their amended complaint.

DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Under Federal Rule of Civil Procedure 12(b)(1), the Court can dismiss claims for lack of subject matter jurisdiction where the plaintiff or plaintiffs lack standing to pursue claims asserted in the complaint. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F. 3d 1115, 1121 (9th Cir. 2010).  In deciding a 12(b)(1) jurisdictional challenge, the court "may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (internal citation and quotations omitted).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  A statutory violation does not automatically give rise to an injury sufficient to confer Article III standing; indeed, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Id.* at 2205 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Further, where an action involves class allegations, "[e]very class member must have Article III standing in order to recover individual damages." *Ramirez*, 141 S. Ct. at 2208.

Similarly, private individuals only have standing to assert claims under California's unfair competition law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), and false advertising law, Cal. Bus. & Prof. Code § 17500 (the "FAL"), where they "suffered injury in fact" and "lost money or property as a result of the unfair competition" or false advertising. *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) (citing Bus. & Prof. Code § 17204); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) ("under the false advertising law, in materially identical language, standing extends to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter'") (citing Bus. & Prof. Code § 17535). There must also be a causal link between the alleged unlawful practice and the plaintiff's loss. *Mayron*, 54 Cal. App. 5th at 574.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

In *Mayron*, the plaintiff alleged that Google violated California's automatic renewal law by failing to adequately disclose that it would charge him a recurring monthly fee for a subscription to its "Google Drive" product and by making it difficult to cancel the subscription. *Id.* at 570, 574. The plaintiff brought a UCL claim against Google based on these allegations. *Id.* In considering whether the plaintiff had standing under the UCL, the court noted that the "relevant inquiry . . . is whether a defendant's unlawful conduct caused the plaintiff to part with money." *Id.* at 575. As such, in that case, whether the plaintiff had standing under the UCL was predicated upon two inquiries: whether Google's failure to adequately disclose that Google Drive subscriptions would automatically renew each month "caused plaintiff to spend money he otherwise would not have spent," or whether its "failure to provide an easy cancellation mechanism caused plaintiff to continue to spend money on a service he would have discontinued." *Id.* The court held that the plaintiff lacked standing under the UCL because he failed to show a causal link between payments he made for his Google Drive subscription and Google's alleged violations of the automatic renewal law. *Id.* at 574–75.

Here, plaintiffs allege that they purchased subscriptions to 800-Flowers' Celebrations Passport program and were charged automatic renewal fees without adequate notice or consent in violation of California's automatic renewal law, Cal. Bus. & Prof. Code § 17600. (ECF No. 20, ¶¶ 1, 4, 31–36, 40–45, 49–51, 74.) Based on these allegations, plaintiffs assert claims for violation of the UCL and the FAL. *See generally* Id.; *see also Mayron*, 54 Cal. App. 5th at 574 ("Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competition practices") (internal citation and quotations omitted). For these claims, plaintiffs seek restitution only of the amounts they allege they paid in autorenewal fees caused by alleged violations of California's automatic renewal law. ECF No. 20, ¶ 83 (seeking an order "requiring Defendant to make restitution to Plaintiffs and the Class" in connection with UCL claim); *id.* at ¶ 93 (seeking

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

-17-

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

1    "restitution that will restore the full amount of [plaintiffs'] money or property"), *id.*

2    at Prayer for Relief, ¶ E (requesting an "order of restitution and all other forms of

3    equitable monetary relief").

4    However, Keller and Thompson lack standing under Article III, the UCL, the

5    FAL, and *Mayron* to pursue the claims asserted in the complaint because neither of

6    them were ever charged an autorenewal fee for a Celebrations Passport subscription.

7    (Colman Decl., ¶¶ 13, 18.)  Thus, like the plaintiff in *Mayron*, these plaintiffs did

8    not suffer any injury caused by any violation of California's autorenewal law.

9    *Mayron*, 54 Cal. App. 5th at 575–76; *Kwikset Corp.*, 51 Cal. 4th at 322. Indeed, they

10   did not suffer any injury at all. Accordingly, these individuals suffered no injury in

11   fact that is traceable to any conduct by 800-Flowers or any violation of California's

12   automatic renewal law, or that can be redressed by judicial relief. *Ramirez*, 141 S.

13   Ct. at 2203. As such, they lack standing to maintain their claims. *Id.*; *Spokeo, Inc.*,

14   578 U.S. at 338. Accordingly, the Court should dismiss the claims brought by Keller

15   and Thompson under Federal Rule of Civil Procedure 12(b)(1).

16   ## V.    CONCLUSION

17   For any and all of these reasons, the Court should compel plaintiffs Anayancy

18   Paiz, Larissa Rapadas, Marie Scott, Kimberly Moore Keller, and LaTricia Anderson

19   Thompson to arbitrate their claims against 800-Flowers, Inc. and stay this litigation

20   pending the outcome of the arbitrations.  The Court should alternatively dismiss the

21   claims brought by Keller and Thompson for lack of standing pursuant to

22   Rule 12(b)(1).

23   Dated:  January 18, 2024                    VENABLE LLP

24

25                                    By:       Ari N. Rothman

26                                              Allison C. Nelson
                                                *Attorneys for Defendant*
27                                              800-FLOWERS, INC.

28

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2024, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

_____
Ari N. Rothman

-19-

Case No. 23-cv-07441-AB-PVC          DEFENDANT 800-FLOWERS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE AND MOTION TO DISMISS

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900