Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:      fhedin@hedinllp.com

*Counsel for Plaintiffs and*
*the Proposed Settlement Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSIBLE "SKYLER" FOSTER; MARIE SCOTT; and KRISTA BAUMBACH, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-07441-AB-PVC |
| Plaintiffs, | Motion and Memorandum of Points/Authorities in Support of Preliminary Approval of the Proposed Class Action Settlement |
| V. | **Judge: Hon. André Birotte, Jr.** **Date: September 27, 2024 at 10:00 a.m.** |
| 800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY & DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE, | |

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ............................................................................................... 3

    A.   California's Autorenewal Statute .............................................................. 3

    B.   History of this Litigation ........................................................................... 7

III.   TERMS OF THE SETTLEMENT ................................................................. 10

    A.   Class Definition ........................................................................................ 10

    B.   Monetary Relief ........................................................................................ 11

    C.   Class Notice And Settlement Administration ...................................... 12

    D.   Service Award For Class Representative And Attorneys' Fees For Class Counsel ...................................................................................................... 14

    E.   Objections And Opt-Out Rights ............................................................ 14

    F.   Release Of Liability .................................................................................. 15

IV.   THE CLASS ACTION SETTLEMENT APPROVAL PROCESS ................... 15

V.    ARGUMENT .................................................................................................. 16

    A.   The Settlement Should Be Preliminarily Approved ........................... 16

       1.   The Settlement Provides Substantial Relief To The Settlement Class, Particularly Given The Risks Posed By Continued Litigation ................... 17

       2.   Continued Litigation Would Be Complex, Costly, And Lengthy ................. 23

       3.   Proposed Class Counsel Are Competent, Well-Informed And Experienced, And Strongly Endorse The Settlement ........................................ 24

       4.   The Settlement Is The Product Of A Thorough Investigation, Efficiently Prosecuted Litigation, And Arm's-Length Negotiations .............................. 25

    B.   The Settlement Class Should Be Provisionally Certified For Settlement Purposes .................................................................................................... 26

       1.   The Requirements Of Rule 23(A) Are Satisfied ........................................ 27

          A.   Numerosity ..................................................................................... 27

          B.   Commonality ................................................................................... 27

          C.   Typicality ........................................................................................ 28

          D.   Adequacy Of Representation ........................................................ 29

i

2.    The Requirements Of Rule 23(B)(3) Are Satisfied ...................... 30

    A.    Common Questions Predominate .................................................. 30

    B.    Class Treatment Of Plaintiffs' Claims Is Superior ...................... 31

C.    Plaintiffs' Counsel Should Be Appointed Class Counsel ........................ 32

D.    The Court Should Approve the Proposed Notice Plan .......................... 33

E.    The Court Should Schedule the Final Approval Hearing ......................... 37

VI.    CONCLUSION ...................................................................................... 37

## TABLE OF AUTHORITIES

**Cases**                                                                                  Page(s)

*Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ....................................................................................... 25

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ....................... 28

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................... 26, 29, 30

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .................. 24

*Borcea v. Carnival Corp.*, 238 F.R.D. 664 (S.D. Fla. 2006) ..................................... 23

*Cabiness v. Educational Fin. Solutions, LLC*, No. 16-cv-1109-JST, 2018 WL 3108991 (N.D. Cal. June 25, 2018) ........................................................... 32

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) .............................. 26

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ..................................................... 23

*Custom LED, LLC v. eBay, Inc.*, No. 12-cv-350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013). ................................................................................................. 19

*Davis v. Birchbox Inc.*, No. 3:15-cv-00498-BEN-BGS (S.D. Cal., Mar. 28, 2016). .. 19

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................ 28

*Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005) ........................ 28

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................... 31

ii

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir.1998) ............................................ 16

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ........................................................................................................ 25

*In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................................................................................................... 25

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................. 19

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................. 22

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) .................. 24

*Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES (C.D. Cal.) . 17, 18, 19, 27

*Lane v. Facebook,* 696 F.3d 811 (9th Cir. 2012) ..................................... 15, 16, 17, 24

*Lloyd et al. v. Eaze Solutions, Inc.*, No. 18-cv-5176-JD (N.D. Cal.) ......................... 32

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ................................................................................ 30

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................... 33

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................................................. 22

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015 ............................................ 19, 27

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) ................................................................. 15, 16, 17, 23

*Rivera et al. v. Google,* LLC, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) ...................................................................................................................... 32

*Roach v. T.L Cannon Corp.*, 773 F.3d 401 (2d Cir. 2015) ....................................... 30

*Rodriguez v. W. Publishing*, 563 F.3d 948 (9th Cir. 2009) ....................................... 25

*Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .................................................................................................................. 20

*Tate v. 800-Flowers, Inc.,* No. 2:23-cv-04340-AB-PVC (C.D. Cal.) .................... 7, 20

iii

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................ 16

*Touhey v. United States*, No. 08-cv-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............................................................................................................ 36

*True Health Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923 (9th Cir. 2018) ............................................................................................................ 30

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ........................................... 29

Van v. LLR, Inc., 962 F.3d 1160, 1164 (9th Cir. 2020). ........................................... 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 27

*Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD (N.D. Cal., Feb. 3, 2017). ....... 19

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............... 30

## Statutes

28 U.S.C. § 1715 ...................................................................................... 13, 36

Cal Bus. & Prof. Code § 17601 .................................................................... 4, 27

Cal. Bus. & Prof. Code § 17603 ....................................................................... 27

Cal. Bus. & Prof. Code § 17200, *et. seq.* ........................................................... 1

Cal. Bus. & Prof. Code § 17600, *et. seq.* ................................................... passim

Cal. Bus. Prof. Code § 17602 ............................................................ 4, 6, 27, 30

Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 ........ 13

## Rules

Fed. R. Civ. P. 23(a)(1) ................................................................................... 26

Fed. R. Civ. P. 23(a)(2) ................................................................................... 27

Fed. R. Civ. P. 23(a)(3) ................................................................................... 28

Fed. R. Civ. P. 23(a)(4) ................................................................................... 28

Fed. R. Civ. P. 23(c)(2) ................................................................................... 33

Fed. R. Civ. P. 23(e)(1) ................................................................................... 33

Fed. R. Civ. P. 23 ........................................................................................... 16

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Fed. R. Civ. P. 23(g) ............................................................................ 31, 32

Rule 23(a) ................................................................................................... 26

Rule 23(b)(3) ........................................................................................ 26, 29

Rule 23(e)(1)( ............................................................................................. 32

**Treatises**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed.
  2002) ................................................................................................ 15, 25

California Bill Analysis, S.B. 340 Sen., 4/21/2009. ....................................... 3

David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.63 ............... 15, 33

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs Tessible "Skyler" Foster, Marie Scott, and Krista Baumbach, hereby move for preliminary approval of the class-wide Settlement Agreement (attached as Exhibit "1" to the Declaration of Frank S. Hedin ("Hedin Decl.") submitted concurrently herewith) entered into between Plaintiffs and Defendant 800-Flowers, Inc. ("Flowers") (collectively, the "Parties").[1]

# I.   INTRODUCTION

This is a putative class action that alleges Defendant engaged in an "automatic renewal" program with respect to its Celebrations Passport product that Defendant sells on its network of websites and through other channels, including its telephone lines, that plaintiffs contend violated California law.  Defendant is a retailer of flowers and gifts.  Defendant's Celebrations Passport is a membership program that provides customers free shipping and no service fees for the first year of enrollment at a cost of approximately $19.99 that then automatically renews every year after the initial year at a higher price plus tax (the "Automatic Renewal Fee") charged to the consumer's stored credit card, debit card or third-party payment account. Plaintiffs alleged in the operative Second Amended Class Action Complaint ("SAC") (ECF No. 45) that before Defendant charged the Automatic Renewal Fees, it not only failed to obtain Plaintiffs' and other California consumers' consent to be charged these fees, but Defendant failed to even disclose the existence of the fee to them in a clear and conspicuous manner.  The SAC further alleges that by assessing the Automatic Renewal Fees to Plaintiffs and other California consumers without providing adequate notice or obtaining the requisite consent, Defendant violated California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et. seq*. and that such violation, in turn, was a violation of California's Unfair Competition Law, Cal. Bus.

---

[1]    Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

& Prof. Code § 17200, *et. seq*.  The SAC sought as relief, among other things, damages, injunctive relief, and an award of attorneys' fees.

Defendant denies liability and has vigorously defended the litigation.  Indeed, this litigation has spanned two filed actions, has involved multiple motions to compel various representative plaintiffs in these actions to arbitration, multiple amended complaints and related motions, document discovery, consultation with retained experts, and hours of conferral amongst the Parties, all of which culminated in a day-long mediation that ultimately yielded the proposed Settlement.  Plaintiffs' counsel thoroughly investigated the claims alleged in this action, including reviewing the Celebrations Passport accounts of numerous members of the Settlement Class and assessing Defendant's practices with respect to the sales of Celebrations Passport, presentation of autorenewal terms, and the methods of autorenewal of Celebrations Passport at various times.

The considerable time and resources Plaintiffs and their counsel devoted to this case, in advance of ever discussing settlement with Defendant, allowed them to meaningfully assess the strengths and weaknesses of the Settlement Class's claims, the risks posed by continued litigation, and the benefits that might be realized for the Settlement Class through early resolution.

Settlement negotiations proceeded against that backdrop.  The Parties resolved the case through arm's length negotiation in a full-day mediation before Jill Sperber, Esq. of Judicate West, a mediator with substantial experience mediating complex civil actions, including consumer class actions.

The proposed Settlement reached by the Parties provides fair, reasonable, and adequate relief to the Settlement Class, in a timely and efficient manner.  Confirmatory discovery has shown that there are approximately 112,000 members of the Settlement Class.  Defendant has agreed to fund a non-reversionary Common Fund in the amount of $1,200,000.00 from which each Settlement Class Member who does not exclude

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

him or herself will be <u>automatically paid a *pro rata* Settlement Share without the need
to file a claim form</u>.  Attorneys' fees not to exceed $300,000.00 (25% of the Settlement
Fund), Service Awards for the each of the representative Plaintiffs in the amount of
$2,500.00, the reimbursement of reasonable litigation costs not to exceed $14,000.00,
and Notice and Administration Costs to be paid to the proposed Settlement
Administrator, Kroll Settlement Administration, LLC ("Kroll") shall be paid from the
Common Fund.  It is estimated that if the Settlement is finally approved, each
Settlement Class Member who does not opt out will automatically receive between
$6.91 and $6.99.

   If approved, the Settlement will provide relief to the Settlement Class in an
expeditious manner – an eminently fair, reasonable, and adequate resolution to this
litigation.  Accordingly, Plaintiffs respectfully request that the Court (1) preliminarily
approve the Settlement, (2) provisionally certify the proposed Settlement Class and
appoint Plaintiffs as class representatives and their counsel as Class Counsel, (3)
approve the proposed Settlement Class Notice Program, and appoint Kroll as the
Settlement Administrator, (4) establish a procedure and timetable for the Settlement
administration, and (5) set a Final Approval Hearing date.

## II.    BACKGROUND

### A.    California's Autorenewal Statute

   California passed the ARL, Cal. Bus. Prof. Code §17600, *et. seq* in 2009.  The
ARL's purpose is "to end the practice of ongoing charging of consumer credit or debit
cards or third-party payment accounts without the consumers' explicit consent for
ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. Prof. Code
§ 17600.  The ARL was passed to address "increasingly common" consumer
complaints of unwanted charges for products or services consumers did not explicitly
request or know they agreed to, "often the result of agreements enumerated in the 'fine

print' on an order or advertisement that the consumer responded to."  California Bill

Analysis, S.B. 340 Sen., 4/21/2009.

Under the ARL, an "automatic renewal means a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. Prof. Code § 17601(a).  The ARL requires that the disclosure of certain facts pertaining to an automatic renewal (the "automatic renewal offer terms") be "clear and conspicuous" – specifically, that prior to purchase, a customer be advised that a subscription agreement will continue until a customer cancels; of the length of the automatic renewal term; that customers' credit, debit, or third-party payment information will be automatically charged on a recurring basis; any material changes (including price increases); and of the cancellation policy. Cal. Bus. Prof. Code § 17601(b).  As defined by the statute, "'[c]lear and conspicuous' or 'clearly conspicuous' means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. In the case of an audio disclosure, 'clear and conspicuous' and 'clearly and conspicuously' means in a volume and cadence sufficient to be readily audible and understandable."  Cal. Bus. & Prof. Code § 17601(c).

The ARL makes it unlawful for a business to (1) make an automatic renewal offer that fails to present the "automatic renewal offer terms" in a "clear and conspicuous manner" "before the subscription or purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity . . . to the request for consent to the offer"; and (2) to charge the consumer's Payment Method without first obtaining the consumer's "affirmative consent" to the automatic renewal.  Cal. Bus. Prof. Code § 17602(a)(1) & (2).  Additionally, under the ARL, if "the consumer accepted an automatic renewal offer or continuous service offer with an

initial term of one year or longer, that automatically renews unless the consumer cancels the automatic renewal or continuous service," then "notice shall be provided at least 15 days and not more than 45 days before the automatic renewal offer or continuous service offer renews."  Cal Bus. & Prof. Code § 17601(b)(2).

**B.    The SAC's Allegations Concerning the Autorenewal of Celebrations Passport**

Defendant 800-Flowers, Inc. is a retailer that operates a family of brands for special occasion flower deliveries and gift giving.  (SAC ¶ 19).   Defendant offers the "Celebrations Passport" program across most of its brands.[2] Celebrations Passport is a membership program that provides customers free shipping and no service fees for the first year at a cost of $19.99, which then automatically renews every year after the initial year at a cost of $29.99 plus tax (the "Automatic Renewal Fee") charged to the consumer's stored credit card, debit card or third-party payment account (collectively the "Payment Method").  (SAC ¶ 19).  Plaintiffs are California consumers who each purchased Celebrations Passport.  (SAC ¶¶ 27-40).

Defendant sells Celebrations Passport through different channels, including by phone and online (including its websites and mobile apps). (SAC ¶ 22). The SAC alleges that Defendant has used various means to induce customers to add the Celebrations Passport to their orders, including, for example, automatically adding Celebrations Passport to customers' orders without customers requesting Celebrations Passport be added.  (*Id.*)

The SAC further alleges that regardless of the means Defendant has used to induce consumers to purchase the Celebrations Passport, Defendant has uniformly

---

[2]    Defendants sold Celebrations Passport through sales channels for the following brands:  1-800-Flowers.com, Harry & David, Personalization Mall, Shari's Berries, 1-800-Baskets.com, Simply Chocolate, Fruit Bouquets.com, Cheryl's Cookies, the Popcorn Factory, Wolferman's Bakery, and Vital Choice.  (SAC, ¶¶ 19-20).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

failed to disclose the key, statutorily required autorenewal terms, in a clear and conspicuous manner, ***prior to*** the customer's completion of the order process – namely: (a) the fact that the Celebrations Passport automatically renews, (b) that the renewal fee is $29.99, $10.00 higher than the introductory fee, and (c) that the customer's stored payment method will be charged every year.  (SAC ¶ 22).

To the extent the checkout process on Defendant's websites, phone lines, and other sales channels included the necessary automatic renewal terms, plaintiffs allege these disclosures were not "clear and conspicuous" as required under the ARL and, as such, did not manifest a customer's consent to the autorenewal terms.  (SAC ¶ 23). Plaintiffs allege that to capture more revenue per transaction, Defendant designed its order processes to present the terms of the Celebrations Passport in an intentionally inconspicuous manner, including by hiding the fact that Celebrations Passport is automatically renewed each year and that a customer's stored Payment Method will be automatically charged each year (and that the customer can cancel at any time). (*Id.*) The SAC alleges that Defendant displays such language in font type that is smaller than and not otherwise in contrast to surrounding text, and not otherwise in a manner that clearly calls attention to such language, and, that with respect to its sales of Celebrations Passport by telephone that such disclosures were not made in a volume or cadence sufficient to be readily audible or understandable.  (SAC ¶ 24).

The SAC further alleges that Defendant concealed that Celebrations Passport is automatically renewed each year and that a customer's stored Payment Method will be automatically charged each year (and that the customer can cancel at any time). It also alleged that Defendant falsely represented to consumers that the product costs $19.99/year when in fact it renews every year after the initial year at the price of $29.99 plus tax.  (SAC ¶ 25).  Additionally, Plaintiffs allege that once a customer is enrolled in the Celebrations Passport, Defendant does not send those customers a notice between 15 and 45 days before Celebrations Passport automatically renews for

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

another year, as required under Cal. Bus. & Prof. Code § 17602(b)(2), even though Defendant previously obtained these customers' mailing addresses, email addresses, and phone numbers at the time of their initial purchases and could thus readily provide them with such notices.  (SAC ¶ 26).

### C.    History of this Litigation

On April 20, 2023, after extensive prefiling investigation, Damon Tate, represented by the undersigned, filed a putative class action against Defendant in the Superior Court of Los Angeles County styled *Tate v. 800-Flowers, Inc.*, alleging, as here, that Defendant violated the ARL in connection with its Celebrations Passport customer loyalty program.

At all times thereafter, Defendant vigorously defended the litigation.  It removed the case to the Central District of California, whereupon the case was assigned case number 2:23-cv-04340-AB-PVC (C.D. Cal. filed June 2, 2024).  (*Tate*, ECF No. 1).  On August 7, 2023, Defendant filed a motion to compel each of the *Tate* plaintiffs to arbitration, stay the case pending arbitration, strike class claims, and to dismiss the several of the *Tate* plaintiffs for lack of standing.  (*Tate*, ECF No. 16).  On September 6, 2023, the *Tate* plaintiffs voluntarily dismissed the action without prejudice. (*Tate*, ECF No. 22).

On September 7, 2023, plaintiff Foster, along with Anayancy Paiz, Susan Finkbeiner, and Larissa Rapadas, filed the initial class action complaint in this Action (ECF No. 1), which, like the *Tate* action, alleged that Defendant violated the ARL in connection with its Celebrations Passport membership program.

On November 14, 2023, Defendant filed a motion to compel arbitration and stay the case as to Anayancy Paiz and Larissa Rapadas, arguing that their purchase of Celebrations Passport using the desktop computer sales channel bound them to terms and conditions which required arbitration of disputes.  (ECF No. 14).  In the same motion, Defendant moved to dismiss Ms. Finkbeiner for lack of standing.  (*Id.*)

On December 5, 2023, the plaintiffs filed a first amended complaint, which retained Tessible Foster, Anayancy Paiz, and Larissa Rapadas as representative plaintiffs, and added Marie Scott, Krista Baumbach, Kimberly Moore Keller and Latricia Anderson Thompson representative plaintiffs.  (ECF No. 20).

On January 18, 2024, Defendant filed a motion to compel Anayancy Paiz, Larissa Rapadas, Kimberly Moore Keller, Latricia Anderson Thompson, and Marie Scott to arbitration, sought a stay of the case pending final resolution of the arbitrations, and separately moved to dismiss Kimberly Moore Keller and Latricia Anderson Thompson for lack of standing.  (ECF No. 27).

Contemporaneously, Defendant answered the first amended complaint as to plaintiffs Foster and Baumbach.  (ECF No. 28).

The Parties filed a Case Management Stipulation on January 19, 2024, and a stipulation regarding class certification briefing on February 1, 2024.  (ECF No. 29, 31).  The Court entered both stipulations.  (ECF No. 34, 37).

On March 28, 2024, the Court granted Plaintiffs leave to file a second amended complaint (ECF No. 43), which Plaintiffs sought to file in lieu of opposing the then pending motion to compel arbitration.  On April 12, 2024, Plaintiffs filed the second amended class action complaint (ECF No. 45), the operative complaint in the Action. The second amended class action complaint named Plaintiffs Foster, Scott, and Baumbach as the only representative plaintiffs and, like each of the prior complaints alleged, Defendant violated the ARL in connection with its Celebrations Passport membership program.  (*Id.*)

On May 10, 2024, Defendant filed a motion to compel plaintiffs Baumbach and Scott to arbitration and stay the case, or alternatively, to dismiss plaintiff Baumbach for lack of standing or strike the class action allegations as to plaintiffs Baumbach and Scott. (ECF No. 46).  Defendant also filed an answer to the second amended complaint as to plaintiff Foster.  (ECF No. 47).

Plaintiffs prepared to oppose the motion by engaging and consulting a web design expert who examined the web flow that Defendant asserts bound Ms. Baumbach to arbitration.  (Hedin Decl., ¶ 15).  Plaintiffs moved to adjourn the hearing on the Motion to Compel to take discovery on the factual issues raised in the Motion (ECF No. 49), which the Court granted (ECF No. 51).

The Parties' discussions concerning the scope of discovery needed as to the pending motion, turned towards a discussion concerning resolution of the Action. (Hedin Decl., ¶ 16).  The Parties agreed to engage Jill Sperber, Esq. of Judicate West, a mediator with substantial experience mediating compel civil actions, including consumer class actions.  Plaintiffs agreed to mediate on the condition that in advance of the mediation, Defendant provide Plaintiffs with class size information and information concerning the number of automatic renewals paid by California consumers across various sales channels.  To facilitate the mediation, the Parties stipulated to, and the Court granted, a 90-day enlargement of time of deadlines related to the pending motion to compel arbitration and a 180-day enlargement of all other case management deadlines, including trial.  (ECF No. 52, 53).

On July 24, 2024, the Parties attended a full day of mediation before Ms. Sperber, Esq.  (Hedin Decl., ¶ 18). Before the mediation, Defendant provided the class size and the sales channel information requested.  (*Id.*)

The Parties each disclosed to the mediator (but did not exchange) position statements.  (Hedin Decl., ¶ 19).  Plaintiffs' statement set forth their evaluation of the case, including their favorable assessment of prevailing on both the pending motion to compel arbitration in light of, among other things, the motion to dismiss Ms. Baumbach for lack of standing, and the high likelihood of certifying a class.  (*Id.*)  Armed with the number of customers and number of renewals, Plaintiffs were further able to make a cogent, good faith assessment of the range of potential damages which informed the settlement negotiations.  (*Id.*)

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The mediation concluded with a settlement in principle memorialized by a comprehensive term sheet executed by counsel for both Parties on July 24, 2024. Prior to executing the Settlement Agreement on August 30, 2024, Defendant produced to Plaintiffs a confirmatory sworn declaration which attested to the fact that there were 112,356 email addresses associated with California customers who purchased Celebrations Passport from September 7, 2019, through May 31, 2022, and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded. (Hedin Decl. ¶ 23). The Parties worked together to select Kroll as a Settlement Administrator upon joint review of Kroll's comprehensive bid proposal, which provided for every aspect of the proposed notice plan and which was in line with that of similar class action settlement administrators. (Hedin Decl. ¶ 29).

## III. TERMS OF THE SETTLEMENT

A copy of the Settlement Agreement is attached to the Hedin Decl. as Exhibit 1, the key terms of which are summarized as follows:

### A. Class Definition

Pursuant to the Settlement Agreement, Plaintiffs request in this Motion that the Court provisionally certify the following Settlement Class:

> All Persons who purchased Celebrations Passport in California on or after September 7, 2019, through May 31, 2022, and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded.

Specifically excluded from the Settlement Class are the following Persons:

a.    800-Flowers, Inc., the Released Persons and their employees, officers, directors, agents, and representatives, and their immediate family members;

b.    Class Counsel;

1    c.    The Court, the Court's immediate family members, and Court staff;

2    and

3    d.    The mediator, Jill Sperber, Esq. of Judicate West.

4    Settlement Agreement §§ III.76-77.

5    **B.    Monetary Relief**

6    Defendant has agreed to pay exactly $1,200,000.00 into a Common Fund.

7    Settlement Agreement §§ II.37.   The payment into the Common Fund is non-

8    reversionary and is in full satisfaction of all Defendant's monetary obligations under

9    the Settlement Agreement.   (*Id.*)   The Common Fund shall be used to pay, on an

10   automatic, non-claims-made basis, Settlement Shares to every Settlement Class

11   Member who does not opt out of the Settlement, an Attorneys' Fee Award to Class

12   Counsel, Service Awards to each of the three representative Plaintiffs, and Settlement

13   administration fees to Kroll.  (*Id.*, §§ IV.82-83.)

14   All identifiable Settlement Class Members who do not timely exclude

15   themselves from the Settlement will automatically receive – without the need to file a

16   claim form – a Settlement Share.  (*Id.* at § IV.82.)   Each Settlement Share shall be

17   calculated by dividing the value of the Net Common Fund (which is the amount of the

18   Common Fund that remains after Attorneys' Fee Award, Notice and Administration

19   Costs, Service Awards, and any other costs of the class Settlement, not including the

20   Settlement Shares due to each Settlement Class Member) by the total of the number of

21   Settlement Class Members minus Opt-Outs.  (*Id.* at § II.72.)   All Settlement Shares

22   shall be of equal value.  Settlement Shares shall be paid automatically without the need

23   to file a claim form.   (*Id.*) Settlement Shares shall be paid by default to a Zelle account

24   linked to the email address the Settlement Class Member most recently used to renew

25   Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card

26   sent to that same email address.  (*Id.*)  On the Settlement Class Member's election on

27   the Settlement Website, a Settlement Share may be paid by paper check.  (*Id.*)

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Discovery has shown that there are approximately 112,000 email addresses reflecting accounts in the Settlement Class. (*Id.* at § IV.81.)

The default method of distribution of Settlement Shares will be by automatic deposit to an electronic wallet as set forth above. However, if the Settlement Administrator is unable to communicate the Class Notice by e-mail to a Settlement Class Member (as described in Section C below), the Settlement Class Member will automatically be sent a paper check to the same address at which he or she received a Post Card Notice. (*Id.* at § IV.92.)

Paper checks sent to Settlement Class Members will expire after 180 days. (*Id.* at § IV.93.) The expiration date will be provided on each paper check, and the Class Notice will inform Settlement Class Members that paper checks must be cashed or deposited prior to the expiration date on the paper check (and that the paper check will no longer be valid after such date). (*Id.*) Any uncashed funds remaining after the paper checks' expiration date will be distributed to the National Consumer Law Center as a *cy pres* recipient. (*Id.* at § IV.93.)

## C.    Class Notice and Settlement Administration

All Notice and Administration Costs to the Settlement Administrator shall be paid from the Common Fund. Settlement Agreement § IV.81, § IV.85. The Settlement Administrator's "not to exceed cost" is $89,400.00and has estimated settlement administration costs of between $81,091.87 and $89,400.00 (*See id.*; *see also* Declaration of Andrea R. Dudinsky ("Dudinsky Decl.") ¶ 17.)

Two days after the Preliminary Approval Date, Defendant will provide to the Settlement Administrator a Class List that includes the names and email addresses for the Settlement Class Members, which identifies the most recent email address and the postal address each Settlement Class Member used to renew their Celebrations Passport account. Settlement Agreement § II.36, §V.95. The primary method of Class Notice shall be by email. (*Id.* at § V.97.) The Settlement Administrator shall send an email

12

containing the Class Notice to every email address associated with each Settlement Class Member contained on the Class List.  (*Id.*)

The Email Notice provides all of the important information and dates pertaining to the case and the proposed Settlement, discloses to each Settlement Class Member the anticipated amount of the Settlement Share that they will receive, and that they will receive the funds by default by automatic transfer to a Zelle account linked to the email address the Settlement Class Member most recently used to renew Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card sent to that same email address, discloses the specific amounts of the Attorneys' Fee Award and Service Awards to be requested by Class Counsel and class representatives, and fully informs Settlement Class Members of their right to opt out of or object to the Settlement (and sets forth the procedure and deadlines for doing so).  (*Id.* § V.97.; Ex. A (Email Notice).)

The Email Notice also invites Settlement Class Members to visit the Settlement Website or to call the IVR toll-free telephone number for additional information about the Settlement, to obtain copies of the Settlement Agreement and all other important filings and orders in the case, to submit updated postal addresses to which their Settlement Share should be sent by paper check, to submit requests to receive Settlement Shares by electronic payment or paper check, and to submit requests for exclusion from the Settlement.  (*Id.* § II.100.)[3]  The Settlement Website shall further contain a long form version of the Class Notice.  (*Id.* at Ex. C (Long Form Notice).)

---

[3]  Additionally, a notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). will be made to the U.S. Attorney General and Attorney General of California as "appropriate federal and state officials" under 28 U.S.C. § 1715 (Settlement Agreement, §V.101).

If every email sent to a Settlement Class Member bounces back, the Settlement Administrator will send a Post Card Notice, first to the last address associated with the Settlement Class Member's Celebrations Passport account, and if that Post Card Notice is returned as undeliverable, then to the postal address obtained through further research. (*Id.* §§ V.98-99.).

The Class Notice is described in more detail in the Settlement Agreement, and the proposed Class Notices are attached as exhibits to the Settlement Agreement.

**D.    Service Award for Class Representatives and Attorneys' Fees for Class Counsel**

Subject to the Court's approval, reasonable Service Awards of $2,500 to each of the three Plaintiffs in recognition of the time and effort they expended in pursuing this action and in fulfilling their obligations and responsibilities as class representatives, shall be paid from the Common Fund.  Settlement Agreement § VII.109.  Proposed Class Counsel must file applications for an Attorneys' Fee Award and Service Awards no later than thirty-five (35) days before the Opt-Out and Objection Date.  (*Id.* § VII.110.  Proposed Class Counsel has agreed not to seek or accept an Attorneys' Fee Award of more than 25% of the Common Fund, which is $300,000.[4]  (*Id.*) Defendant agrees not to oppose an Attorneys' Fee Award of $300,000 or less.  (*Id.*)   The Settlement Agreement is not contingent on the amount of any Service Award or Attorneys' Fee Award.  (*Id.* § VII.111.) The proposed Class Notices inform Settlement Class Members of the amounts of the Service Awards and the Attorneys' Fee Award that Plaintiffs and Class Counsel will request.  (*Id.,* Exs. A-C.)

**E.    Objections and Opt-Out Rights**

Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date, which will be sixty (60) days following the Notice Date.

---

[4] Plaintiffs Counsel is also entitled to seek the reimbursement of reasonable litigation costs, which shall not exceed $14,000.00.

Settlement Agreement § II.54; § VIII.115.  In order to object, a Settlement Class Member must timely file with the Court or send to the Clerk of Court a written objection containing all of the information set forth in Section VIII.116 of the Settlement Agreement.  Settlement Agreement § VIII.116.

Any Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is post-marked or submitted electronically no later than the Opt-Out and Objection Date, which will be sixty (60) days following the Notice Date.  (*Id.* § II.54; § VIII.117.)  The request for exclusion must comply with all of the requirements set forth in Section VIII.117 of the Settlement Agreement.  Settlement Agreement § VIII.117.

The Class Notice provided to the Settlement Class will contain language consistent with the provisions of Section VIII of the Settlement Agreement concerning objections and Opt-Outs.  Settlement Agreement, Exs. A-C

### F.    Release of Liability

If the Settlement is finally approved and a Final Approval Order and Judgment entered by the Court, Defendant (along with Released Persons) will be released and discharged by the Releasing Persons from any and all claims arising from or relating to the causes of action for violation of the ARL made by Plaintiffs in the Action as well as any similar claims for violation of any federal or state statutory or common law arising from automatic renewal of Celebrations Passport (as set forth in Section X.123 of the Settlement Agreement) – except that none of the claims of Settlement Class members who timely and properly request exclusion will be released, as set forth in the Settlement Agreement.  *See id.* § X.123.; *see also id.* §§ VIII.118-19.

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Ninth Circuit has repeatedly recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm

any potential benefit the class could hope to obtain. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615 (9th Cir. 1982); *Lane v. Facebook,* 696 F.3d 811, 819 (9th Cir. 2012); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases) (hereinafter *Newberg*).

The approval process for a proposed class action settlement has three steps:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.63. This procedure safeguards the due process rights of unnamed Settlement Class Members and enables the Court to fulfill its role as the guardian of the Settlement Class's interests. 4 *Newberg* § 11.25. Plaintiffs are presently at the first step of this three-step process.

## V.    ARGUMENT

The proposed Settlement was negotiated at arm's length by competent, experienced counsel and would, if approved, provide strong monetary relief to Settlement Class Members, in a prompt and efficient manner. Accordingly, the Court should (A) preliminarily approve the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiffs as class representatives and their counsel as Class Counsel, (D) approve the proposed Settlement Class Notice Program, and (E) schedule the Final Approval Hearing.

### A.    The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also*

16

*Lane,* 696 F.3d at 818 ("a district court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate, and free of collusion.'") (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998)).  At the preliminary approval stage, the district court need only assess whether the proposed settlement falls within the range of possible approval in order to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *See Officers for Justice,* 688 F.2d at 625.

In making this appraisal, courts consider a range of factors such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)). "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.

Here, each factor weighs in favor of finding the Settlement fair, reasonable, and adequate, warranting its preliminary approval.

### 1.  The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

Among the most important factors relevant to the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.  Still, settlement is necessarily "an amalgam of delicate balancing, gross approximations and rough justice," *Officers for Justice,* 688 F.2d at 625, and thus "the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane,* 696 F.3d at 819.

17

The amount offered in the Settlement – $1.2 million – is substantial.  Should the Settlement be approved, each Settlement Class Member will automatically receive a paper check in the amount of between $6.91 and $6.99.  (Dudinsky Decl. ¶ 18).  The relief the Settlement provides is favorable in terms of per-claimant recovery and in absolute terms.

For example, in *Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES (C.D. Cal. Apr. 14, 2016), a finally-approved ARL class action before Judge Stanton, the court approved a settlement that created a Settlement Fund in the amount of $400,000 to pay settlement shares to 32,200 class members.  The product in Kissel was an online computer backup service, which renewed monthly under three different subscription plans and cost between $5.00 and $13.99 per month.  Ultimately, the settlement yielded a recovery of $7.00-$7.50 per class member.  The court noted that assessing the recovery was not "straightforward" because of potential disputes about the recoverability of fees.  *Kissel*, No. 8:15-cv-01936-JLS-KES (C.D. Cal. Oct. 4, 2017), ECF No. 47 at 15-16.  Similar disputes exist here, as Defendant would assert that the Settlement Class members were constructively on notice of charges after the first renewal and continued to accept the benefits of the Celebrations Passport.  (ECF No. 47 at 11); *see also* Hedin Decl. ¶¶ 27-28.

In *Kissel,* the court compared the value of the settlement to the class at three levels: a high estimate which assumed recovery of all renewal fees paid by all class members during the class period, a mid-range estimate which assumed recovery of all fees after the first renewal period, and a low range which considered as recoverable damages only the fees paid in the first month of the first autorenewal period.  *Id.* The *Kissel* court found that "[u]sing the highest estimate, and net settlement amount of $247,500, the proposed settlement fund represents approximately 3.7% of Defendant's maximum potential liability.  For the mid-range estimate, the settlement award represents approximately 10.3% of the potential liability of $2,396,162. And using the

lowest estimate, the settlement represents 93% of the maximum liability." Following the same analysis, assuming approval of a $300,000 Attorneys' Fee Award and Service Awards of $7500 total, and that Settlement Administrator's fees were the highest estimated at $89,400, the net Settlement Fund to be distributed to Settlement Class Members would be $803,100. At the low, middle, and high ranges of prospective recovery, this equates to a recovery of **5.4%, 14.5%, and 21.7%,** respectively.[5]

Regarding the settlement's fairness, the *Kissel* court stated as follows:

A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted). These various percentages fall in the range of prior approved settlements in class actions. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (approving settlement representing 50% of the first month renewal fees and nine percent of all renewal fees); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-350, 2013 WL 6114379 at *4 (November 20, 2013) (approving settlement recovery of 1.8% or 16% for breach of contract and unfair competition claims related to online fees). Accordingly, in considering the difficulties of potential recovery, the

---

[5] As set forth in the Hedin Declaration at paragraph 22, Plaintiffs' best estimate of the potential liability Defendant faced had the Proposed Settlement not been reached as $5,544,000, which assumes 1.5 automatic renewals per Settlement Class Member at approximately $33.00 per renewal, which includes sales tax. This would be the "middle range" under the *Kissel* analysis. Defendant would have certainly argued that only a single renewal was compensable because the customer would have been on notice of the automatic renewal of Celebrations Passport. Under this scenario, the anticipated damages would be $3,696,000. This would be the low range. As a point of comparison, the highest theoretical liability would be $14,784,000, which assumes four renewals for every member of the Settlement Class, *e.g.*, one each year of the class period, a figure which is impossible given that most members of the Settlement Class paid one or two renewal fees. Though the comparison at the high level is somewhat apples to oranges given the impossibility of damages at this level, it is provided for context.

1    Court finds that the amount offered in settlement weighs in favor of

2    preliminary approval.

3        Here, the range of recovery percentages underpinning the Settlement is squarely

4    within the heartland of reasonableness amongst comparable recent California ARL

5    settlements relied upon in *Kissel*, and this Court, like the court in *Kissel*, should find

6    this factor favors preliminary approval.

7        Notably, on absolute terms, the Settlement, which provides an all-cash benefit

8    with direct payments made to Settlement Class Members, is better than settlements

9    involving similar ARL claims that have involved the issuance of "credits", have

10   involved a claims process, or both.  *See e.g.   Davis v. Birchbox Inc.,* No. 3:15-cv-

11   00498-BEN-BGS (S.D. Cal., Mar. 28, 2016), ECF No. 43 at 1 (class members received

12   a $10-$20 credit for use on defendant's goods and subscriptions); *Williamson v.*

13   *McAfee, Inc.*, No. 5:14-cv-00158-EJD (N.D. Cal., Feb. 3, 2017), ECF No. 114, at 2

14   (approving settlement where auto-renewal class members received $11.50 in "value

15   certificates" and could only receive cash upon filing a claim form).

16       Additionally, there are several legal uncertainties associated with continued

17   litigation that pose a substantial risk of non-recovery to the Settlement Class, further

18   underscoring the fairness, reasonableness, and adequacy of the proposed Settlement.

19   *See Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293, at *3 (S.D.

20   Cal. Jan. 14, 2013) (where "the settlement avoids the risks of extreme results on either

21   end, *i.e.,* complete or no recovery . . . it is plainly reasonable for the parties at this stage

22   to find that the actual recovery realized and risks avoided here outweigh the opportunity

23   to pursue potentially more favorable results through full adjudication. These factors

24   support approval.").

25       <u>First</u>, through its highly qualified and experienced counsel, Defendant,

26   throughout the litigation, vigorously defended the litigation including by seeking to

27   enforce what Defendant believes is a binding agreement to arbitrate between Defendant

28

and its customers.  Indeed, Defendant moved to compel to arbitration with respect to 6 of the 8 proposed representative plaintiffs in this action, and earlier moved to compel to arbitration as to all five representative plaintiffs in the *Tate* action.  Ultimately, Defendant filed four separate motions to compel arbitration and dismiss for lack of standing in the two cases, which were directed at 12 of the 13 proposed representative plaintiffs.  *See generally* Hedin Decl. ¶¶ 4-13.

Defendant's latest motion seeking to compel plaintiffs Baumbach and Scott to arbitration remains pending.  And though Plaintiffs believe they would defeat the motion had the Parties not reached the proposed Settlement, if Defendant won the motion, then it is possible that the claims of those consumers who used the same sales channels to purchase Celebrations Passport as plaintiffs Baumbach and Scott, mobile and 1-800 number respectively, would have been excluded from any potential class-wide relief.[6]   This potentially would have significantly reduced the number of consumers who would benefit.

Second, Defendant disputes that it violated the ARL's requirement that notice of the ARL terms be "clear and conspicuous".  For written disclosures, this means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. Prof. Code § 17601(c).  For audio disclosures, this means in "a volume and cadence sufficient to be readily audible and understandable." *Id*.  Over the years, Defendant made several revisions to its sales channels and the methods in which it

---

[6] The pending motion also seeks to dismiss Ms. Baumbach for lack of standing because Defendant refunded her renewal fee.  The Ninth Circuit has determined, however, that a temporary deprivation of money is sufficient to confer Article III standing. *Van v. LLR, Inc*., 962 F.3d 1160, 1164 (9th Cir. 2020) ("we hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III.").  Plaintiffs are confident that the facts would have established that Ms. Baumbach has standing to bring her claim.  Defendant disagrees.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

presented Celebrations Passport's terms.  If this factual dispute had been resolved in the Defendant's favor, the outcome would have been that fewer consumers than those who hold the approximately 112,000 email addresses in Defendant's records who stand to benefit under the proposed Settlement would have received relief.

Third, and related to the first and second litigation risks just discussed, the Parties disagree on whether the Settlement Class could be certified on a contested motion for class certification. During the litigation and the Parties' settlement discussions, Defendant steadfastly maintained, *inter alia*, that individual issues among Settlement Class Members would predominate and preclude class certification.  (Hedin Decl. ¶ 28).   For example, Defendant asserts that plaintiffs Baumbach and Scott, and, ostensibly, the many other proposed Settlement Class who purchased Celebrations Passport in the same manner, agreed to arbitrate the claims alleged in this action and waived their right to proceed in a class action.  (*Id.*) In addition, separate from the issue of whether certain class members agreed to arbitrate, Defendant indicated that it would have opposed a contested motion for class certification by arguing that variations across the content and context of its sales channels' disclosures of the ARL terms at different times require an individualized determination of the ARL notice Settlement Class received at the time of their purchase of Celebrations Passport.  (*Id.*) While Plaintiffs disagree and believe the Settlement Class is well-suited for certification, including on a contested basis, winning class certification was still far from a sure thing.

Fourth, even if Plaintiffs were to win class certification, and were to prevail on liability at trial, there would still be issues as to the amount of damages recoverable. Defendant argues that Plaintiffs waived any right to recovery by making voluntary payments for Celebrations Passport; that they were on notice of the automatic renewal by virtue of the charge after the first year; and, potentially, that accepting the benefits of Celebrations Passport should offset any damages.  Ultimately, even if the Settlement Class were to prevail at trial, resolution through appeal could take years, which further

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  underscores the reasonableness of the immediate, certain, and meaningful relief

2  provided by the Settlement.

3       Accordingly, the first and most important factor weighs heavily in favor of

4  finding the Settlement fair, reasonable and adequate. *See In re Tableware Antitrust*

5  *Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (settlement should be

6  preliminarily approved if it is free of "obvious deficiencies" and generally falls within

7  the range of "possible" approval.).

8       **2.  Continued Litigation Would Be Complex, Costly, and Lengthy**

9       Preliminary approval is also favored where settlement allows the class to avoid

10  the inherent risk, complexity, time, and cost associated with continued litigation. *See*

11  *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

12  2004) ("The Court shall consider the vagaries of litigation and compare the significance

13  of immediate recovery by way of the compromise to the mere possibility of relief in

14  the future, after protracted and expensive litigation.").

15       This would be lengthy and very expensive litigation if it were to continue,

16  involving extensive motion practice, including, *inter alia*, motions to dismiss and to

17  compel arbitration, a motion for class certification (and possibly a motion for

18  decertification), motions for summary judgment and various pretrial motions, as well

19  as the retention of experts, preparation of expert reports, and conducting expert

20  depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action

21  suits have a well-deserved reputation as being most complex."). The case would not go

22  to trial until at least September 2025, over one year from now. (ECF No. 53). And

23  even if the Settlement Class recovered a judgment at trial in excess of the $1.2 million

24  provided by the Settlement, post-trial motions and the appellate process would deprive

25  them of any recovery for years, and possibly forever in the event of a reversal.

26       Rather than embarking on years of protracted and uncertain litigation, Plaintiffs

27  and their counsel negotiated a Settlement that provides immediate, certain, and

28

*meaningful* relief to all Settlement Class Members. *See DIRECTV, Inc*., 221 F.R.D. at 526. Accordingly, this factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp*., 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

Courts may also examine the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Officers for Justice,* 688 F.2d at 625. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiffs' counsel and proposed Class Counsel, Frank S. Hedin of Hedin LLP, has extensive experience in similar complex class action litigation, including serving as class counsel in similar consumer class actions concerning the commercial practices of large entities like Defendant. (*See generally* Hedin Decl.). Mr. Hedin strongly endorses this Settlement, which was negotiated at arm's length before an experienced mediator. (*See id.*)

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., Smith*, 2013 WL 163293, at *3 (given their "experience and understanding of the strengths and weaknesses of cases such as this, class counsel's endorsement weighs in favor of final approval."); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1

2

3          **4. The Settlement is the Product of a Thorough Investigation,
4          Efficiently Prosecuted Litigation, and Arm's-Length Negotiations**

5          The stage of the proceedings and the amount of discovery that has been

6  completed at the time a proposed settlement is reached also bears on whether the

7  settlement is fair, reasonable, and adequate. *Lane,* 696 F.3d at 819.

8          The proposed Settlement was reached after the informal exchange of discovery

9  and following Plaintiffs' serving formal discovery requests on Defendant concerning

10 every aspect of the automatic renewal of Celebrations Passport – the means and

11 methods that Defendant used to disclose Celebrations Passport's terms, the various

12 sales channels Defendant used to sell Celebrations Passport, Defendant's policies for

13 notifying customers about renewal, and the number of California consumers who

14 purchased Celebrations Passport during the class period.  (Hedin Decl. ¶ 14).   In

15 addition, Plaintiffs' counsel conducted a thorough prefiling investigation, a continuing

16 post-filing investigation concerning every aspect of this case, and conferrals with

17 Defendant's counsel.  (Hedin Decl. ¶ 2, 11).  Armed with this information, Plaintiffs

18 and their counsel had "a clear view of the strengths and weaknesses" of the case and

19 were in a strong position to negotiate a fair, reasonable, and adequate settlement on

20 behalf of the Settlement Class, at mediation and beyond.  *In re Warner Commc'ns Sec.*

21 *Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

22         Mediation was hard-fought and lasted an entire day.  (Hedin Decl. ¶¶ 18-19).

23 Before the mediation, each Party provided the mediator with confidential position

24 statements.  (*Id.*)  The initial proposed Settlement was only finalized after several more

25 weeks of post-mediation negotiations between the Parties.  (*Id.* at ¶ 23).  Prior to

26 finalizing the Settlement Agreement, Counsel confirmed the critical information

27 related to the size of the Settlement Class with confirmatory discovery from the

28

Defendant.   (*Id.* at 24). Because the Settlement is the product of arm's length negotiations between experienced counsel with the benefit of confirmatory discovery, this factor also weighs in favor of finding the proposed Settlement fair, reasonable, and adequate. *See Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 4 *Newberg* § 11.41 (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").[7]

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate.

**B.    The Settlement Class Should Be Provisionally Certified for Settlement Purposes**

The Court must next find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997).  Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the rights of Settlement Class Members to recover a Settlement Share if the Settlement is finally approved, to object and be heard

---

[7]    *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

on the Settlement's fairness at the Final Approval Hearing, and to opt out of the Settlement.

For the reasons below, the Court should provisionally certify the Settlement Class – defined as "[a]ll Persons who purchased Celebrations Passport in California on or after September 7, 2019, through May 31, 2022, and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded" – under Rule 23(a) and Rule 23(b)(3).

## 1. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) the plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). The Settlement Class readily satisfies each of these requirements.

a. **Numerosity**

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of customers dispersed throughout the state of California and potentially elsewhere who registered approximately 112,000 email addresses to Celebrations Passport accounts. Joinder of all Settlement Class Members is obviously impractical. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is satisfied where at least 40 class members).

Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

b. **Commonality**

The second requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a

1  nature that it is capable of class-wide resolution – which means that determination of

2  its truth or falsity will resolve an issue that is central to the validity of each one of the

3  claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

4       Many questions of law and fact are common to the Settlement Class in this case,

5  including, among others, whether Defendant's annual renewal of Celebrations Passport

6  constitutes an "automatic renewal" within the meaning of Cal. Bus. & Prof. Code §

7  17601(a); whether Defendant failed to present the automatic renewal offer terms or

8  continuous service offer terms, in a clear and conspicuous manner before the

9  subscription or purchasing agreement was fulfilled and in visual proximity, or in the

10  case of an offer conveyed by voice, in temporal proximity, to the request for consent

11  to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); whether Defendant

12  charged Plaintiffs' and Class Members' stored Payment Method an Automatic

13  Renewal Fee without first obtaining their affirmative consent to the automatic renewal

14  offer terms in violation of Cal. Bus. & Prof. Code §17602(a)(2); and whether the goods

15  and services provided by Defendant are deemed "unconditional gifts" in accordance

16  with Cal. Bus. & Prof. Code § 17603. *See Kissel v. Code 42 Software, Inc.*, No. 8:15-

17  cv-01936-JLS-KES (C.D. Cal. Oct. 4, 2017), ECF No. 47 at 8 (finding identical

18  identified common questions of law and fact satisfied Rule 23 commonality analysis

19  in ARL class action); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015)

20  (commonality satisfied where description and function of autorenewal terms was a

21  common factual question amongst Class Members).

22  c.  **Typicality**

23       Rule 23(a)(3) requires that "the claims or defenses of the representative parties

24  are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The

25  typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232

26  F.R.D. 176, 180 (S.D.N.Y. 2005).

27

28

Plaintiffs' claims are typical of the claims of Settlement Class Members because their claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other class members and are based on the same legal theory.  *See, e.g., Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor . . . ."). Plaintiffs and each Settlement Class Member purchased Celebrations Passport in California and paid at least one unrefunded autorenewal fee.

Accordingly, the typicality requirement of Rule 23(a) is satisfied.

d. **Adequacy of Representation**

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) the representatives must not possess interests that are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced, and generally able to conduct the proposed litigation.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Both components are satisfied because Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class, and because Plaintiffs hired qualified and competent counsel.  Plaintiffs each challenge the same allegedly unlawful conduct that each Settlement Class Member challenges, and they each seek the same monetary relief that each Settlement Class Member seeks. Plaintiffs have retained competent counsel, provided substantial assistance to their counsel in advance of and during the litigation, vigorously prosecuted the case on behalf of the Settlement Class, and assisted their counsel in reaching a proposed resolution to

29

this action on behalf of the Settlement Class. Finally, Plaintiffs' counsel has substantial class action litigation experience, having successfully investigated, prosecuted, and resolved many complex class actions, including prior consumer class actions similar to the instant matter. (*See generally* Hedin Decl.)

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### 2. The Requirements of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiffs seek provisional certification under Rule 23(b)(3), Plaintiffs must additionally show (1) that common questions of law or fact predominate over questions affecting only individual members of the class (predominance); and (2) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3).[8] Both requirements are easily satisfied here.

### a. Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . .'" (citation omitted)); *True Health Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923, 932 (9th Cir. 2018); *accord Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,

---

[8]     Because the Court is called upon to assess the requirements of Rule 23 in the context of a settlement, the Court need not consider whether any manageability problems would arise at trial if the Settlement Class is certified. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1    and if these particular issues are more substantial than the issues subject only to

2    individualized proof").

3         The Settlement Class Members uniformly received the same disclosures via the

4    sales channels they used to purchase Celebrations Passport – desktop, mobile, and

5    telephone – which Plaintiffs allege were non-compliant with the ARL.   Thus, the

6    central questions in this case – whether such disclosures were presented in a clear and

7    conspicuous manner under Cal. Bus. & Prof. Code § 17602(a)(l) and whether

8    Defendant charged Plaintiffs' and Settlement Class Members' stored payment method

9    an Automatic Renewal Fee without first obtaining their affirmative consent to the

10   automatic renewal offer terms in violation of Cal. Bus. & Prof. Code §17602(a)(2) –

11   are each capable of resolution by looking at the Defendant's records.   Because no

12   apparent issues require individualized proof, the predominance requirement is satisfied

13   for purposes of preliminary approval.

14   **b.    Class Treatment of Plaintiffs' Claims is Superior**

15        Rule 23(b)(3) also requires that a class action be superior to other available

16   methods for adjudicating the controversy.   It is axiomatic that cases involving "multiple

17   claims for relatively small individual sums" are well suited to class treatment.   *Local*

18   *Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d

19   1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

20   1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the

21   cost of litigating on an individual basis, this factor weighs in favor of class

22   certification."); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory

23   Committee had dominantly in mind vindication of the rights of groups of people who

24   individually would be without effective strength to bring their opponents into court at

25   all").

26        A class action is the superior method for the fair and efficient adjudication of

27   these claims.   Plaintiffs' claims are shared by consumers who registered approximately

28
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

112,000 email addresses to Celebrations Passports accounts, each of whom paid at least one unrefunded fee to renew Celebrations Passport receiving the same notification of the Celebrations Programs autorenewal terms which Plaintiffs allege are non-compliant with California's ARL.  Resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").  Further, the damages available under the ARL, which are limited to the cost of the goods purchased insofar as the goods are deemed unconditional gifts, are small in comparison to the costs of litigation.  As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval.  The Court should provisionally certify the Settlement Class.

**c.    Plaintiffs' Counsel Should Be Appointed Class Counsel**

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B), (2), (4).  In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Cabiness v. Educational Fin. Solutions, LLC*, No. 16-cv-1109-JST, 2018 WL 3108991, at *4 (N.D. Cal. June 25, 2018).

In this case, proposed Class Counsel, Frank S. Hedin of Hedin LLP, readily satisfies the criteria of Rule 23(g).  First, Plaintiffs' counsel and proposed Class Counsel have devoted substantial time, effort, and resources to this litigation,

beginning with an initial investigation of Plaintiffs' allegations, continuing through almost two years of litigation, informal discovery, the service of formal discovery, expert consultation, and ending with hard-fought settlement negotiations, a lengthy mediation and confirmatory discovery. (*See* Hedin Decl. ¶ 14-24.)  Second, Plaintiffs' counsel has extensive experience in complex class action litigation, in district courts of the Ninth Circuit and elsewhere, and Mr. Hedin previously served as class counsel in several prior cases involving the rights of large consumer classes.  *See e.g., Lloyd et al. v. Eaze Solutions, Inc.*, No. 18-cv-5176-JD (N.D. Cal.) ($3.49 million class settlement finally approved on behalf of 52,104 class members);  *Chimeno-Buzzi, et al. v. Hollister, Co.*, No. 14-cv-23120-MGC (S.D. Fla.) ($10 million class settlement finally approved on behalf of 3.7 million settlement class members); *Farnham v. Caribou Coffee Company, Inc.*, No. 16-cv-295-wmc (W.D. Wisc.) ($8.5 million class settlement finally approved on behalf of approximately 530,000 settlement class members); *Rivera et al. v. Google,* LLC, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement).

Accordingly, the Court should appoint Plaintiffs' counsel as Class Counsel.

**C.    The Court Should Approve the Proposed Notice Plan**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation, supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   The notice must contain specific information in

plain, easily understood language, including the nature of the action and class members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

In this case, the Settlement Agreement provides for a comprehensive Settlement Class Notice Program under which the Settlement Administrator will directly provide the Class Notice to Settlement Class Members.

Two (2) Days after the Preliminary Approval Date, Defendant will provide to the Settlement Administrator a Class List that includes the names and all known email addresses for the Settlement Class Members, and which separately identifies the most recent email address and the postal address each Settlement Class Member used to renew their Celebrations Passport account. The default method of Class Notice shall be by email, and the default method of payment of Settlement Shares shall be by direct payment to a Zelle account linked to the email address the Settlement Class Member most recently used to renew Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card sent to that same email address. The Settlement Administrator shall send an email containing the Email Notice to every email address associated with each Settlement Class Member contained on the Class List. Each Email Notice will specify the email address linked to the Zelle account which the Class Member's Settlement Share shall be deposited, or to which the MasterCard gift card will be sent. If every email sent to a Settlement Class Member bounces back, the Settlement Administrator will send a Post Card Notice, first to the most recent address associated with the Settlement Class Member's renewal of Celebrations Passport, and if that Post Card Notice is returned as undeliverable, then to the postal address obtained through further research. *See Mullane*, 339 U.S. at 314 (explaining that Rule 23 "requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."); *see also* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be

bound by the proposal").)  For those Settlement Class Members who receive Post Card Notice, the default method of payment of Settlement Shares shall be by paper check.

The Class Notice will, *inter alia*: (i) describe the essential terms of the Settlement, the relief provided by the Settlement, the specific amount of each Cash Award that each Settlement Class member will receive (unless he or she submits a request for exclusion), and the email or postal address to which the Settlement Administrator will deliver the Class Member's Settlement Share (unless an updated address is provided by the Settlement Class Member on the Settlement Website or a request for request for electronic payment is made on the Settlement Website); (ii) disclose Class Counsel's intention to file an application with the Court for Service Awards to the class representatives and an Attorneys' Fee Award to Class Counsel, the specific amounts that will be requested for each, and the date on which such application will be filed with the Court; (iii) indicate the time and place of the hearing to consider Final Approval of the Settlement, and the method for filing objections to and/or requests for exclusion from the Settlement; (iv) provide information concerning the timing of the distribution of Settlement Shares to Settlement Class Members; and (v) prominently display the address of the Clerk of Court, the Settlement Administrator, and Class Counsel and the procedure for making inquiries concerning the Settlement. The Class Notice also invites Settlement Class Members to visit the Settlement Website, which is accessible through a unique Class Member identifier, or to call the IVR toll-free telephone number to obtain additional information about the Settlement, submit requests for exclusion, provide an updated postal address to which a Settlement Class Member's paper check should be sent, and request payment via electronic transfer in lieu of payment by paper check.

The Settlement Website will provide access to the long-form Class Notice, as well as answers to frequently asked questions, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents

(including the Settlement Agreement and the Class Notice, the Motion for Preliminary Approval, the Preliminary Approval Order, the motion for Attorneys' Fee Award and Service Award, and the Motion for Final Approval).  The Settlement Website will also contain web-based forms for Settlement Class Members to submit updated postal addresses to ensure the proper delivery of Settlement paper checks, to submit requests that their Settlement Share be sent via electronic transfer in lieu of by paper check and vice versa, and to submit requests for exclusion from the Settlement.

The proposed Settlement Class Notice Program is robust, comprehensive, and informative; notifying additional members of the Settlement Class through email, and where unavailable, by U.S. Mail, by the Settlement Website, and by the automated toll-free Settlement telephone number; and providing for the submission of address updates, requests for exclusion, and requests for payment of Settlement Shares by electronic transfer or paper check on the Settlement Website.

As discussed above, the Settlement Administrator will automatically transfer a Settlement Share to each Settlement Class Member who does not exclude themselves from the Settlement, by electronic transfer to a Zelle account linked to the email address the Settlement Class Member most recently used to renew Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card sent to that same email address.  If a notice was made by U.S. Mail, the Settlement Administrator will send a paper check to the same address at which the postal notice was made.  Paper checks will be void 180 days from the issued date. The Settlement Administrator shall transfer voided paper check funds to the National Consumer Law Center as *cy pres* recipient.

Plaintiffs respectfully request that the Court, as set forth in the proposed order accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed Settlement; (iii) is

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law. *See, e.g., Touhey v. United States*, No. 08-cv-1418, 2011 WL 3179036, at *11 (C.D. Cal. July 25, 2011) (finding mail, publication, website and toll-free number were sufficiently calculated to reach class members, and satisfied Rule 23 notice requirements).[9]

### D.    The Court Should Schedule the Final Approval Hearing

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Final Approval Hearing on Final Approval of the Settlement and Settlement Agreement to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court, and to determine the reasonableness of the requested Attorneys' Fee Award and Service Award.  Plaintiffs respectfully request that the Court set a date for the Final Approval Hearing at the Court's convenience and consistent with the proposed timetable set forth in the proposed order accompanying this Motion.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class and appoint Plaintiffs as class representatives and Plaintiffs' counsel as Class Counsel; (3) approve the Class Notice, appoint Kroll as Settlement Administrator, and order that the Settlement Class Notice Program be effectuated by Kroll; (4) establish a procedure and timetable, consistent with the procedure set forth in the Settlement Agreement, for Settlement Class Members to object to the Settlement and exclude themselves from the Settlement Class; and (5) set a Final Approval Hearing to consider whether to finalize its approval of the Settlement.

---

[9]    Promptly after the filing of this Motion and the attached Settlement Agreement, the Class Administrator will serve CAFA Notice to the California Attorney General and U.S. Attorney General in compliance with 28 U.S.C. § 1715.

Dated:  August 30, 2024

Respectfully submitted,

**HEDIN LLP**

By: s/ Frank S. Hedin
FRANK S. HEDIN (SBN 291289)
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:  (305) 357-2107
Facsimile:    (305) 200-8801
E-Mail:        fhedin@hedinllp.com

*Counsel for Plaintiffs and
the Proposed Settlement Class*

38