# Exhibit 2



August 30, 2024

Frank Hedin
Hedin LLP
fhedin@hedinllp.com

**Re: 800-Flowers, Inc. Settlement**

Dear Frank,

Thank you for the opportunity to present our proposal in the above referenced matter. Kroll has the requisite experience and technological resources to administer this settlement.

For purposes of this proposal, we applied the following key assumptions:

- Total class size is approximately 112,000.
- Kroll will complete the required CAFA notification.
- We have assumed all class members will receive an email notice.
- We will print and mail a single-postcard notice to class members whose email cannot be delivered successfully.
- We have assumed 8% of the mailed notices will be returned as undeliverable. Skip traces will be performed as appropriate.
- We will securely intake class member data and create a dedicated settlement database to house all class member records and communications.
- We will create and maintain a customized settlement website that contains case information and key documents.
    - We will provide a code with the notice which will be used by recipients to gain access to the website. Also, we will not promote the website in search engine results.
    - Website visitors will be able to change their address or elect to receive a check or electronic payment.
- We have assumed class members who received a notice via postal mail will receive a check, as well as those who elected to receive a check on the website.
- We will issue electronic payments to class members who elected to do so on the website. We will send a Zelle payment to remaining class members whose email addresses are screened as valid for such payment. For class members whose Zelle or other e-payment cannot be delivered, we will email an e-Mastercard.

- For an additional cost, we can provide the following optional service:
    - We can provide IVR toll-free telephone support for class member inquiries.

Unlike other administrators, Kroll staffs each engagement with a cohesive multi-person team. This approach ensures seamless coverage of client needs, regardless of normal-course staff absences.

In the event of urgent unexpected needs, Kroll's teams assign a staff member to monitor the engagement after-hours, as well as on weekends and holidays. This facilitates the prompt handling of any unanticipated issues, and it guards against any potential lapses in service.

Given that general scope, we anticipate the costs of administration will be an estimated **$81,091.87**. Assuming no change in the assumptions shown in this estimate, we will cap our administration costs at $89,400. The Not-to-Exceed Amount assumes no more than 112,000 class members, no more than 5,914 notices mailed (inclusive of remails) and no more than 5,600 checks mailed. Postage rates will increase bi-annually (January & July) and may cause the Not-to-Exceed amount to increase as this is a pass-through expense. We can help manage the cost through careful planning.

Kroll provides world-class information technology, cybersecurity, and global notification and administration capabilities for complex legal settlements, including antitrust, consumer, data breach, and mass tort matters. We can also offer our clients auditing services, special master services, and appeal master services.

We welcome the opportunity to walk through our proposal with you, and we are happy to set up a call for further discussions. We look forward to speaking with you soon.

Best,

**Rob DeWitte**
Managing Director
T: +1 773 802 3113
robert.dewitte@kroll.com



**KROLL SETTLEMENT ADMINISTRATION**

# 800-Flowers, Inc. Settlement

Zelle Screening; eMastercard to Remainder

August 30, 2024

| Proposal Submitted To: | Proposal Submitted By: | |
|---|---|---|
| Frank Hedin | Robert DeWitte | |
| Hedin LLP | robert.dewitte@kroll.com | 773.802.3113 |

### Pricing Summary:

| | |
|---|---|
| **TOTAL ESTIMATED FEES & EXPENSES** | $ 81,091.87 |
| **Plus Estimated Buffer** | $ 89,400.00 |

Not-to-Exceed Amount is contingent upon no change in the scope of work provided and is based on the counts and assumptions as stated. If the class size changes or more claims are received, the Not-to-Exceed Amount is subject to change.

### Additional Services:

| | |
|---|---|
| Automated Telephone Support (IVR) | $ 3,800.00 |

### Assumptions Summary:

| Class Size | | |
|---|---|---|
| **Estimated Class Size:** | 112,000 | |
| Estimated # of Class Members with Email Address: | 112,000 | 100% |
| **Project Set-Up** | | |
| **Project Duration:** | 9 | months |
| **Notification** | | |
| **CAFA Notice:** | Yes | |
| **Email Notice:** | Yes | |
| Estimated # of Notices sent via Email: | 112,000 | |
| Estimated % of Email Bouncebacks: | 5% | |
| Mail Sent to Email Bouncebacks: | Yes | |
| **Mailed Notice:** | Yes | |
| Estimated # of Notices sent via Mail: | 5,600 | |
| Standard postcard notice (single) | | |
| Business Reply Mail Included on Return Card / Envelope: | No | |
| **Returned Mail:** | | |
| Estimated % of Undeliverable Mail: | 8% | |
| Address Searches on Returned Mail: | Yes | |
| Estimated % of New Addresses: | 70% | |
| **Translations Required:** | No | |
| **Website** | | |
| **Case Website:** | Yes | |
| Type of Website: | Dynamic | |
| **Contact Center** | | |
| **Call Center:** | Yes (Additional) | |
| Type of Call Center: | Automated | |
| Estimated % of Class Members to Call Automated Support: | 5% | |
| **Forms Processing** | | |
| **Opt-Out / Objection Processing:** | Yes | |
| Estimated # of Opt-Outs Received: | 10 | |
| **Forms Processing (Claim Form / Opt-In):** | No | |
| **Distribution Services** | | |
| **Disbursements:** | Yes | |
| Estimated % of Claimants Electing Check Payment: | 5% | |
| Estimated % of Claimants Electing Electronic Payment: | 95% | |



KROLL SETTLEMENT ADMINISTRATION

# 800-Flowers, Inc. Settlement

August 30, 2024

Zelle Screening; eMastercard to Remainder

| Project Setup | % | Volume | Rate ($) | Total |
|---|---|---|---|---|
| **Class List Development / Setup** | | | | |
| Develop Class List and Import | | 1 | One-Time | |

| Notification / Correspondence | % | Volume | Rate ($) | Total |
|---|---|---|---|---|
| **CAFA Notice** | | | | |
| Prepare CAFA Notice to California & Federal AG | | 1 | Per Mailing | |
| **Notice Documents** | | | | |
| Set Up, Format and Proof the Notice & Claim Form | | 6 | Hours | |
| **Email Notification** | | | | |
| Generate Email Address List | | 1 | One-Time | |
| Email List Cleanse and Hygiene | | 1 | One-Time | |
| Prepare & Release Email Campaign 1 | | 112,000 | Per Email | |
| **Printing and Mailing Notice** | | | | |
| Submit File for NCOA | | 1 | One-Time | |
| Print/Address Notice Packet (standard postcard (single)) | | 5,600 | Per Notice | |
| **Processing Undeliverable Notices** | | | | |
| Process Returned Notices | 8% | 448 | Per Notice | |
| Advanced Address Search | | 448 | Per Trace | |
| Re-Mail Notices | 70% | 314 | Per Notice | |
| **Notice Requests & Correspondence** | | | | |
| Receive and Respond to Requests for Notice | | 6 | Per Notice | |
| Form Letter Correspondence | | 9 | Per Letter | |
| Email Correspondence | | 28 | Per Email | |
| Processing Change of Address Requests | | 1 | Per Request | |

| Website | | Volume | Rate ($) | Total |
|---|---|---|---|---|
| **Creation & Maintenance of Case Website** | | | | |
| Set-Up Fee for Dedicated Website - Online Filing Capability | | 1 | One-Time | |
| Monthly Hosting | | 9 | Per Month | |
| Modifications to Post-Production Website | | 5 | Hours | |

| Forms Processing | % | Volume | Rate ($) | Total |
|---|---|---|---|---|
| **Opt-Out / Objection Forms** | | 10 | Units | |
| Review & Process Opt-Out Forms Received | | 1 | Hours | |

| Distribution Services | % | Volume | Rate ($) | Total |
|---|---|---|---|---|
| **Disbursements** | | | | |
| Estimated Number of Approved Claims / Payments | 100% | 112,000 | | |
| Generate Distribution List | | 1 | One-Time | |
| Processing & Printing Distribution Checks (invalid email; election process) | 5% | 5,600 | Per Check | |
| Processing & Issuing Electronic Payments | 95% | 106,400 | Payments | |
|     Processing & Issuing Electronic Payments (from election process) | 5% | 5,320 | Per Payment | |
|     Processing & Issuing Electronic Payments - Zelle (from screening) | 30% | 31,920 | Per Payment | |
|     Processing & Issuing Electronic Payments - eMastercards | 65% | 69,160 | Per Payment | |
| Process Checks Returned as Undeliverable | | 224 | Per Check | |
| Skip-Tracing Return Checks | | 224 | Per Check | |
| All Work on Re-Issuance of Checks | | 15 | Hours | |
| Print & Mail Re-Issues - Checks | | 213 | Per Check | |



| Tax Reporting | % | Volume | | Rate ($) | Total |
|---|---|---|---|---|---|
| **Tax Reporting** | | | | | |
| Recording and Reconciling Settlement Fund Activity | | 15 | Hours | | |
| Preparation of Settlement Fund Tax Return | | 1 | Per Annum | | |

| Mail Handling, Scanning & Data/Image Storage | Volume | | Rate ($) | Total |
|---|---|---|---|---|
| **Mail Handling & Scanning** | | | | |
| Scanning Set-Up Charges | 1 | One-Time | | |
| Scanning / Images of Documents | 681 | Per Scan | | |
| Mail Handling Charges | 681 | Per Piece | | |
| PO Box Fee | 9 | Per Month | | |
| **Data / Image Storage** | | | | |
| Data / Image Storage - Including Electronic Claims Received | 9 | Per Month | | |
| Technology Charge | 9 | Per Month | | |

| Fees | Volume | | Rate ($) | Total |
|---|---|---|---|---|
| **Staff Hours** | | | | |
| Executive Management | 5 | Hours | | |
| Senior Director | 5 | Hours | | |
| Project Management - Blended Rates | 45 | Hours | | |
| Staff - Blended Rates | 75 | Hours | | |
| Clerical or Data Entry - Blended Rates | 25 | Hours | | |
| Technical Consulting - Blended Rates | 20 | Hours | | |

| [4] Out-of-Pocket Costs & Expenses | Volume | | Rate ($) | Total |
|---|---|---|---|---|
| **Out-of-Pocket Costs** | | | | |
| Cost Estimates | TBD | At Cost | | TBD |
| **Expenses** | | | | |
| Postage - CAFA | 2 | Per Piece | | |
| Postage - Notice (Postcard) | 5,914 | Per Piece | | |
| Postage - Letters | 6 | Per Piece | | |
| Postage - Distribution (Letter) | 5,813 | Per Piece | | |

| **TOTAL ESTIMATED FEES & EXPENSES** | | | | $ | 81,091.87 |
|---|---|---|---|---|---|
| [5] **NOT-TO-EXCEED AMOUNT** | | | | $ | 89,400.00 |

| ADDITIONAL SERVICES | | Volume | | Rate ($) | Total |
|---|---|---|---|---|---|
| **Call Center** | 5% | 5,600 | | | |
| Automated Telephone Support (IVR) | | 2 | Minutes per Call | | |
| IVR Design & Setup | | 1 | One-Time | | |
| IVR Operating System (per minute) | | 11,200 | Per Minute | | |
| | | | Sub-Total: Call Center | $ | 3,800.00 |

[1] Due to a global paper shortage, pricing subject to change based on paper pricing and availability at the time of engagement.

[2] Standard website build includes general case information, FAQs, Key Dates and Documents, Contact Info and Online Claim filing, if applicable. Customization and enhanced functionality available for additional cost.

[3] Rates apply to domestic payments and do not include escheatment costs. Payments to international claimants / class members may incur higher charges. For subsequent distributions, print and postage are subject to change. Pricing for electronic payment options assume Kroll's standard suite of services.

[4] Postage costs are an estimate; actual costs will be based on postage rates in effect at the time of mailing and will be a direct pass through. Please note the USPS has indicated bi-annual postal rate adjustments (January & July).

[5] Not-to-Exceed Amount is contingent upon no change in the scope of work provided, assumes no more than 112,000 class members, no more than 5,914 notices mailed (inclusive of remails) and no more than 5,600 checks mailed. Postage rates will increase bi-annually (January & July) and may cause the Not-to-Exceed amount to increase as this is a pass through expense.



All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service"). The estimated fees and charges in the Proposal are based on certain information provided to Kroll Settlement Administration LLC as well as significant assumptions. Accordingly, this estimate is not intended to limit Kroll Settlement Administration LLC's actual fees and charges, which may be less or more than estimated due to the scope of actual services or changes to the underlying facts or assumptions.

**Kroll Settlement Administration LLC**

By: _____          Date: _____
    Print Name:

Title: _____


**Client**

By: _____          Date: _____
    Print Name:

Title: _____

**TERMS AND CONDITIONS**

All services to be provided by Kroll Settlement Administration LLC (together with its affiliates, "*Kroll*"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions:

**1. SERVICES**. Kroll agrees to provide the services set forth in the attached Proposal (the "*Services*"). Capitalized terms used herein and not otherwise defined have the meanings assigned to such terms in the Proposal. Kroll will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "*Client Parties*") with respect to the Services. The parties agree that Kroll may rely upon, and Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by Client. Client agrees and understands that Kroll shall not provide Client or any other party with any legal advice.

**2. RATES, EXPENSES AND PAYMENT**. Kroll agrees to charge Client, and Client agrees to pay Kroll, subject to the terms herein, fees and expenses as set forth in the Proposal. Client acknowledges that any estimate in the Proposal is based upon information provided by Client to Kroll and actual fees and expenses may vary depending on the actual circumstances and length of the case. Notwithstanding the foregoing, where total expenses are expected to exceed $10,000 in any single month (e.g., publication notice), Kroll may require advance payment from Client, which shall be due and payable upon demand and prior to the performance of Services. Kroll reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, Kroll will provide Client thirty (30) days written notice. Client agrees to pay the reasonable out of pocket expenses incurred by Kroll in connection with Services. Kroll agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt. The Client shall pay or reimburse any taxes that are applicable to the Services or that are measured by payments made hereunder and which are required to be collected by Kroll or paid by Kroll to a taxing authority, other than taxes based on Kroll's income.

All amounts shall remain due and payable to Kroll without regard for the disposition of Client's case (e.g. whether by verdict, dismissal, settlement or otherwise). If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "*Finance Charge*"), calculated as 1.5% of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to Kroll within fourteen (14) days of receipt of the invoice by Client.

At the conclusion of Kroll's performance of all Services hereunder, Kroll shall be entitled to compensation for all amounts reasonably incurred in connection with the closing of accounts and related distributions, including any costs associated with the escheatment process (if applicable).

Client hereby authorizes Kroll to stop payment of checks issued in payment of settlement proceeds, if applicable, but not presented for payment, when the payees thereof allege either that they have not received the checks or that such checks have been mislaid, lost, stolen, destroyed or, through no fault of theirs, are otherwise beyond their control and cannot be produced by them for presentation and collection, and Kroll shall issue and deliver duplicate checks in replacement thereof. Client shall indemnify Kroll against any loss or damage resulting from reissuance of the checks. Further, in the event payees present their checks for payment through electronic or mobile deposit and subsequently present their checks for payment, at which point they are dishonored, Client shall indemnify Kroll against any loss or damage resulting from the double presentment, including any holder in due course claims.

**3. FURTHER ASSURANCES**. Client agrees that it will use its best efforts to include provisions reasonably acceptable to Kroll in any relevant court order, settlement agreement or similar document that provide for the payment of Kroll's fees and expenses hereunder. Where reasonably practicable, Client will afford Kroll the opportunity to review such documents prior to execution or filing with the court. Notwithstanding any such review, no agreement to which Kroll is not a party shall reduce or limit the full and prompt payment of Kroll's fees and expenses as set forth herein and in the Proposal.

**4. RIGHTS OF OWNERSHIP**. The parties understand that the software programs and other materials furnished by Kroll to Client and/or developed during the course of the performance of Services are the sole property of Kroll. The term "*program*" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by Kroll.

**5. CONFIDENTIALITY**. Each of Kroll and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party (to the extent legally permissible), release the required information. These provisions shall survive termination of Services.

**6. BANK ACCOUNTS**. At Client's request, Kroll shall be authorized to establish accounts with financial institutions as agent for Client or as otherwise agreed by the parties. In some cases, Kroll may derive financial benefits from financial institutions in connection with the deposit and/or investment of settlement funds with such institutions, including, without limitation, discounts on certain banking services/fees and compensation for services Kroll performs for financial institutions to be eligible for FDIC deposit insurance and in connection with the disbursement of funds in foreign currencies. All charges imposed by the financial institution in connection with the administration of the account shall be payable from the account.

**7. TERMINATION**. The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "*Cause*" means (i) gross negligence or willful misconduct of Kroll that causes serious and material harm to Client's settlement, (ii) the failure of Client to pay Kroll invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where Kroll reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination.

In the event that the Services are terminated, regardless of the reason for such termination, Kroll shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media or other materials furnished by Client to Kroll or received by Kroll in connection with the Services. Client agrees to pay for such transfer services in accordance with Kroll's then existing prices for such services.

**8. LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold Kroll, its affiliates, members,

directors, officers, employees, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "*Losses*") resulting from, arising out of or related to Kroll's performance of Services. Such indemnification shall exclude Losses resulting from Kroll's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party. The parties shall notify each other promptly in writing upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either becomes aware of with respect to Services provided by Kroll.

Except as provided herein, Kroll's liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if Kroll has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Kroll, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall Kroll's liability for any Losses, whether direct or indirect, arising out of the Services exceed the total amount billed to Client and actually paid to Kroll for the Services. In no event shall Kroll be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, Kroll makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

9. **FORCE MAJEURE**. Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, epidemic, pandemic, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

10. **INDEPENDENT CONTRACTORS**. Kroll is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

11. **APPLICABLE LAW**. These Terms and Conditions will be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to any choice of law principles.

12. **NOTICES**. All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid, or on the day it is given if sent by email or facsimile, or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

13. **ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY; BINDING EFFECT**. These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a writing duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, inure to the benefit of, and are enforceable by, the parties and their respective successors and permitted assigns.