Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:       fhedin@hedinllp.com

*Counsel for Plaintiffs and
the Settlement Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSIBLE "SKYLER" FOSTER; MARIE SCOTT; and KRISTA BAUMBACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY & DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE, | Case No. 2:23-cv-07441-AB-PVC<br><br>Unopposed Motion and Memorandum of Points/Authorities in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards<br><br>**Judge: Hon. André Birotte, Jr.**<br>**Date: January 31, 2025 at 1:30 p.m.** |

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

   (a)    Procedural History ........................................................................... 4

II.    TERMS OF THE SETTLEMENT ...................................................... 7

III.    ANALYSIS ........................................................................................... 8

   (a)    The Requested Award of Attorneys' Fees and Expenses is Reasonable ......... 8

   (b)    The Requested Fee Award is Reasonable Under Both the Percentage of the
Fund and Lodestar/Multiplier Methods. .................................................. 10

   (c)    The Requested Fee Award is Reasonable Under the Percentage of the Fund
Method ............................................................................................ 11
     1.    The Results Achieved ................................................................ 12
     2.    Litigation Risk ......................................................................... 13
     3.    Skill Required and Adequacy of Work ......................................... 15
     4.    The Contingent Nature of the Fee .............................................. 16
     5.    Awards Made in Similar Cases ................................................... 16

   (d)    Class Counsel's Lodestar Confirms the Reasonableness of Its Fee Request 18
     1.    Reasonable Hourly Rate and Time Expended ................................ 20
     2.    Reasonable Multiplier .............................................................. 21

   (e)    Class Counsel's Request for Reimbursement of Reasonable Expenses of
$14,000 is Warranted ......................................................................... 23

   (f)    The Proposed Incentive Award for the Class Representatives is Reasonable .. 24

IV.    CONCLUSION ..................................................................................... 25

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

# **TABLE OF AUTHORITIES**

## CASES

*Bloom v. City of San Diego*, No. 17-CV-02324-AJB-DEB, 2024 WL 4495512 (S.D. Cal. Oct. 15, 2024)..................................................................................................26

*Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2016 WL 3092090 (N.D. Cal. June 2, 2016).........................................................................................................22

*Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973 (9th Cir. 2008)................................20

*Carter v. Caleb Brett LLC*, 757 F.3d 866 (Cal. App. 9th 2014)................................19

*Chalmers v. City of Los Angeles*, 796 F. 2d 1205 (9th Cir. 1986)............................20

*Children's Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App 4th 740 (2002)........................20

*Craft v. County of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008)........10, 16

*Eashoo v. Iovate Health Sciences U.S.A., Inc*., No. CV-15-01726-BRO-PJWX), 2016 WL 6205785 (C.D. Cal., Apr. 5, 2016)............................................................11, 19

*Eddings v. Health Net, Inc.*, No. CV 10–1744–JST (RZX), 2013 WL 3013867 (C.D. Cal. 2013)..............................................................................................................25

*Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2024 WL 4634060 (N.D. Cal. Oct. 29, 2024)..............................................................................................................25

*Elser v. I.A.M. Nat. Pension Fund,* 579 F. Supp. 1375 (C.D. Cal. 1984)..................22

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997 (9th Cir. 2002)..........18

*Glass v. UBS Fin. Servs., Inc*., 331 F. App'x. 452 (9th Cir. 2009)...........................17

*Glass v. UBS Financial Services, Inc*., No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. 2007)..............................................................................................................11

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV134460GHKMRWX, 2016 WL 6156076 (C.D. Cal. Aug. 16, 2016)..............22

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998)...................................10, 19

*Haro v. Laboratory Corp. of Am.*, 2:18-cv-09091-AB (C.D. Cal. Nov. 18, 2020).....17

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994).......................................................24

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011)............................................9

*In re Activision Securities Litigation,* 723 F.Supp. 1373 (N.D. Cal. 1989)...............10

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..........10, 21

*In re Copley Pharmaceutical, Inc.*, 1 F.Supp.2d 1407 (D. Wy. 1998).......................10

*In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018)...................................12

*In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...............24

*In re Media Vision Tech. Sec. Litig*., 913 F.Supp. 1362 (N.D. Cal. 1996)................23

*In re Online DVD-Rental Antitrust Litig.*, No. 12-15705, 779 F.3d 934 (9th Cir. 2015)..............................................................................................................10, 12

*In re Pacific Enterprises Sec. Litig*., 47 F. 3d 373 (9th Cir. 1995)............................17

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438 (C.D. Cal. 2014)..........................................................20, 21

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

*In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291 (9th Cir. 1994). ......... 18

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011). .................................................. 21

*King v. Bumble Trading, Inc.*, No. 5:18-cv-06868-NC (N.D. Cal. Dec. 18, 2020). ... 17

*Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES(C.D. Cal. Mar. 5, 2018). ................................................................................................................. 17

*Laffitte v. Robert Half Intern. Inc.*, 1 Cal. 5th 480 (2016). ........................................... 9

*Laster v. Hartford Life & Accident Ins. Co.*, No. 217CV00851ABJEMX, 2019 WL 12529140 (C.D. Cal. Jan. 14, 2019). ........................................................... 17

*Lewis v. Starbucks Corp*., No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. 2008). ............................................................................................ 11

*Lowery v. Rhapsody Int'l, Inc.,* 75 F.4th 985 (9th Cir. 2023). ............................ 10, 11

*Lusk v. Five Guys Enterprises LLC,* No. 1:17-CV-0762 JLT EPG, 2023 WL 4134656 (E.D. Cal. June 22, 2023). ...................................................................... 20

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995). ........................... 9

*McIntosh v. McAfee, Inc.*, No. C06-07694 JW, 2009 WL 673976 (N.D. Cal. Mar. 13, 2009). ........................................................................................................... 22

*Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153 (C.D. Cal. Sept. 18, 2017). ............................................................................................ 25

*Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). ..................................................... 23

*Moore v. James H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982). ........................... 11

*Notorious B.I.G. v. Yes. Snowboards,* No. CV 19-1946-JAK (KSX), 2020 WL 6154195 (C.D. Cal. Sept. 18, 2020). .......................................................... 21

*Palmer v. Nigaglioni*, 508 F. App'x. 658 (9th Cir. 2013). .......................................... 17

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010). ............... 9

*Pincay Investments Co. v. Covad Commc'ns Grp*., 90 F. App'x. 510 (9th Cir. 2004). ................................................................................................................... 17

*Quevedo v. New Albertsons, Inc*, No. SACV131160JLSJPRX, 2015 WL 10939716 (C.D. Cal. May 27, 2015). ..................................................................... 22

*Ramgen Power Sys. LLC v. Agilis Eng'g Inc.*, No. C12-1762 MJP, 2015 WL 362733 (W.D. Wash. Jan. 27, 2015)........................................................................ 22

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). ................................... 25

*Romero v. Producers Dairy Foods, Inc*., 2007 WL 3492841 (E.D. Cal. 2007). ........ 16

*Ruacho v. Multi Cable, Inc.*, No. 2:15-CV-05592-AB-FFM, 2018 WL 6164302 (C.D. Cal. Sept. 4, 2018). ............................................................................................ 17

*Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013). ....................................................... 9

*Schwarz v. Sec. of Health & Human Servs*., 73 F.3d 895 (9th Cir. 1995). ............... 12

*Singer v. Becton Dickinson and Co*., 2010 WL 2196104 (S.D. Cal. 2010). .............. 16

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). ... 10, 11

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

*State of Fla. v. Dunne*, 915 F.2d 542 (9th Cir. 1990)................................................. 10

*Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2024 WL 4642877 (N.D. Cal. Oct. 30, 2024). ............................................................................................................... 25

*Tate v. 800-Flowers, Inc.,* No. 23STCV08774 ..................................................... 4, 13

*Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294 (N.D. Cal. 1995)......... 17, 21

*Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482 (E.D. Cal. 2010). ................. 16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). ................... 9, 11, 16, 21

*Weiner v. Ocwen Fin. Corp.*, No. 2:14-CV-02597-DJC-SCR, 2024 WL 4458383 (E.D. Cal. Oct. 10, 2024). ................................................................................... 26

*Young v. Polo Retail, LLC*, 2007 WL 951821 (N.D. Cal. 2007). ............................. 16

*Zilhaver v. UnitedHealth Group, Inc*. 646 F.Supp.2d 1075 (D. MN. 2009)............... 24

*Zubia v. Shamrock Foods Co.*, No. CV1603128ABAGRX, 2017 WL 10541431 (C.D. Cal. Dec. 21, 2017). ........................................................................................... 9

### STATUTES

Cal. Bus. & Prof. Code § 17200, *et. seq*. ................................................................... 2

Cal. Bus. & Prof. Code § 17600, *et. seq*. ........................................................... passim

Cal. Bus. Prof. Code § 17601 .................................................................................. 14

### RULES

Federal Rule of Civil Procedure 23................................................................................ 23

### TREATISES

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) §14.121 (2004)........................................................................................................... 10

iv

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Plaintiffs Tessible "Skyler" Foster, Marie Scott, and Krista Baumbach, hereby move on an unopposed basis for the award of attorneys' fees, expenses, and service awards under the preliminarily approved class-wide Settlement Agreement (attached as Exhibit "A" to the Declaration of Frank S. Hedin ("Hedin Decl.") submitted concurrently herewith) entered into between Plaintiffs and Defendant 800-Flowers, Inc. ("Flowers") (collectively, the "Parties").[1]

## I.    INTRODUCTION

This is a putative class action that alleges Defendant engaged in an "automatic renewal" program with respect to its Celebrations Passport product that Defendant sells on its network of websites and through other channels, including its telephone lines, that plaintiffs contend violated California law.  Defendant is a retailer of flowers and gifts.  Defendant's Celebrations Passport is a membership program that provides customers free shipping and no service fees for the first year of enrollment at a cost of approximately $19.99 that then automatically renews every year after the initial year at a higher price plus tax (the "Automatic Renewal Fee") charged to the consumer's stored credit card, debit card or third-party payment account. Plaintiffs alleged in the operative Second Amended Class Action Complaint ("SAC") (ECF No. 45) that before Defendant charged the Automatic Renewal Fees, it not only failed to obtain Plaintiffs' and other California consumers' consent to be charged these fees, but Defendant failed to even disclose the existence of the fee to them in a clear and conspicuous manner.  The SAC further alleges that by assessing the Automatic Renewal Fees to Plaintiffs and other California consumers without providing adequate notice or obtaining the requisite consent, Defendant violated California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et. seq*. and that such violation, in turn, was a violation of California's Unfair Competition Law, Cal. Bus.

---

[1]    Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

& Prof. Code § 17200, *et. seq*.  The SAC sought as relief, among other things, damages, injunctive relief, and an award of attorneys' fees.

The Court has preliminarily certified the following class: "all Persons who purchased Celebrations Passport in California on or after September 7, 2019, through May 31, 2022, and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded."  (ECF No. 58 at 2).  Confirmatory discovery has revealed that the Settlement Class is composed of approximately 112,000 California consumers who hold or held a Celebrations Passport account.

Defendant vigorously defended the litigation throughout.  Indeed, this litigation has spanned two filed actions, has involved multiple motions to compel various representative plaintiffs in these actions to arbitration, multiple amended complaints and related motions, document discovery, consultation with a retained expert, and hours of conferral amongst the Parties, all of which culminated in a day-long mediation that ultimately yielded the proposed Settlement.  Plaintiffs' counsel thoroughly investigated the claims alleged in this action, including reviewing the Celebrations Passport accounts of numerous members of the Settlement Class and assessing Defendant's practices with respect to sales of Celebrations Passport, presentation of autorenewal terms, and the methods of automatic renewal of Celebrations Passport at various times.

In pursuing this action, Plaintiffs faced complex legal challenges related to motion practice, understanding the automatic renewal practices at issue, evaluating the plaintiffs' claims, and genuine uncertainty as to the outcome of the matter. Nonetheless, counsel was able to obtain relief for consumers statewide. Defendant has agreed to fund a non-reversionary Common Fund in the amount of $1,200,000.00 from which each Settlement Class Member who does not exclude him or herself will be <u>automatically paid a *pro rata* Settlement Share without the need to file a claim form</u>. By the instant motion, counsel seeks attorneys' fees in the amount of $300,000.00 (25%

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

of the Common Fund) and Service Awards for the each of the representative Plaintiffs in the amount of $2,500.00 (for a total of $7,500), as provided in the Settlement Agreement. Additionally, Class Counsel seeks the reimbursement of reasonable litigation costs not to exceed $14,000.00 (which is less than the amount actually expended by class counsel), which the parties agreed to at mediation and which agreement was memorialized in a binding term sheet.

It is estimated that if the Settlement is finally approved with the amounts stated above, each Settlement Class Member who does not opt out will automatically receive between $6.60 and $6.67. [2]

The requested attorneys' fees represent 25% of the Common Fund, which is the standard "benchmark" in the Ninth Circuit for common fund cases. The reasonableness of Plaintiffs' fee request is confirmed by a lodestar cross-check, which reflects a <u>current</u> lodestar multiplier of less than 1.18 based on Class Counsel's historical hourly rates. However, Class Counsel's fees will continue to rise as Class Counsel undertakes the work necessary to complete the Settlement, including working with the Claims Administrator to ensure the notice program is successfully concluded, drafting the final approval motion and supporting documents, addressing any objections from Settlement Class Members, appearing at the final approval hearing and monitoring payments to the Settlement Class and the *cy pres* recipient, including responding to payment inquiries. In light of this work, Class Counsel's lodestar will come very close to the $300,000 in fees sought, without a multiplier. Plaintiffs' litigation costs and expenses, which were advanced by Class Counsel, were reasonably

---

[2]    The per class member recovery was slightly reduced from the $6.90 to $6.99 range anticipated at the Preliminary Approval stage because the Settlement Administrator encountered a significantly higher bounce back rate for emailed Class Notices, requiring the mailing of substantially more post card notices and that will require the mailing of paper checks to these Settlement Class Members.

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

incurred and necessary to achieve the substantial results in this case. Though Plaintiffs' counsel expended more than $17,000 in costs, counsel have agreed to accept a cost reimbursement of $14,000. Finally, Plaintiffs requested Incentive Awards are reasonable to compensate each named Plaintiff for the work they each performed in service to the Class. As detailed herein, Class Counsel's request for attorneys' fees and costs, and Incentive Awards for each named Plaintiff comports with the applicable law and is well-justified by the facts of this case.

**(a) Procedural History**

On April 20, 2023, after extensive prefiling investigation, Damon Tate, represented by the undersigned, filed a putative class action against Defendant in the Superior Court of Los Angeles County styled *Tate v. 800-Flowers, Inc.*, alleging, as here, that Defendant violated the ARL in connection with its Celebrations Passport customer loyalty program.

At all times thereafter, Defendant vigorously defended the litigation. It removed the case to the Central District of California, whereupon the case was assigned case number 2:23-cv-04340-AB-PVC (C.D. Cal. filed June 2, 2024). (*Tate*, ECF No. 1). On August 7, 2023, Defendant filed a motion to compel each of the *Tate* plaintiffs to arbitration, stay the case pending arbitration, strike class claims, and to dismiss several of the *Tate* plaintiffs for lack of standing. (*Tate*, ECF No. 16). On September 6, 2023, the *Tate* plaintiffs voluntarily dismissed the action without prejudice. (*Tate*, ECF No. 22).

On September 7, 2023, plaintiff Foster, along with Anayancy Paiz, Susan Finkbeiner, and Larissa Rapadas, filed the initial class action complaint in this Action (ECF No. 1), which, like the *Tate* action, alleged that Defendant violated the ARL in connection with its Celebrations Passport membership program.

On November 14, 2023, Defendant filed a motion to compel arbitration and stay the case as to Anayancy Paiz and Larissa Rapadas, arguing that their purchase of

Celebrations Passport using the desktop computer sales channel bound them to terms and conditions which required arbitration of disputes. (ECF No. 14). In the same motion, Defendant moved to dismiss Ms. Finkbeiner for lack of standing. (*Id.*)

On December 5, 2023, the plaintiffs filed a first amended complaint, which retained Tessible Foster, Anayancy Paiz, and Larissa Rapadas as representative plaintiffs, and added Marie Scott, Krista Baumbach, Kimberly Moore Keller and Latricia Anderson Thompson representative plaintiffs. (ECF No. 20).

On January 18, 2024, Defendant filed a motion to compel Anayancy Paiz, Larissa Rapadas, Kimberly Moore Keller, Latricia Anderson Thompson, and Marie Scott to arbitration, sought a stay of the case pending final resolution of the arbitrations, and separately moved to dismiss Kimberly Moore Keller and Latricia Anderson Thompson for lack of standing. (ECF No. 27).

Contemporaneously, Defendant answered the first amended complaint as to plaintiffs Foster and Baumbach. (ECF No. 28).

The Parties filed a Case Management Stipulation on January 19, 2024, and a stipulation regarding class certification briefing on February 1, 2024. (ECF No. 29, 31). The Court entered both stipulations. (ECF Nos. 34, 37).

On March 28, 2024, the Court granted Plaintiffs leave to file the SAC (ECF No. 43), which Plaintiffs sought to file in lieu of opposing the then-pending motion to compel arbitration. On April 12, 2024, Plaintiffs filed the SAC (ECF No. 45), the operative complaint in the Action. The SAC named Plaintiffs Foster, Scott, and Baumbach as the only representative plaintiffs and, like each of the prior complaints, alleged Defendant violated the ARL in connection with its Celebrations Passport membership program. (*Id.*)

On May 10, 2024, Defendant filed a motion to compel Plaintiffs Baumbach and Scott to arbitration and stay the case, or alternatively, to dismiss Plaintiff Baumbach for lack of standing or strike the class action allegations as to Plaintiffs Baumbach and

1   Scott. (ECF No. 46).  Defendant also filed an answer to the SAC as to Plaintiff Foster.

2   (ECF No. 47).

3          Plaintiffs prepared to oppose the motion by engaging and consulting a web

4   design expert who examined the web flow that Defendant asserted bound Ms.

5   Baumbach to arbitration.  (Hedin Decl., ¶ 15).  Plaintiffs also moved to adjourn the

6   hearing on the Motion to Compel to take discovery on the factual issues raised in the

7   Motion (ECF No. 49), which the Court granted (ECF No. 51).

8          The Parties' discussions concerning the scope of discovery needed as to the

9   pending motion, turned towards a discussion concerning resolution of the Action.

10  (Hedin Decl., ¶ 16).  The Parties agreed to engage Jill Sperber, Esq. of Judicate West,

11  a mediator with substantial experience mediating complex civil actions, including

12  consumer class actions.  Plaintiffs agreed to mediate on the condition that in advance

13  of the mediation, Defendant had to provide Plaintiffs with class size information and

14  information concerning the number of automatic renewals paid by California

15  consumers across various sales channels.   To facilitate the mediation, the Parties

16  stipulated to, and the Court granted, a 90-day enlargement of time of deadlines related

17  to the pending motion to compel arbitration and a 180-day enlargement of all other

18  case management deadlines, including trial.  (ECF No. 52, 53).

19         On July 24, 2024, the Parties attended a full day of mediation before Ms.

20  Sperber.  (Hedin Decl., ¶ 18). Before the mediation, Defendant provided the requested

21  class size and the sales channel information.  (*Id.*)

22         The Parties each disclosed to the mediator (but did not exchange) position

23  statements.  (Hedin Decl., ¶ 19).  Plaintiffs' statement set forth their evaluation of the

24  case, including their favorable assessment of prevailing on both the pending motion to

25  compel arbitration, the motion to dismiss Ms. Baumbach for lack of standing, and the

26  high likelihood of certifying a class.  (*Id.*)  Armed with the number of customers and

27  number of renewals, Plaintiffs were further able to make a cogent, good-faith

28

1  assessment of the range of potential damages, which informed the settlement
2  negotiations.  (*Id*.)

3      The mediation concluded with a settlement in principle memorialized by a
4  comprehensive term sheet executed by counsel for both Parties on July 24, 2024.  Prior
5  to the Parties executing the Settlement Agreement, Defendant produced to Plaintiffs a
6  confirmatory sworn declaration which attested to the fact that there were 112,356 email
7  addresses associated with California customers who purchased Celebrations Passport
8  from September 7, 2019, through May 31, 2022, and who incurred at least one
9  automatic renewal charge for Celebrations Passport that was not fully refunded.
10  (Hedin Decl., ¶ 22).  The Parties worked together to select Kroll as a Settlement
11  Administrator upon joint review of Kroll's comprehensive bid proposal, which
12  provided for every aspect of the proposed notice plan and which was in line with that
13  of similar class action settlement administrators.  (Hedin Decl., ¶ 22). The parties
14  executed the Settlement Agreement on August 30, 2024.  (Hedin Decl., ¶ 22).

15      The Court preliminarily approved the Settlement Agreement on October 3, 2024,
16  (ECF No. 58) finding that the relief provided was "fair, reasonable and adequate[.]"
17  (*Id.* at 2). On October 23, 2024, the Settlement Administrator initiated the Notice Plan
18  as required by the Court's Order by emailing the approved notice to the 112,356 email
19  addresses belonging to members of the Settlement Class.  (Hedin Decl., ¶ 30).  On
20  November 11, 2025, 25,855 postcard notices were mailed to those Settlement Class
21  Members for whom the notice email could not be delivered.  (Hedin Decl., ¶ 30).  To
22  date the Settlement Administrator has only received two requests for exclusion and no
23  objections.  (Hedin Decl., ¶ 30).  The deadline for opt-outs and objections is December
24  23, 2024.  (ECF No. 58 at 6).

25  **II.    TERMS OF THE SETTLEMENT**

26      Plaintiffs incorporate by reference pages 10-15 of Plaintiffs' Unopposed Motion
27  for Preliminary Approval of Settlement, which sets out the terms of the Settlement.

28

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

(ECF No. 55-1). Notably, Class Counsel's proposed Fee Award and Plaintiffs' proposed Incentive Awards are not conditions of the settlement, and are to be assessed separately from the Court's review of the fairness, adequacy, and reasonableness of the Settlement Agreement. (Hedin Decl., Ex. A., ¶ 111).  Consistent with the Settlement Agreement, Class Counsel's request for fees does not exceed $300,000 and Defendant does not oppose the request.  (Hedin Decl., Ex. A., ¶ 110).  Further, and also consistent with the Settlement Agreement, Plaintiffs' request for an Incentive Award does not exceed $2,500 per Plaintiff and Defendant similarly does not oppose this request. (Hedin Decl., Ex. A.,¶ 109).[3]

Class Counsel respectfully submits that the settlement achieved on behalf of the class represents an excellent recovery given the nature of the claims and defenses, the uncertainty associated with continuing litigation, and the maximum potential recovery if this case proceeded to trial.  The recovery of the settlement amount is directly attributable to the efforts of Class Counsel and the perseverance of Plaintiffs.  (Hedin Decl., ¶ 44).

## III.  ANALYSIS

### (a) The Requested Award of Attorneys' Fees and Expenses is Reasonable

The relief Class Counsel obtained on behalf of the Settlement Class, a $1.2 million non-reversionary, Common Fund with direct payments automatically made to Settlement Class Members by check or electronic wallet, is substantial.   The Settlement Agreement permits class counsel to seek a Fee Award of $300,000, the equivalent of 25% of the value of the Common Fund, and the parties agree that the

---

[3]    Pursuant to the term sheet executed following the mediation, the parties agreed that reasonable litigation costs would be separately reimbursable.  The request for reimbursement of costs was included in all class notices (ECF No. 55-3 at 48, 50, 53, 57, 58) and in the Motion for Preliminary Approval wherein Class Counsel advised they would seek a cost reimbursement not to exceed $14,000.  (ECF No. 55-1 at 9, fn. 4).  Defendant does not oppose the request for fees in the amount of $14,000.

Court may grant Plaintiff a separate reimbursement of $14,000 in litigation expenses. The requested Fee Award and cost reimbursement constitute a reasonable and fair fee and an appropriate reimbursement under Ninth Circuit authority. Accordingly, the Court should grant Class Counsel's requested Fee Award and expenses.

Plaintiffs bring this action alleging a violation of California's UCL based on an underlying violation of California's ARL statute. State law may apply to an award of attorneys' fees in a class action if: (1) the court is sitting in diversity, *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011) ("In diversity actions, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees."); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (holding that where the court was "sitting in diversity adjudicating state law claims" it should apply state law to determining attorneys' fees in a class action); or, (2) where "state law claims predominate," *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948, at *7 (C.D. Cal. Sept. 25, 2013) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).

California law controls the fee award because Plaintiffs brought this class action claim exclusively under California law (SAC ¶¶ 54-67.). *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."). "Under California law, the Court may use either the percentage-fee or lodestar method of recovery to calculate attorneys' fees where attorneys' fees are paid from a common fund, as they are here." *Zubia v. Shamrock Foods Co.*, No. CV1603128ABAGRX, 2017 WL 10541431, at *15 (C.D. Cal. Dec. 21, 2017) citing *Laffitte v. Robert Half Intern. Inc.*, 1 Cal. 5th 480, 503-504 (2016).

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

**(b) The Requested Fee Award is Reasonable Under Both the Percentage of the Fund and Lodestar/Multiplier Methods.**

Ninth Circuit law is consistent, the District Court has discretion to apply either the percentage-of-the-fund method or the lodestar/multiplier method to determine reasonable attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (*overruled on other grounds*). However, the Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method and lodestar/multiplier method. *See e.g., Lowery v. Rhapsody Int'l, Inc.,* 75 F.4th 985, 990 (9th Cir. 2023); *In re Online DVD-Rental Antitrust Litig.*, No. 12-15705, 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whichever method is used, the fee award should take into account the particular factors in the case and must be "reasonable under the circumstances." *State of Fla. v. Dunne*, 915 2d 542, 545 (9th Cir. 1990).

The percentage of the fund method for calculating a fee is the preferred method in common fund cases.[4] *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113,

---

[4]    FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) §14.121 (2004) ("After a period of experimentation with the lodestar method . . . the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases.") (citations omitted); *id*. (The lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation"); *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ("This court is compelled to ask, 'Is this process [lodestar] necessary' Under a cost-benefit analysis, the answer would be a resounding, 'No!'")

10

1116 (C.D. Cal. 2008). In fact, the Ninth Circuit has recognized that the lodestar
method "creates incentives for counsel to spend more hours than may be necessary
on litigating a case so as to recover a reasonable fee, since the lodestar method does
not reward early settlement." *Vizcaino*, 290 F.3d at 1050, n.5; *Moore v. James H.
Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) ("the lodestar's emphasis on hours
and billable rates woodenly inflates awards."); *see also Lewis v. Starbucks Corp*., No.
2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *7 (E.D. Cal. 2008) (awarding
attorneys' fees out of common fund using percentage method appropriate where early
settlement achieved by plaintiff's counsel); *Glass v. UBS Financial Services, Inc*., No.
C-06-4068 MMC, 2007 WL 221862, at *15-16 (N.D. Cal. 2007) (using lodestar
method would have penalized plaintiff's counsel where early settlement was reached).

Class Counsel therefore seeks a fee award as a percentage of the common fund,
specifically 25%, but as is discussed below the requested fee is likewise fully justified
under a lodestar/multiplier approach.

**(c) The Requested Fee Award is Reasonable Under the Percentage of the
Fund Method**

As stated above, the 25% benchmark for attorneys' fees is a "starting point."
*Lowery,* 75 F.4th at 990. Higher or lower percentages may be appropriate based on all
the circumstances in a given case. *See Vizcaino*, 290 F.3d at 1048; *Arizona Citrus
Growers,* 904 F.2d at 1311. Courts in the Ninth Circuit have established a non-
exhaustive list of factors to determine the reasonableness of a fee request, including:

---

Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 258 (3rd Cir.
1985), (characterizing the lodestar formula as a "cumbersome, enervating, and often
surrealistic process of preparing and evaluating fee petitions"). *See generally In re
Copley Pharmaceutical, Inc.*, 1 F. Supp. 2d 1407 (D. Wyo. 1998) (enumerating
advantages of percentage method).

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

"(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Eashoo v. Iovate Health Sciences U.S.A., Inc.*, No. CV-15-01726-BRO-PJWX), 2016 WL 6205785, at *5 (C.D. Cal., Apr. 5, 2016) (citing *Vizcaino*, 290 F.3d at 1048-50).

Class Counsel seeks exactly 25% of the common fund, which matches the acknowledged benchmark, and each of the relevant factors recognized by the Ninth Circuit supports the reasonableness of Class Counsel's fee request.

### 1.      The Results Achieved

As set forth in Plaintiffs' Unopposed Motion for Preliminary Approval, which the Court granted on October 3, 2024, the Settlement Agreement's benefits provide substantial relief to the Class. (ECF. No. 55-1 at 17-19; ECF No. 58).  Specifically, the Settlement creates a $1.2 million Common Fund for the benefit of approximately 112,000 members of the Settlement Class.  (Hedin Decl., Ex. A ¶ 87; ¶¶ 94-97).   Each Settlement Class Member who does not exclude himself or herself will automatically receive a check or payment to an electronic wallet in the amount of between $6.60 and $6.67 without the need to file a claim form.  Importantly, no part of the relief secured is in the form of coupons or credits and Settlement Class Members are receiving this cash payment on top of the benefit they originally received through their purchase of Celebrations Passport.  *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) (*citing In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015)).  Absent Plaintiffs and their counsel's pursuit of this action, there would have been no monetary award to the Class; thus this litigation was required to bring about the substantial recovery obtained.  Counsel who obtain "substantial relief" are entitled to full compensation for their efforts, *see Schwarz v. Sec. of Health & Human Servs.*,

73 F.3d 895, 901 (9th Cir. 1995), and based on the results achieved a 25% of the fund Fee Award is warranted.

### 2.     Litigation Risk

As to the second *Eschoo* factor, this case involved several complex issues of fact and law and presented significant risks for Class Counsel. The relief obtained for Class Members represents a strong result, particularly given the risks and challenges of ongoing litigation. Chief among them was Defendant's vigorous and repeated attempts to compel the Representative Plaintiffs to arbitration or to dismiss them for lack of standing. Indeed, Defendant moved to compel to arbitration 6 of the 8 proposed representative plaintiffs in this action, and earlier moved to compel to arbitration as to all five representative plaintiffs in the *Tate* action. Ultimately, Defendant filed four separate motions to compel arbitration and dismiss for lack of standing in the two cases, which were directed at 12 of the 13 proposed representative plaintiffs. *See generally* Hedin Decl. ¶¶ 4-13. Through Class Counsel's continued investigation into Defendant's various purchase channels and sales methods, Class Counsel was able to identify Representative Plaintiffs with cognizable claims to sustain this Action, despite Defendant's repeated attempts to invoke arbitration. In fact, Defendant's latest motion to compel Plaintiffs Baumbach and Scott to arbitration was pending while the Parties were mediating the case. And though Plaintiffs believe they would have defeated the motion had the Parties not reached the proposed Settlement, if Defendant won the motion, then it is possible that the claims of those consumers who used the same sales channels to purchase Celebrations Passport as Plaintiffs Baumbach and Scott (mobile and the 1-800 number respectively) would have been excluded from any potential class-wide relief. The risk of being unable to bring claims that were not subject to arbitration and, thus, appropriate for class-wide resolution was real and was confronted by Plaintiffs' counsel head-on throughout the case.

13

1    <u>Second</u>, Defendant disputes that it violated the ARL's requirement that notice of

2    the ARL terms be "clear and conspicuous." For written disclosures, this means "in

3    larger type than the surrounding text, or in contrasting type, font, or color to the

4    surrounding text of the same size, or set off from the surrounding text of the same size

5    by symbols or other marks, in a manner that clearly calls attention to the language."

6    Cal. Bus. Prof. Code § 17601(c). For audio disclosures, this means in "a volume and

7    cadence sufficient to be readily audible and understandable." *Id*.   Over the years,

8    Defendant made several revisions to its sales channels and the methods in which it

9    presented Celebrations Passport's terms.  Plaintiffs' counsel was cognizant that if this

10   factual dispute had been resolved in Defendant's favor, the outcome would have been

11   that fewer consumers than those who hold the approximately 112,000 email addresses

12   in Defendant's records who stand to benefit under the proposed Settlement would have

13   received relief.  Nonetheless, based on their substantial investigation including a

14   thorough examination of archived versions of Defendant's website, Plaintiffs' counsel

15   proceeded with the Action.

16   <u>Third</u>, and related to the first and second litigation risks just discussed, the Parties

17   disagree on whether the Settlement Class could be certified on a contested motion for

18   class certification. During the litigation and the Parties' settlement discussions,

19   Defendant steadfastly maintained, *inter alia*, that individual issues among Settlement

20   Class Members would predominate and preclude class certification.  (Hedin Decl. ¶

21   27).   For example, Defendant asserts that Plaintiffs Baumbach and Scott, and,

22   ostensibly, the many other proposed Settlement Class who purchased Celebrations

23   Passport in the same manner, agreed to arbitrate the claims alleged in this action and

24   waived their right to proceed in a class action.  (*Id.*) In addition, separate from the issue

25   of whether certain class members agreed to arbitrate, Defendant indicated that it would

26   have opposed a contested motion for class certification by arguing that variations

27   across the content and context of its sales channels' disclosures of the ARL terms at

28

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

different times require an individualized determination of the ARL notice Settlement Class received at the time of their purchase of Celebrations Passport.  (*Id.*) While Plaintiffs disagree and believe the Settlement Class is well-suited for certification, including on a contested basis, winning class certification was still far from a sure thing and Plaintiffs' counsel accepted the risk of proceeding with the Action nonetheless.

<u>Fourth</u>, Plaintiffs' counsel had to contend with the fact that Defendant had viable damages defenses that could have substantially impacted a potential recovery. Defendant argued that Plaintiffs waived any right to recovery by making voluntary payments for Celebrations Passport; that they were on notice of the automatic renewal by virtue of the charge after the first year; and, potentially, that accepting the benefits of Celebrations Passport should offset any damages.  (Hedin Decl., ¶ 27).   These defenses also posed a significant litigation risk.

### 3.    Skill Required and Adequacy of Work

Class Counsel is a law firm well-versed in large scale class action work of national importance. (Hedin Decl., ¶¶ 33-34). The attorneys working on this matter have been appointed class counsel and lead counsel through both certification and settlement of numerous class actions. (*Id.*) Class Counsel's experience in consumer class actions was integral in evaluating the strengths and weaknesses of the case against Defendant, as well as the reasonableness of the Settlement. These evaluations included an analysis of the relief ultimately obtained, the probable hurdles to class certification, and merits and damages defenses.  Class Counsel spent significant effort and exhibited considerable skill in developing the factual and legal claims in the case, refining these claims through multiple amendments of the complaint informed by counsel's ongoing investigation, and in negotiating broad relief under a maximally efficient settlement structure for every Member of the Settlement Class despite Defendant's vigorous opposition to Plaintiffs' claims and its asserted legal and factual defenses thereto.

Through these efforts and in the face of difficult issues of fact and law, Class Counsel obtained meaningful monetary relief that each member of the Settlement Class who does not exclude himself or herself will automatically receive without protracted and costly litigation.

### 4. The Contingent Nature of the Fee

Class Counsel undertook and funded this litigation on a purely contingent basis, with no assurance of recovering any out-of-pocket expenses or attorneys' fees. (Hedin Decl., ¶ 37). Class Counsel expended considerable time and resources to investigate and prosecute the case successfully on behalf of the Class. (*Id*.) Counsel undertook substantial risk of non-payment, and the percentage fee request here will fairly compensate Counsel for this risk.

### 5. Awards Made in Similar Cases

The 25% fee sought here is in accord with the established 9th Circuit practice, with rulings of district courts within California, this Court's fee determinations in recent class actions, and with similar cases involving California ARL violations. Class Counsel's request for 25% of the common fund is the exact benchmark set by the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1047; *Craft*, 624 F. Supp. 2d at 1127 (holding attorneys' fees for mega-fund cases are typically under 25% while cases that settle below $10 million are often more than the 25% benchmark); *see also In re Pacific Enterprises Sec. Litig*., 47 F. 3d 373, 379 (9th Cir. 1995) (awarding 33.3% of the fund); *Palmer v. Nigaglioni*, 508 F. App'x. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F. 3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc*., 331 F. App'x. 452, 457 (9th Cir. 2009) (25%); *Pincay Investments Co. v. Covad Commc'ns Grp*., 90 F. App'x. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi v. Tucson Elec. Power Co*., 8 F. 3d 1370 (9th Cir. 1993) (25%).

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1

2    A review of California cases in other districts demonstrates that courts often award

3    attorneys' fees exceeding the benchmark in the range of 30-40% in class actions that

4    result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley*

5    *Roofing, Inc*. 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent class

6    actions where federal district courts approved attorney fee awards ranging from 30 to

7    33%); *Singer v. Becton Dickinson and Co*., 2010 WL 2196104, at * 8 (S.D. Cal. 2010)

8    (approving attorney fee award of 33.33% of the common fund and holding that award

9    was similar to awards in three other class action cases where fees ranged from 33.3%

10   to 40%); *Romero v. Producers Dairy Foods, Inc*., 2007 WL 3492841 (E.D. Cal. 2007);

11   *Young v. Polo Retail, LLC*, 2007 WL 951821, at *5-8 (N.D. Cal. 2007) (awarding 31%

12   of $1.4 million in case alleging store forced employees to purchase and wear store

13   merchandise).

14       This Court has approved similar fee awards in recent cases involving settlement

15   funds of a similar size.  *See e.g., Haro v. Laboratory Corp. of Am.*, 2:18-cv-09091-AB,

16   ECF No. 49 (C.D. Cal. Nov. 18, 2020) (citing *Van Vranken v. Atlantic Richfield Co*.,

17   901 F. Supp. 294, 298 (N.D. Cal. 1995) and awarding 30% of $1.25 million common

18   fund as attorneys' fees finding such fees "reasonable for contingency fee class action

19   such as this[.]"); *Laster v. Hartford Life & Accident Ins. Co.*, No.

20   217CV00851ABJEMX, 2019 WL 12529140, at *6 (C.D. Cal. Jan. 14, 2019) (awarding

21   33% of $1.5 million settlement fund as attorneys' fund); *Ruacho v. Multi Cable, Inc.*,

22   No. 2:15-CV-05592-AB-FFM, 2018 WL 6164302, at *2 (C.D. Cal. Sept. 4, 2018)

23   (awarding attorneys' fee award equivalent to 32% of the $1.8M settlement fund).

24   Moreover, the fee award sought by Class counsel in this case is in accord with recent

25   attorney fee awards under the same California ARL statute. *See  Kissel v. Code 42*

26   *Software, Inc.*, No. 8:15-cv-01936-JLS-KES, ECF No. 60 at 2, (C.D. Cal. Mar. 5, 2018)

27   (approving 25%, $100,000 fee award paid from $400,000 Common Fund in action

28

involving alleged violation of California ARL); *King v. Bumble Trading, Inc.*, No. 5:18-cv-06868-NC, ECF No. 133 at 15, (N.D. Cal. Dec. 18, 2020) (awarding 25% of $22.5 million settlement fund ($5,625,000.00) for attorneys' fees in case alleging violation of California ARL).

In short, Class Counsel invested substantial time and money at significant risk of nonpayment in a complicated case. The requested fee is fair compensation, and fully in accord with percentage awards granted in similar actions. A lodestar cross-check also confirms the reasonableness of the requested percentage fee, as set forth below.

### (d) Class Counsel's Lodestar Confirms the Reasonableness of Its Fee Request

The reasonableness of Class Counsel's fee request is further confirmed by its lodestar. When the lodestar approach is used, multiplying the number of hours counsel worked by a reasonable hourly rate establishes the lodestar. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994).[5] After the lodestar has been determined, the Court may apply a multiplier to the lodestar when "(1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (internal citation omitted). A number of factors are relevant to the application

---

[5]    "[A] [lodestar] cross-check is not required so long as the court achieves a reasonable result using the method it selects." *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608 JCS, 2023 WL 2699972, at *18 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) (citations omitted).

of a multiplier, including: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (Cal. App. 9th 2014); *see also Hanlon*, 150 F.3d at 1029 (the court may apply a multiplier "to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issue presented, and the risk of nonpayment"). Many of these factors overlap with the five factors from *Eashoo* cited above for the reasonableness of the percentage fee request and equally support the reasonableness of the requested fee under the lodestar method.

At the outset, Class Counsel notes that with the work left to be done in this case, that Class Counsel's lodestar, <u>without a multiplier</u>, will come very close to the $300,000 percentage-based fee provided for under the Settlement Agreement. As set forth in the Hedin Declaration, counsel has expended 387.8 hours on the case to date:

| Timekeeper | Title/Graduation Year | Rate | Hours | Individual Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | Managing Partner (2012) | $825 | 42.5 | $35,062.50 |
| Arun Ravindran | Counsel (2007) | $700 | 230.2 | $161,140.00 |
| Paula Buzzi | Counsel (2012) | $500 | 80.0 | $40,000.00 |
| Julie Holt | Counsel (2011) | $600 | 22.0 | $13,200.00 |
| Elliot Jackson | Associate (2021) | $450 | 13.1 | $5,895.00 |
| **Total** | | | **387.8** | **$255,297.50** |

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Multiplied by its reasonable hourly rates, which are comparable to those of other class action attorneys and reasonable in light of the skill and experience of Class Counsel, this amounts to a total lodestar of $255,297.50. (Hedin Decl., ¶ 38). A multiplier of 1.18 against the current lodestar yields the $300,000 Fee Award sought. However, this multiplier will be reduced as counsel undertakes the substantial work necessary to fully achieve the Settlement and conclude the representation.  Specifically, Counsel will need to work with the Settlement Administrator to ensure the completion of the Notice Plan, draft the motion for final approval and all supporting documents, address any objections, appear at the final approval hearing, work with the Settlement Administrator to ensure  proper distribution of payments to class members and *cy pres* recipient, and field questions from Settlement Class Members about their rights under the Settlement.

### 1.    Reasonable Hourly Rate and Time Expended

First, the Court must first determine the reasonableness of Class Counsel's hourly rate. *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 460 (C.D. Cal. 2014).  Class Counsel's hourly rates are reasonable.  (Hedin Decl. ¶ 39).  The test for the reasonableness of an attorney's hourly rate is based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *See Chalmers v. City of Los Angeles*, 796 F. 2d 1205, 1210-11 (9th Cir. 1986); *see also Children's Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App 4th 740, 783 (2002) (approving hourly rates that were "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work"); *see also Lusk v. Five Guys Enterprises LLC,* No. 1:17-CV-0762 JLT EPG, 2023 WL 4134656, at *27 (E.D. Cal. June 22, 2023) (the "'relevant community' for purposes of determining the prevailing

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

market rate is the "forum in which the district court sits.") quoting *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).

While several attorneys at Hedin LLP worked on this matter, the work was allocated in the most cost-effective manner. The preliminary investigation and the day-to-day litigation were conducted by Counsel-level attorneys, with supervision performed by the undersigned, Frank Hedin. Hedin LLP billed this case at its usual and customary hourly billing rates, which are reasonable within the Los Angeles market. *See e.g., Notorious B.I.G. v. Yes. Snowboards,* No. CV 19-1946-JAK (KSX), 2020 WL 6154195, at \*4 (C.D. Cal. Sept. 18, 2020) (collecting cases and finding similar rates of comparably experienced attorneys to be reasonable within the Los Angeles market); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 464 (C.D. Cal. 2014) (collecting cases and finding that similar rates of comparably experience attorneys in consumer class action to be fair and reasonable within the Los Angeles market); *cf. Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (observing "it is proper for a district court to rely on its own familiarity with the legal market" in determining a reasonable rate). Here, the attorneys of Hedin LLP have billed at an hourly rate comparable to similarly experienced attorneys in the Los Angeles market and the Court should deem the firm's rates to be reasonable.

## 2. Reasonable Multiplier

Once calculated, the lodestar can be adjusted upward using a "multiplier" based on several factors, including: the novelty and difficulty of the litigation; Class Counsel's skill in handling it; the burdens imposed by taking on the case; the contingent nature of the Fee Award; and the quality of the results achieved. *See Bluetooth*, 654 F. 3d at 942. Multipliers in the range of three to four are commonly approved in class action litigation. *See, e.g., Vizcaino*, 290 F. 3d at 1050-54 (upholding a multiplier of

3.65 and noting multipliers as high as 19.6); *Van Vranken*, 901 F.Supp. at 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

As indicated, Counsel's lodestar to date is $255,297.50. Presently, the lodestar multiplier sought is 1.18. This modest multiplier, which will be reduced as counsel expends more time to complete the tasks required to conclude the Settlement (described above), is warranted in light of the complex legal and factual issues involved in this litigation; the work performed and skill required by Class Counsel in handling those complex issues; the significant risks, costs, and uncertainties borne by Class Counsel in taking this case on contingency; and most importantly, the significant results obtained by Class Counsel. *See Elser v. I.A.M. Nat. Pension Fund,* 579 F. Supp. 1375, 1381 (C.D. Cal. 1984) (finding a 1.2 multiplier to adequately compensate counsel for taking the case on a contingency fee basis); *Quevedo v. New Albertsons, Inc*, No. SACV131160JLSJPRX, 2015 WL 10939716, at *7 (C.D. Cal. May 27, 2015) (same); *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV134460GHKMRWX, 2016 WL 6156076, at *16 (C.D. Cal. Aug. 16, 2016) (same). Other federal district courts in the Ninth Circuit have similarly approved a 1.2 multiplier on the basis that class counsel undertook the case on a contingency basis. *See e.g., McIntosh v. McAfee, Inc.*, No. C06-07694 JW, 2009 WL 673976, at *4 (N.D. Cal. Mar. 13, 2009) (finding a lodestar multiplier of 1.2 warranted solely on the basis that class counsel undertook the case on a contingency basis.); *Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2016 WL 3092090, at *11 (N.D. Cal. June 2, 2016); *Ramgen Power Sys. LLC v. Agilis Eng'g Inc.*, No. C12-1762 MJP, 2015 WL 362733, at *4 (W.D. Wash. Jan. 27, 2015) (collecting cases). Counsel respectfully submits that the award of a 1.2 multiplier is warranted and consistent with Ninth Circuit practice.

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

**(e) Class Counsel's Request for Reimbursement of Reasonable Expenses of $14,000 is Warranted**

Class Counsel has incurred out-of-pocket expenses exceeding $17,000. (Hedin Decl., ¶ 41). "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 391-92 (1970)); *see also* Fed. R. Civ. P. 23(h). The expenses must be relevant to the litigation and reasonable in amount. *Id*. at 1266. Plaintiffs' counsel has agreed to limit its costs reimbursement to $14,000.[6]

"The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation…." *Zilhaver v. UnitedHealth Group, Inc*. 646 F.Supp.2d 1075, 1084-85 (D. MN. 2009). Class Counsel's expenses to date include the following: (1) filing and service fees; (2) Plaintiffs' share of the Mediation fees; and (3) expert consultation fees. (Hedin Decl., ¶ 41). Class Counsel put forward these out-of-pocket expenses without assurance they would be repaid, and these expenses were necessary to secure the resolution of this litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in

---

[6]    As discussed, the parties executed a binding term sheet at the conclusion of the mediation, which contemplated Class Counsel being reimbursed for reasonable fees. While the Settlement Agreement states attorneys' fees are "inclusive of costs" (Hedin Decl. Ex. A, ¶ 110), the parties agree that advanced costs are separately recoverable. Plaintiffs advised in the Motion for Preliminary approval that they would separately seek a reimbursement of costs not to exceed $14,000 (ECF No. 55-1 at 9; fn. 4) and all class notices specifically advised that Class Counsel would separately seek the reimbursement of "reasonable costs" (ECF No. 55-3 at 48, 50, 53, 57, 58).

non-contingency matters); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation). Plaintiffs submit that a reimbursement of $14,000 in costs advanced by Plaintiffs' counsel is warranted.

### (f) The Proposed Incentive Award for the Class Representatives is Reasonable

Finally, the Settlement Agreement provides that each Plaintiff may seek, without objection by Defendant, a service award in the amount of $2,500. (ECF No. 55-3, ¶ 109). It is customary and appropriate to provide a service award to named plaintiffs where the plaintiffs have performed services to the Class as their representatives. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *Eddings v. Health Net, Inc.*, No. CV 10–1744–JST (RZX), 2013 WL 3013867, at *7 (C.D. Cal. 2013) ("Courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class."). "In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable."" *Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153, at *13 (C.D. Cal. Sept. 18, 2017).

Here, Plaintiffs represent over one hundred thousand California consumers who alleged they were automatically billed on a recurring basis for Celebrations Passport, "free shipping" program, without receiving adequate notice of the Celebrations Passport's automatic renewal terms, the $10 price increase after the first year of enrollment, or post-purchase notice of an impending renewal. (SAC. ¶¶ 27-40). Plaintiffs participated in every stage of the investigation including: providing facts and follow-up related to their purchases of Celebrations Passport, requesting, obtaining,

and providing documentary support therefor, reviewing the operative Complaint and prior iterations, reviewing the allegations of the Motions to Compel arbitration, participating in scheduling and case management for this matter, and consistently weighing in on and ultimately approving of the Class Settlement. (Hedin Decl., ¶42). The $2,500 service award that each Plaintiff requests (which, in total represents less than 1% of the Common Fund) is presumptively reasonable and is on par with service awards in recent Ninth Circuit class action cases. *See e.g.*, *Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2024 WL 4642877, at *8 (N.D. Cal. Oct. 30, 2024) (approving incentive awards of $3,000 to each named plaintiff); *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2024 WL 4634060, at *11 (N.D. Cal. Oct. 29, 2024) (approving service awards of $5,000 to each named plaintiff); *Bloom v. City of San Diego*, No. 17-CV-02324-AJB-DEB, 2024 WL 4495512, at *8 (S.D. Cal. Oct. 15, 2024) (approving incentive awards of $7,500 to each named plaintiff); *Weiner v. Ocwen Fin. Corp.*, No. 2:14-CV-02597-DJC-SCR, 2024 WL 4458383, at *6 (E.D. Cal. Oct. 10, 2024) (approving incentive award of $5,000 to named plaintiff).  Accordingly, Plaintiffs submit that a $2,500 service award (a total of $7,500 paid from the Common Fund) is reasonable and appropriate under the circumstances and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and order the following payments from the Common Fund: (1) an attorneys' Fee Award of $300,000; (2) costs in the amount of $14,000; and (3) a payment of an Incentive Award of $2,500 to each Representative Plaintiff – Tessible "Skyler" Foster, Marie Scott, and Krista Baumbach.

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Dated:  December 2, 2024

Respectfully submitted,

**HEDIN LLP**

By: s/ Frank S. Hedin
FRANK S. HEDIN (SBN 291289)
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:  (305) 357-2107
Facsimile:  (305) 200-8801
E-Mail:    fhedin@hedinllp.com

*Counsel for Plaintiffs and
the Settlement Class*

26

UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS