Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:        fhedin@hedinllp.com

*Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSIBLE "SKYLER" FOSTER; MARIE SCOTT; and KRISTA BAUMBACH <br><br> PLAINTIFFS, <br><br> V. <br><br> 800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY & DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE, <br><br> DEFENDANT. | 2:23-cv-07441-AB-PVC <br><br> **DECLARATION OF FRANK S. HEDIN IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am the founding partner at Hedin LLP and counsel of record for Plaintiffs in this action. My professional background and those of the attorneys of my firm are set out below. I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards filed concurrently.

2. Prior to initiating any action against Defendant, my firm and I conducted a comprehensive pre-filing investigation concerning the specific factual and legal issues underlying Plaintiffs' claims. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business and its practices with respect to the sales, presentation of autorenewal terms, and autorenewal of its Celebrations Passport at various times and across various sales channels and brands;

- Interviewing numerous California consumers who purchased the Celebrations Passport from the Defendant during the statutory period, including interviewing them about their process of purchasing the Celebrations Passport, any disclosures they received or agreed to during the purchase process, and any notices of renewals they subsequently received;

- Collecting and reviewing documents from numerous individuals who purchased the Celebrations Passport, including documents

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

spanning multiple years;

- Researching and analyzing Defendant's subscription terms, renewal procedures, and renewal notice procedures for its Celebrations Passport;

- Analyzing versions of Defendant's websites across different devices, Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period, including archived versions of webpages;

- Researching the relevant law and assessing the merits of a potential claim under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq., against Defendant and defenses that Defendant might assert; and

- Researching the applicable limitation period for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et. seq.* and other potential defenses.

3.      As a result of this thorough pre-filing investigation, Class Counsel was able to develop a viable theory of liability for an ARL claim against Defendant and prepare a thorough complaint against Defendant.

4.      On April 20, 2023, my firm filed an initial complaint on behalf of plaintiff Damon Tate, in the Superior Court of Los Angeles County styled *Tate v. 800-Flowers, Inc,* alleging Defendant violated California's ARL in connection with its Celebrations Passport membership program. On June 1, 2023, after conducting additional investigation and interviewing more of Defendant's customers, my firm filed an amended complaint, adding plaintiffs Natasha Paracha, Ian Chen, Brittany

Mansfield, and Alba Vargas.

5.      Defendant then removed the case to the Central District of California, causing the case to be re-captioned as 2:23-cv-04340-AB-PVC. Defendant thereafter filed a motion to compel plaintiffs to arbitration and alternatively moved to dismiss the claims of four of the five representative plaintiffs for lack of standing. (*Tate*, ECF No. 16).

6.      Our investigation continued while Defendant's motion to compel arbitration and to dismiss filed in the *Tate* action was pending.

7.      The *Tate* plaintiffs elected to dismiss their action without prejudice on September 6, 2023. (*Tate*, ECF No. 22).

8.      On September 7, 2023, plaintiffs Tessible "Skyler" Foster, Anayancy Paiz, Susan Finkbeiner, and Larissa Rapadas filed the initial class action complaint in this Action, which, like the *Tate* action, alleged that Defendant violated the ARL in connection with its Celebrations Passport membership program.  (*See* ECF No. 1).  On November 14, 2023, Defendant moved to compel Ms. Paiz and Ms. Rapadas to arbitrate their claims, arguing that the desktop computer purchase interface Ms. Paiz and Ms. Rapadas used to buy Celebrations Passport bound them to arbitrate. (ECF No. 14).  Defendant also sought a stay of the case pending final resolution of the arbitrations and, in the same motion, Defendant moved to dismiss Ms. Finkbeiner for lack of standing.  (*Id.*)

9.      On December 5, 2023, plaintiffs filed a first amended complaint. (ECF No. 20). The first amended complaint retained plaintiffs Foster, Paiz, and Rapadas as representative plaintiffs, added plaintiffs Marie Scott and Krista Baumbach, and added as representative plaintiffs Kimberly Moore Keller and Latricia Anderson Thompson.  (*Id.*)

10.     On January 18, 2024, Defendant filed a motion to compel to arbitration five of the seven representative plaintiffs—Anayancy Paiz, Larissa Rapadas, Kimberly Moore Keller, Latricia Anderson Thompson, and Marie Scott. Defendant also sought a stay of the case pending final resolution of the arbitrations, and separately moved to dismiss Kimberly Moore Keller and Latricia Anderson Thompson for lack of standing. (ECF No. 27). With respect to the motion to compel arbitration, Defendant renewed its argument that the desktop computer and Android mobile platform channels Ms. Paiz, Ms. Rapadas, Ms. Moore Keller, Ms. Thompson, and Ms. Scott used to purchase Celebrations Passport clearly and conspicuously presented an agreement to arbitrate. (*Id.*). Contemporaneously, Defendant answered the first amended complaint as to plaintiffs Foster and Baumbach.  (ECF No. 28).

11.     The Parties extensively conferred on this second motion to compel arbitration.  Based on the conferral, and my firm's ongoing investigation, plaintiffs sought leave to file the operative second amended complaint, which brought a claim

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

on behalf of representative Plaintiffs Foster, Scott, and Baumbach only, and that alleged Defendant violated California's ARL through its telephone sales channel in addition to its violation of the ARL vis-à-vis the sales of Celebrations Passport completed via the internet.  (ECF No. 35).

12.    The Court granted Plaintiffs leave to file the operative second amended complaint, which Plaintiffs filed on April 12, 2024.[1](ECF No. 45).

13.    On May 10, 2024, Defendant filed a third motion to compel arbitration as to plaintiffs Scott and Baumbach, to stay the case pending the outcome of the arbitration, and alternatively to dismiss Ms. Baumbach for lack of standing.  (ECF No. 46).

14.    Plaintiffs served requests for production and interrogatories on May 28, 2024.

15.    In response to Defendant's Motion to Compel Arbitration as to Ms. Baumbach, Plaintiffs engaged a web design expert to evaluate Defendant's claim that the mobile flow which Ms. Baumbach used to purchase Celebrations Passport put purchasers on inquiry notice of the site Terms and Conditions which contained an arbitration provision.  Additionally, Plaintiffs sought, and obtained leave from the Court to postpone the hearing on the Motion to Compel Arbitration to conduct discovery on the issues raised in the motion, specifically on the existence of a

---

[1] The SAC also removed the FAL claim and proceeded with the UCL claim only.

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

recording of Ms. Scott purchasing Celebrations Passport via Defendant's telephone order platform, Defendant's data retention policy for recordings of phone calls which Defendant claimed it did not have, and the online purchase flow used by Ms. Baumbach to purchase Celebrations Passport.

16.    The Parties' negotiations about the scope and conduct of discovery in early-June led to the first settlement discussions in the case.  By mid-June, the Parties had agreed to engage a mediator and to complete mediation by September 1, 2024. Plaintiffs at all times conditioned their participation in the mediation on receiving information from Defendant concerning the number of customers who used the various sales channels used by the representative plaintiffs—online, mobile, and 1-800 hotline—and the number of non-refunded autorenewals corresponding to each.

17.    To facilitate the mediation, and with the aim of resolving the case in the most efficient manner possible, the Parties stipulated to extend all deadlines pertaining to the pending motion to compel arbitration by 90 days, and all other case management deadlines, including trial, by 180 days. (ECF No. 52). The Court accepted and entered the stipulation on June 20, 2024. (ECF No. 53).

18.    Defendant timely provided the required pre-mediation information, and on July 24, 2024, the Parties attended a full-day mediation with Jill Sperber, Esq. of Judicate West.  Ms. Sperber was selected because of her extensive experience in

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

mediating and successfully resolving complex class actions, including consumer class actions.

19.    Prior to the mediation, the Parties provided Ms. Sperber with mediation position statements on a confidential basis.  Plaintiffs' statement set forth their evaluation of the case, including their prospects for prevailing on the pending motion to compel arbitration in light of consulting with their expert, their assessment of prevailing on the motion to dismiss Ms. Baumbach for lack of standing, and the high likelihood of certifying a class.  Armed with the number of customers and number of renewals, Plaintiffs were further able to make a cogent, good faith assessment of the range of potential damages which informed the settlement negotiations.

20.    The mediation concluded with the Settlement and the Parties' execution of a binding term sheet.

21.    The resulting $1,200,000, non-reversionary Settlement secures a very strong result for the estimated 112,000 California consumers who are members of the Settlement Class.  Each Settlement Class Member who does not opt out will automatically receive, without the need to file a claim form, an estimated $6.60-$6.67, which is an appropriate figure considering that the Settlement Class Members are receiving this value over the benefits received from purchasing Celebrations

Passport.[2]  Settlement Shares shall be paid by default to a Zelle account linked to the email address the Settlement Class Member most recently used to renew Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card sent to that same email address.  On the Settlement Class Member's election on the Settlement Website, a Settlement Share may be paid by paper check.

22.    In the weeks following the mediation, the Parties negotiated and finalized the Settlement Agreement, attached as **Exhibit A** (which was executed on August 30, 2024), and jointly interviewed and selected a Settlement Administrator—Kroll Settlement Administration LLC ("Kroll"). Kroll's bid proposal provided for every aspect of the notice plan and was in line with that of similar class action settlement administrators. The Parties also worked together to finalize the Class List. Pursuant to the Parties' binding term sheet agreement, Defendant provided Plaintiffs a confirmatory sworn declaration which attested to the class size, sales channel, and class period information.

23.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the class, and reach a fair and reasonable compromise after

---

[2] The per class member recovery was slightly reduced from the $6.90 to $6.99 range anticipated at the Preliminary Approval stage because the Settlement Administrator encountered a substantially higher bounce back rate for emailed Class Notices, requiring the mailing of significantly more post card notices and that will require the mailing of paper checks to these Settlement Class Members.

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator. My firm worked extensively with Defense Counsel and, where needed, Kroll to finalize and memorialize the agreement into a formal class action Settlement Agreement, including Class Notice documents. That process included rounds of revisions.

24.    Plaintiffs and Class Counsel recognize that, despite our belief in the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain in light of the significant risks of non-recovery posed by continued litigation.

25.    Indeed, had this litigation continued, Plaintiffs and Settlement Class Members would have faced several significant risks of total non-recovery, on questions concerning the merits of the claims and the ability of Plaintiffs to certify a class.

26.    In particular, from the outset of the case, Plaintiffs and Class Counsel recognized that the case presented a substantial risk pertaining to whether Defendant could compel Plaintiffs to arbitration. As described above, my firm persisted in pursuing the case through multiple motions to compel, and several iterations of the complaint, consistently refining the claims through ongoing investigation.

27.    Additionally, absent the Settlement, Defendant (through its highly experienced attorneys) indicated that it would have defended against Plaintiffs'

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

claims by arguing that Defendant complied with requirements of California's ARL or substantially complied in good faith, that Plaintiffs and the class members waived their right to seek relief by making voluntary repeated payments, and that a class could not be certified because of individualized issues such as whether class members assented to arbitration. Defendant would have continued to mount a vigorous defense at trial and beyond, including in any appeal from an adverse judgment or an order certifying a class, and that Defendant would argue—in both the trial and appellate courts—for a reduction of any class-wide damages award on substantive due process grounds.

28.    Following execution of the Settlement Agreement, our firm prepared Plaintiffs' Motion for Preliminary Approval.

29.    The Court preliminarily approved the Settlement Agreement on October 3, 2024 (ECF No. 58) preliminarily finding that the relief provided was "fair, reasonable and adequate[.]" (*Id.* at 2).

30.    On October 23, 2024 the Claims Administrator initiated the Notice Plan as required by the Court's Order by emailing the approved notice to the 112,356 email addresses belonging to members of the Settlement Class. On November 11, 2025, 25,855 post card notices were mailed to those Settlement Class Members for whom the notice email could not be delivered. To date the Settlement Administrator has only received two requests for exclusion and no objections.

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

31.     The deadline for opt-outs and objections is December 23, 2024.  (ECF No. 58 at 6).

### HEDIN LLP'S EXPERIENCE

32.     I am the founder of the firm and a member in good standing of the State Bar of California and the Florida Bar.  I received a Bachelor of Arts from University of Michigan and Juris Doctor, magna cum laude, from Syracuse University College of Law. After graduating from law school, I served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. Prior to establishing the firm, I was a partner at a litigation boutique in Miami, Florida, where I represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice.

33.     Hedin LLP was founded in 2018. Based in Miami, Florida, with offices in San Francisco, California, and Washington D.C., Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement);

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

*Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal

Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class

---

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented. Firm Resume of Hedin LLP, a true and accurate copy of which is attached hereto as **Exhibit B.**

34.     The firm also previously served as class counsel or plaintiffs' counsel in securities class actions in state and federal courts throughout the country. *E.g.*, *In re Menlo Therapeutics Inc. Sec. Litig.*, No. 18CIV06049 (Cal. Super. Ct., San Mateo Cty.) (class settlement on behalf of IPO investors finally approved); *In re EverQuote, Inc. Secs. Litig.*, No. 651177/2019 (N.Y. Supreme, N.Y. Cty.) (class settlement on behalf of IPO investors finally approved); *Plymouth Cty. Ret. Sys. v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Super. Ct., N.Y. Cty.) (co-lead counsel for plaintiff class of investors asserting Securities Act claims arising from initial and secondary public offerings).

35.     The firm also frequently represents indigent litigants on a *pro bono* basis. *E.g.*, *Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

36.     The following attorneys from Hedin LLP worked with me on this matter:

- *Arun G. Ravindran,* a member in good standing of the Florida Bar and the New York State Bar, is an accomplished trial lawyer who has tried more than

twenty federal cases to jury verdict. Mr. Ravindran received his Bachelor of Arts from Emory University, an Msc. from the London School of Economics, and his Juris Doctor from Emory University School of Law. After graduating from law school, he served as Captain and Judge Advocate in the United States Marine Corps, after which he served for eighteen months as a law clerk to the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida. Following his clerkship, Mr. Ravindran served for nearly five years as an Assistant Federal Public Defender in the Southern District of Florida. Prior to joining Hedin LLP, Mr. Ravindran litigated commercial matters at a prominent Florida law firm.

- *Paula S. Buzzi*, a member in good standing of the Florida Bar, received her Bachelor of Arts from The University of North Carolina and her Juris Doctor from Syracuse University College of Law. Prior to joining Hedin LLP, Ms. Buzzi was an attorney at a prominent national law firm where she represented commercial clients in transactional matters. At Hedin LLP, Ms. Buzzi's extensive transactional experience offers clients valuable, unique perspectives on case analysis, negotiation and strategy. Ms. Buzzi is a co-founder of the Argentinian-American Bar Association, and she has received a number of honors and distinctions throughout her career as an attorney, including numerous recognitions in leading legal publications.

- *Julie E. Holt*, a member in good standing of the Florida Bar and the State Bar of New York, received her Bachelor of Arts in Economics, summa cum laude, from Columbia University and her Juris Doctor from Yale Law School. Prior to joining Hedin LLP, Ms. Holt served as an Assistant Federal Public Defender in the Southern District of Florida for eight years. She is an experienced trial lawyer, having tried approximately 30 jury trials and numerous bench trials. In addition to her trial practice, she also represented clients on direct appeal, filing numerous petitions for writ of certiorari to the Supreme Court and arguing in the Eleventh Circuit Court of Appeals.

- *Elliot O. Jackson*, a member in good standing of the Florida Bar and the New York State Bar, received his Bachelor of Science, cum laude, from Fayetteville State University, his Juris Doctor, cum laude, from Florida A&M University College of Law, and an L.L.M in fashion law from Fordham University, where he graduated first in his class and received the Judy and Dennis Kenny Award. Prior to joining the firm, Mr. Jackson served for two years as law clerk to the Honorable Mary S. Scriven, United States District Judge for the Middle District of Florida.

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

37.     Hedin LLP undertook and funded this litigation on a purely contingent basis, with no assurance of recovering any out-of-pocket expenses or attorneys' fees. As set forth in this declaration Class Counsel expended considerable time and resources to investigate and prosecute the case successfully on behalf of the Class. Counsel undertook substantial risk of non-payment, and the percentage fee request will fairly compensate Counsel for this risk.

38.     The number of hours spent on this action by my firm as of the date of this filing was 387.8 total hours. The total lodestar for time thus far is $255,297.50. The schedule below provides a summary of the hours expended by each timekeeper from my firm who performed work on this action since its inception.

| Timekeeper | Title/Graduation Year | Rate | Hours | Individual Lodestar |
|---|---|---|---|---|
| Frank S. Hedin | Managing Partner (2012) | $825 | 42.5 | $35,062.50 |
| Arun Ravindran | Counsel (2007) | $700 | 230.2 | $161,140.00 |
| Paula Buzzi | Counsel (2012) | $500 | 80.0 | $40,000.00 |
| Julie Holt | Counsel (2011) | $600 | 22.0 | $13,200.00 |
| Elliot Jackson | Associate (2021) | $450 | 13.1 | $5,895.00 |
| **Total** | | | **387.8** | **$255,297.50** |

39.     The hours and lodestar incurred by my firm will increase because, as Class Counsel, my firm is responsible for working with the Settlment Administrator

16

to ensure completion of the Notice Plan, maintaining ongoing communication with Class Members regarding their rights under the Settlement, completing the final approval brief and supporting documents, addressing any objections to the Settlement Agreement, attending the final approval hearing, and, if the Settlement is finally approved, to ensure the Settlement Administraor makes disbursements as required to the Class Members and *cy pres* recipient.

40.    To date my firm has advanced $17,326.24 in costs as shown in the schedule below:

| Cost | Amount |
|---|---|
| Filing and Service Fee – *Damon Tate v. 800-Flowers, Inc.* (inc. Los Angeles County Superior Court – Complex Division Fee) | $1437.25 |
| Filing Fee – *Paiz et. al. v. 800-Flowers, Inc.* (C.D. Cal.) | $402.00 |
| Plaintiffs' Share of Mediation Cost paid to Judicate West | $12,375.00 |
| Federal Express (mediation brief to Mediator Jill Sperber) | $112.39 |
| Consulting Expert Fees | $3,000.00 |
| **Total** | **$17,326.64** |

41.    Finally, in this litigation, Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, Plaintiffs worked with Class Counsel to detail their subscription and purchase history, including how they subscribed to the Celebrations Passport and their knowledge of Celebrations Passport's terms and conditions, both during the prefiling investigation and at various stages throughout including in assessing Defendant's motions to compel

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

arbitration and dismiss for lack of standing.  Each of the Plaintiffs searched their bank records, product order histories with Defendant and its brands, and their communications with Defendant. Moreover, Plaintiffs worked with Class Counsel to prepare the complaints, carefully reviewed the complaints for accuracy, and approved them before they were filed.

34.    Plaintiffs filed this case knowing it would cause their names to be associated with litigation.  Plaintiffs kept in regular contact with Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement and were prepared to testify at deposition and trial, if necessary.

35.    I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representatives, I do not believe such a strong result could have been achieved.

I declare under penalty of perjury that the above and foregoing is true and accurate.

Executed this 2nd day of December 2024 at Miami, Florida.

*/s Frank S. Hedin*

Frank S. Hedin

HEDIN LLP

---

18

DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS