1  Frank S. Hedin (SBN 291289)
   Hedin LLP
2  535 Mission Street, 14th Floor
   San Francisco, CA 94105
3  Telephone:  (305) 357-2107
   Facsimile:  (305) 200-8801
4  E-Mail:      fhedin@hedinllp.com

5  *Counsel for Plaintiffs and
   the Proposed Settlement Class*

6                UNITED STATES DISTRICT COURT

7                CENTRAL DISTRICT OF CALIFORNIA

8

9  TESSIBLE "SKYLER" FOSTER;        Case No. 2:23-cv-07441-AB-PVC
   MARIE SCOTT; and KRISTA
10 BAUMBACH, individually and on    **PLAINTIFFS' MEMORANDUM OF**
   behalf of all others similarly situated,  **POINTS AND AUTHORITIES IN**
                                    **SUPPORT OF THEIR MOTION FOR**
11           Plaintiffs,            **FINAL APPROVAL OF CLASS**
                                    **ACTION SETTLEMENT**
12 V.

13 800-FLOWERS, INC., D/B/A 1-      Date: January 31, 2025
   800-FLOWERS.COM, HARRY &         Time: 1:30 p.m.
14 DAVID, PERSONALIZATION           Courtroom: 7B
   MALL, SHARI'S BERRIES, 1-800-    Judge: Hon. André Birotte, Jr.
15 BASKETS.COM, SIMPLY
   CHOCOLATE, FRUIT
16 BOUQUETS.COM, CHERYL'S
   COOKIES, THE POPCORN
17 FACTORY, WOLFERMAN'S
   BAKERY, AND VITAL CHOICE,

18           Defendant

19

20

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.    SUMMARY OF THE ALLEGATIONS ................................................... 2

  A.    BACKGROUND ..................................................................................... 2

  B.    THE SAC'S ALLEGATIONS CONCERNING THE AUTORENEWAL OF CELEBRATIONS PASSPORT ......................................................................................................... 4

  C.    PROCEDURAL HISTORY ..................................................................... 7

III.    TERMS OF THE SETTLEMENT ........................................................ 12

  A.    MONETARY RELIEF ......................................................................... 12

  B.    CLASS NOTICE AND SETTLEMENT ADMINISTRATION ......................................... 14

  (I)    CLASS NOTICE WAS TIMELY MADE AND THERE WAS A 99.3% REACH RATE ........ 14

IV.    ARGUMENT ........................................................................................... 20

  A.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED .................................. 21

    1.    The Settlement Class Should Be Certified ................................. 22

      a.    The Requirements of Rule 23(a) Are Satisfied ........................ 22

      b.    The Requirements of Rule 23(b)(3) Are Satisfied .................... 26

    2.    The Settlement is Appropriate for Final Approval ........................ 30

      a.    The Settlement is Fair, Reasonable, and Adequate .................... 30

      b.    Continued Litigation Would Be Complex, Costly, and Lengthy .............. 33

      c.    Class Counsel is Competent, Well-Informed and Experienced, and Strongly Endorse the Settlement ...................................................................................... 35

      d.    The Settlement is the Product of a Thorough Investigation, Efficiently Prosecuted Litigation, and Arm's-Length Negotiations .................................. 36

V.    CONCLUSION ........................................................................................ 38

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Adams v. Inter-Con Sec. Sys., Inc.*,
    No. 06-cv-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................... 39

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ................................................................ 25

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) .................................................................... 36

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006) .................................................................... 35

*Celano v. Marriott Int'l Inc.*,
    242 F.R.D. 544 (N.D. Cal. 2007) .................................................................... 23

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ........................................................................ 35

*Custom LED, LLC v. eBay, Inc.*,
    No. 12-cv-350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013). ...................... 33

*Davis v. Birchbox Inc.*,
    No. 3:15-cv-00498-BEN-BGS (S.D. Cal., Mar. 28, 2016)............................. 33

*Diaz v. Tr. Territory of Pac. Islands*,
    876 F.2d 1401 (9th Cir. 1989). ...................................................................... 21

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .......................................................................... 26

*Fogarazzao v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .................................................................... 25

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982).......................................................................................... 30

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998) ........................................................................ 21

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............. 38

*In re Indep. Energy Holdings PLC*,
    No. 00-cv-6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).................... 39

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................ 33

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................... 34

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).................................................. 38

*Kissel v. Code 42 Software, Inc.*,
    No. 8:15-cv-01936-JLS-KES (C.D. Cal.) ................................... 24, 31

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ..................................................... 29

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 34, 35

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015 ................................................... 24

*Roach v. T.L Cannon Corp.*,
    773 F.3d 401 (2d Cir. 2015)........................................................ 28

*Rodriguez v. W. Publishing*,
    563 F.3d 948 (9th Cir. 2009) ...................................................... 38

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003). ..................................................... 21

*Tate v. 800-Flowers, Inc.*,
    Case No. 2:23-cv-04340-AB-PVC (C.D. Cal. filed June 2, 2024)................... 8

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*True Health Chiropractic, Inc. v. McKesson Corporation*,
    896 F.3d 923 (9th Cir. 2018) ................................................................. 27

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................ 27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................ 23

*Williamson v. McAfee, Inc.*,
    No. 5:14-cv-00158-EJD (N.D. Cal., Feb. 3, 2017) ............................... 34

*Zinser v. Accufix Research Inst.*,
    253 F.3d 1180 (9th Cir. 2001). ............................................................ 22

STATUTES

Cal. Bus. & Prof. Code § 17200 .............................................................. 1, 4

California Business & Professions Code § 17600 .................................... passim

California Business & Professions Code § 17601 ................................... 2, 4, 23

California Business & Professions Code § 17602 .............................. 4, 5, 23, 27

California Business & Profesions Code § 17603 ........................................ 23

Class Action Fairness Act,
    28 U.S.C. § 1715 ................................................................................ 18

RULES

Fed. R. Civ. P. 23 ................................................................................ passim

TREATISES

California Bill Analysis, S.B. 340 Sen., 4/21/2009. ..................................... 2

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

Plaintiffs Tessible "Skyler" Foster, Marie Scott, and Krista Baumbach, respectfully request that this Court grant Final Approval to the preliminarily approved class action Settlement Agreement[1] between Plaintiffs and Defendant 800-Flowers, Inc. ("Flowers") (collectively, the "Parties").[2]  Pursuant to the Settlement Agreement, Defendant will fund a non-reversionary Common Fund in the amount of $1,200,000.00, from which each member of the Settlement Class – numbering approximately 111,300 California consumers –  will receive a Settlement Share payment of approximately $6.83.  Plaintiffs maintain that the settlement amount represents fair and reasonable compensation for Defendant's alleged violations of California's Business & Professions Code Section 17600 et seq., (the "Automatic Renewal Law") and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, for which the Settlement Class received the benefit of the bargain, e.g. received the value of the Celebrations Passport program which is the subject of this Action.  The Settlement Agreement should be finally approved especially because it provides what other ARL settlements have not – automatic, non-claims-made payments on a pro rata basis from the net Settlement fund to every Settlement Class Member who

---

[1]    Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in the Settlement Agreement.

[2]    The preliminarily approved Class Action Settlement Agreement is attached to the declaration of Frank S. Hedin as Exhibit 1.

1  has not opted out of the Settlement.

2      The Settlement has been exceptionally well-received by the Settlement Class.

3  Of the 111,305 Settlement Class Members, 99.3% received notice.  There were no

4  objections to the Settlement and only 3 requests for exclusion.  These figures confirm

5  near uniform support for the Settlement, warranting this Court's final determination

6  that the Settlement it is "fair, reasonable, and adequate" in accordance with its previous

7  preliminary determination.  (ECF No. 58 at 2).

8  **II.    SUMMARY OF THE ALLEGATIONS**

9      **A.    BACKGROUND**

10      **California's Autorenewal Statute**

11      California passed the ARL, Cal. Bus. Prof. Code §17600, *et. seq*. in 2009.  The

12  ARL's purpose is "to end the practice of ongoing charging of consumer credit or debit

13  cards or third-party payment accounts without the consumers' explicit consent for

14  ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. Prof. Code

15  § 17600.   The ARL was passed to address "increasingly common" consumer

16  complaints of unwanted charges for products or services consumers did not explicitly

17  request or know they agreed to, "often the result of agreements enumerated in the 'fine

18  print' on an order or advertisement that the consumer responded to."  California Bill

19  Analysis, S.B. 340 Sen., 4/21/2009.

20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Under the ARL, an "automatic renewal means a plan or arrangement in which a

2    paid subscription or purchasing agreement is automatically renewed at the end of a

3    definite term for a subsequent term." Cal. Bus. Prof. Code § 17601(a).    The ARL

4    requires that the disclosure of certain facts pertaining to an automatic renewal (the

5    "automatic renewal offer terms") be "clear and conspicuous" – specifically, that prior

6    to purchase, a customer be advised that a subscription agreement will continue until a

7    customer cancels, the length of the automatic renewal term, that customers' credit,

8    debit, or third-party payment information will be automatically charged on a recurring

9    basis, any material changes (including price increases), and the cancellation policy.

10   Cal. Bus. Prof. Code § 17601(b).  As defined by the statute, "'[c]lear and conspicuous'

11   or 'clearly conspicuous' means in larger type than the surrounding text, or in

12   contrasting type, font, or color to the surrounding text of the same size, or set off from

13   the surrounding text of the same size by symbols or other marks, in a manner that

14   clearly calls attention to the language. In the case of an audio disclosure, 'clear and

15   conspicuous' and 'clearly and conspicuously' means in a volume and cadence

16   sufficient to be readily audible and understandable."   Cal. Bus. & Prof. Code §

17   17601(c).

18    The ARL makes it unlawful for a business to (1) make an automatic renewal

19   offer that fails to present the "automatic renewal offer terms" in a "clear and

20   conspicuous manner" "before the subscription or purchasing agreement is fulfilled and

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity

2   . . . to the request for consent to the offer"; and (2) to charge the consumer's Payment

3   Method without first obtaining the consumer's "affirmative consent" to the automatic

4   renewal.  Cal. Bus. Prof. Code § 17602(a)(1) & (2).  Additionally, under the ARL if

5   "the consumer accepted an automatic renewal offer or continuous service offer with an

6   initial term of one year or longer, that automatically renews unless the consumer

7   cancels the automatic renewal or continuous service," then "notice shall be provided at

8   least 15 days and not more than 45 days before the automatic renewal offer or

9   continuous service offer renews."  Cal Bus. & Prof. Code § 17601(b)(2).

10      **B.      The SAC's Allegations Concerning the Autorenewal of Celebrations**

11  **Passport**

12          As set forth in the Second Amended Complaint ("SAC"), each Plaintiff is a

13  consumer of Defendant's "Celebrations Passport" program who brought this putative

14  class action against Defendant for allegedly violating California's UCL, Cal. Bus. &

15  Prof. Code § 17200, *et seq.*, in three ways.  (*See* SAC, ECF No. 45, ¶¶ 27-40).

16  Specifically, Plaintiffs alleged that Defendant violated: (1) Cal. Business & Professions

17  Code § 17602(a)(l)) by failing to present the terms of its automatic renewal or

18  continuous service offer in a clear and conspicuous manner before fulfilling the

19  subscription and in visual proximity, or in the case of an offer conveyed by voice, in

20  temporal proximity, to the request for consent to the offer; (2) Cal. Business &

    Professions Code § 17602(a)(2)) by charging class members' credit or debit cards, or

4

1  accounts with a third party, for an automatic renewal  or continuous service without

2  first obtaining the consumer's affirmative consent to the agreement containing the

3  automatic renewal offer terms or continuous offer terms; and (3) Cal. Business &

4  Professions Code § 17602(b)(2)) by failing to provide notice of an automatic renewal

5  offer or continuous service offer with an initial term of one year or longer, that

6  automatically renews unless the consumer cancels the automatic renewal or continuous

7  service, at least 15 days and not more than 45 days before the automatic renewal offer

8  or continuous service offer renews.  (SAC, ¶ 58).

9       The Second Amended Complaint further alleges that Defendant 800-Flowers,

10  Inc. is a retailer that operates a family of brands for special occasion flower deliveries

11  and gift giving.  (SAC, ¶ 19).   Defendant offers the "Celebrations Passport" program

12  across most of its brands.[3] Celebrations Passport is a membership program that

13  provides customers free shipping and no service fees for the first year at a cost of

14  $19.99, which then automatically renews every year after the initial year at a cost of

15  $29.99 plus tax (the "Automatic Renewal Fee") charged to the consumer's stored credit

16  card, debit card or third-party payment account (collectively the "Payment Method").

17  (SAC, ¶ 19).   Defendant sells Celebrations Passport through different channels

18

19  [3] Defendant sold Celebrations Passport through sales channels for the following
    brands:  1-800-Flowers.com, Harry & David, Personalization Mall, Shari's Berries,

20  1-800-Baskets.com, Simply Chocolate, Fruit Bouquets.com, Cheryl's Cookies, the
    Popcorn Factory, Wolferman's Bakery, and Vital Choice.  (SAC, ¶¶ 19-20).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  including by phone and online (including its websites and mobile apps). (SAC, ¶ 22).

2  The SAC alleges that Defendant has used various means to induce customers to add

3  the Celebrations Passport to their orders, to include, for example, automatically adding

4  Celebrations Passport to customers' orders without customers requesting Celebrations

5  Passport be added.  (*Id.*)

6      The SAC further alleges that regardless of the means Defendant has used to

7  induce consumers to purchase the Celebrations Passport, Defendant has uniformly

8  failed to disclose the key, statutorily required autorenewal terms, in a clear and

9  conspicuous manner, ***prior to*** the customer's completion of the order process – namely:

10  (a) the fact that the Celebrations Passport automatically renews, (b) that the renewal

11  fee is $29.99, $10.00 higher than the introductory fee, and (c) that the customer's stored

12  payment method will be charged every year.  (SAC, ¶ 22).

13      To the extent the checkout process on Defendant's websites, phone lines, and

14  other sales channels included the necessary automatic renewal terms, Plaintiffs allege

15  these disclosures were not "clear and conspicuous" as required under the ARL and as

16  such did not manifest a customer's consent to the autorenewal terms according to the

17  allegations in the complaint.  (SAC, ¶ 23).  Plaintiffs alleged that to capture more

18  revenue per transaction, Defendant designed its order processes to present the terms

19  of the Celebrations Passport in an intentionally inconspicuous manner, including by

20  hiding the fact that Celebrations Passport is automatically renewed each year and that

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

a customer's stored Payment Method will be automatically charged each year (and that the customer can cancel at any time).  (*Id.*)  The SAC alleges that Defendant displays such language in font type that is smaller than and not otherwise in contrast to surrounding text, and not otherwise in a manner that clearly calls attention to such language, and, that with respect to its sales of Celebrations Passport by telephone that such disclosures were not made in a volume or cadence sufficient to be readily audible or understandable.  (SAC, ¶ 24).  The SAC further alleges that Defendant hid the fact that Celebrations Passport is automatically renewed each year and that a customer's stored Payment Method will be automatically charged each year (and that the customer can cancel at any time) and by falsely representing to consumers that the product costs $19.99/year when in fact it renews every year after the initial year at the price at $29.99 plus tax.  (SAC, ¶ 25).  Additionally, Plaintiffs allege that once a customer is enrolled in the Celebrations Passport, Defendant does not send customers who are enrolled in Celebrations Passport a notice between 15 and 45 days before Celebrations Passport automatically renews for another year, as required under Cal. Bus. & Prof. Code § 17602(b)(2) – even though Defendant previously obtained these customers' mailing addresses, email addresses, and phone numbers at the time of their initial purchases and could thus readily provide them with such notices.  (SAC, ¶ 26).

## C.    Procedural History

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1        On April 20, 2023, after extensive prefiling investigation, Damon Tate,

2    represented by the undersigned, filed a putative class action against Defendant in the

3    Superior Court of Los Angeles County styled *Tate v. 800-Flowers, Inc*., alleging, as

4    here, that Defendant violated the ARL in connection with its Celebrations Passport

5    customer loyalty program.  At all times thereafter, Defendant vigorously defended the

6    litigation. It removed the case to the Central District of California, whereupon the case

7    was assigned case number 2:23-cv-04340-AB-PVC (C.D. Cal. filed June 2, 2024).

8    (*Tate*, ECF No. 1).  On August 7, 2023, Defendant filed a motion to compel each of

9    the *Tate* plaintiffs to arbitration, stay the case pending arbitration, strike class claims,

10   and to dismiss the several of the *Tate* plaintiffs for lack of standing. (Tate, ECF No.

11   16).  On September 6, 2023, the *Tate* plaintiffs voluntarily dismissed the action without

12   prejudice.  (*Tate*, ECF No. 22).  On September 7, 2023, plaintiff Foster, along with

13   Anayancy Paiz, Susan Finkbeiner, and Larissa Rapadas, filed the initial class action

14   complaint in this Action (ECF No. 1), which, like the *Tate* action, alleged that

15   Defendant violated the ARL in connection with its Celebrations Passport membership

16   program.  On November 14, 2023, Defendant filed a motion to compel arbitration and

17   stay the case as to Anayancy Paiz and Larissa Rapadas, arguing that their purchase of

18   Celebrations Passport using the desktop computer sales channel bound them to terms

19   and conditions which required arbitration of disputes.  (ECF No. 14).  In the same

20   motion, Defendant moved to dismiss Ms. Finkbeiner for lack of standing. (*Id.*)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On December 5, 2023, the plaintiffs filed a first amended complaint, which retained Tessible Foster, Anayancy Paiz, and Larissa Rapadas as representative plaintiffs, and added Marie Scott, Krista Baumbach, Kimberly Moore Keller and Latricia Anderson Thompson representative plaintiffs. (ECF No. 20).  On January 18, 2024, Defendant filed a motion to compel Anayancy Paiz, Larissa Rapadas, Kimberly Moore Keller, Latricia Anderson Thompson, and Marie Scott to arbitration, sought a stay of the case pending final resolution of the arbitrations, and separately moved to dismiss Kimberly Moore Keller and Latricia Anderson Thompson for lack of standing. (ECF No. 27).  Contemporaneously, Defendant answered the first amended complaint as to plaintiffs Foster and Baumbach.  (ECF No. 28).  The Parties filed a Case Management Stipulation on January 19, 2024, and a stipulation regarding class certification briefing on February 1, 2024.  (ECF No. 29, 31).  The Court entered both stipulations.  (ECF No. 34, 37).  On March 28, 2024, the Court granted Plaintiffs leave to file a second amended complaint (ECF No. 43), which Plaintiffs sought to file in lieu of opposing the then pending motion to compel arbitration.  On April 12, 2024, Plaintiffs filed the second amended class action complaint (ECF No. 45), the operative complaint in the Action.  The second amended class action complaint named Plaintiffs Foster, Scott, and Baumbach as the only representative plaintiffs and, like each of the prior complaints alleged, Defendant violated the ARL in connection with its Celebrations Passport membership program.  (*Id.*)  On May 10, 2024, Defendant filed

1   a motion to compel plaintiffs Baumbach and Scott to arbitration and stay the case, or

2   alternatively, to dismiss plaintiff Baumbach for lack of standing or strike the class

3   action allegations as to plaintiffs Baumbach and Scott.  (ECF No. 46).  Defendant also

4   filed an answer to the second amended complaint as to plaintiff Foster.  (ECF No. 47).

5       Plaintiffs prepared to oppose the motion by engaging and consulting a web

6   design expert who examined the web flow that Defendant asserts bound Ms. Baumbach

7   to arbitration.  (Hedin Decl., ¶ 15).  Plaintiffs moved to adjourn the hearing on the

8   Motion to Compel to take discovery on the factual issues raised in the Motion (ECF

9   No. 49), which the Court granted (ECF No. 51).

10      The Parties' discussions concerning the scope of discovery needed as to the

11  pending motion, turned towards a discussion concerning resolution of the Action.

12  (Hedin Decl., ¶ 16).  The parties agreed to engage Jill Sperber, Esq. of Judicate West,

13  a mediator with substantial experience mediating compel civil actions, including

14  consumer class actions.  Plaintiffs agreed to mediate on the condition that in advance

15  of the mediation, Defendant provide Plaintiffs with class size information and

16  information concerning the number of automatic renewals paid by California

17  consumers across various sales channels.  To facilitate the mediation, the Parties

18  stipulated to, and the Court granted, a 90-day enlargement of time of deadlines related

19  to the pending motion to compel arbitration and a 180-day enlargement of all other

20  case management deadlines, including trial.  (ECF No. 52, 53).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On July 24, 2024, the parties attended a full day of mediation before Ms. Sperber, Esq.  (Hedin Decl., ¶ 18). Before the mediation Defendant provided the class size and the sales channel information requested.  (*Id.*)

The Parties each disclosed to the mediator (but did not exchange) position statements.  (Hedin Decl., ¶ 19).  Plaintiffs' statement set forth their evaluation of the case, including their favorable assessment of prevailing on both the pending motion to compel arbitration in light of, among other things, the motion to dismiss Ms. Baumbach for lack of standing, and the high likelihood of certifying a class.  (*Id.*)  Armed with the number of customers and number of renewals, Plaintiffs were further able to make a cogent, good faith assessment of the range of potential damages which informed the settlement negotiations.  (*Id.*)

The mediation concluded with a settlement in principle memorialized by a comprehensive term sheet executed by counsel for both Parties on July 24, 2024.  Prior to executing the Settlement Agreement on August 30, 2024, Defendant produced to Plaintiffs a confirmatory sworn declaration which attested to the fact that there were 112,356 email addresses associated with California customers who purchased Celebrations Passport from September 7, 2019, through May 31, 2022, and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded.  (Hedin Decl. ¶ 23).  The Parties worked together to select Kroll as a Settlement Administrator upon joint review of Kroll's comprehensive bid proposal,

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  which provided for every aspect of the proposed notice plan and which was in line with

2  that of similar class action settlement administrators.  (Hedin Decl. ¶ 29).

3        The Court granted preliminary approval of the Settlement on October 3, 2024.

4  (ECF No. 58).

5  **III.    TERMS OF THE SETTLEMENT**

6

7        Pursuant to the Settlement Agreement, Plaintiffs sought to certify the following

8  Settlement Class:

> All Persons who purchased Celebrations Passport in California on or
> after September 7, 2019, through May 31, 2022, and who incurred at
> least one automatic renewal charge for Celebrations Passport that was
> not fully refunded.[4]

9

10

11  Settlement Agreement § III, ¶¶ 76-77.

12        **A.    Monetary Relief**

13        Under the Settlement Agreement Defendant agreed to pay exactly $1,200,000.00

14  into a Common Fund.  Settlement Agreement §§ II., ¶ 37.  The payment into the

15  Common Fund is non-reversionary and is in full satisfaction of all Defendant's

16  monetary obligations under the Settlement Agreement.  (*Id.*)  The Common Fund shall

17

18  [4] As set forth in the Settlement Agreement, specifically excluded from the Settlement
Class are the following Persons: (a) 800-Flowers, Inc., the Released Persons and their
19  employees, officers, directors, agents, and representatives, and their immediate family
members; (b) Class Counsel; (c) the Court, the Court's immediate family members,
20  and Court staff; and (d) the mediator, Jill Sperber, Esq. of Judicate West.    Settlement
Agreement § III, ¶¶ 76-77.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    be used to pay, on an automatic, non-claims-made basis, Settlement Shares to every

2    Settlement Class Member who does not opt out of the Settlement, an Attorneys' Fee

3    Award to Class Counsel, Service Awards to each of the three representative Plaintiffs,

4    and Notice and Administration Costs to Kroll.  (*Id.*, §§ IV., ¶¶ 82-83.).

5        All identifiable Settlement Class Members who did not timely exclude

6    themselves from the Settlement will automatically receive – without the need to file a

7    claim form – a Settlement Share.  (*Id.* at § IV., ¶ 82.)  Each Settlement Share shall be

8    calculated by dividing the value of the Net Common Fund (which is the amount of the

9    Common Fund that remains after Attorneys' Fee Award, Notice and Administration

10   Costs, Service Awards, and any other costs of the class Settlement, not including the

11   Settlement Shares due to each Settlement Class Member) by the total of the number of

12   Settlement Class Members minus Opt-Outs.  (*Id.* at § II., ¶ 72.)  All Settlement Shares

13   shall be of equal value.  Settlement Shares shall be paid automatically without the need

14   to file a claim form.  (*Id.*)  Settlement Shares shall be paid by default to a Zelle account

15   linked to the email address the Settlement Class Member most recently used to renew

16   Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift card

17   sent to that same email address.  (*Id.*)  On the Settlement Class Member's election on

18   the Settlement Website, a Settlement Share may be paid by paper check.  (*Id.*).

19       The default method of distribution of Settlement Shares is by automatic deposit

20   to an electronic wallet as set forth above.  However, where the Settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Administrator was unable to communicate the Class Notice by e-mail to a Settlement Class Member (as described in Section C below), the Settlement Class Member will automatically be sent a paper check to the same address at which he or she received a Post Card Notice. (*Id.* at § IV., ¶ 92.) Paper checks sent to Settlement Class Members will expire after 180 days. (*Id.* at § IV., ¶ 93.) The expiration date will be provided on each paper check, and the Class Notice will inform Settlement Class Members that paper checks must be cashed or deposited prior to the expiration date on the paper check (and that the paper check will no longer be valid after such date). (*Id.*) Any uncashed funds remaining after the paper checks' expiration date will be distributed to the National Consumer Law Center as a *cy pres* recipient. (*Id.* at § IV., ¶ 94.)

**B.    Class Notice and Settlement Administration**

      (i)    **Class Notice was timely made and there was a 99.3% reach rate**

In the Preliminary Approval Order, the Court established deadlines for notice and authorized Counsel "to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, insubstantial changes to the form or content of the Class Notices and other exhibits that they jointly agree are reasonable and necessary." (ECF No. 58 at 6). Notice and Administration Costs to the Settlement Administrator are to be paid from the Common Fund. (Settlement Agreement § IV.D.)

Pursuant to the Preliminary Approval Order, as described below the Class Notice commenced on October 23, 2024. (Declaration of Andrea Dudinsky ("Dudinsky Decl.") ¶ 8). As an initial step, Defendant timely provided the Settlement Administrator with a Class List file contained 112,356 records with first name, last name, email address, and address fields for Settlement Class Members. *Id.* ¶ 6. After deduplication the Settlement Administrator determined there were 111,305 unique Settlement Class Member records. *Id.*

On October 7, 2024, the Settlement Administrator created a dedicated Settlement Website. (Dudinsky Decl. ¶ 7). The Settlement Website "went live" on October 23, 2024, the notice date provided for in the Preliminary Approval Order. *Id.* It contained a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Settlement Agreement, the long-form Class Notice, the Motion for Preliminary Approval, the Preliminary Approval Order, the motion for Attorneys' Fee Award and Service Award, and allowed Settlement Class Members an opportunity to make an online request to opt-out of the Settlement, request that a Settlement Share be paid by paper check or electronic transfer, or to register a change of address. *Id.*

Also on October 23, 2024, the Settlement Administrator caused the Email Notice to be sent to the 112,356 email addresses on file for Settlement Class Members, which

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   included multiple email addresses for some Settlement Class Members.  (Dudinsky

2   Decl. ¶ 8).   Of the 112,356 emails attempted for delivery, 26,445 emails were

3   rejected/bounced back as undeliverable.  *Id.* Of these, there were 25,907 Settlement

4   Class Members for whom all Email Notices sent were rejected/bounced back as

5   undeliverable. *Id.*

6       As set forth in the Settlement Agreement (Settlement Agreement §§ II., ¶ 58), a

7   Post Card Notice was mailed to the physical mailing address on record for all

8   Settlement Class Members for whom all Email Notices sent were rejected/bounced

9   back as undeliverable and for whom a physical mailing address was available.

10  (Dudinsky Decl. ¶ 8). As such, on November 12, 2024, the Settlement Administrator

11  caused 25,858 Post Card Notices to be mailed via first-class mail.[5]  *Id.*  ¶ 9.  In an effort

12  to ensure that Post Card Notices would be deliverable to Settlement Class Members,

13  the Settlement Administrator ran the list of Settlement Class Members receiving a Post

14  Card Notice through the USPS's National Change of Address ("NCOA") database and

15  updated the Class List with address changes received from the NCOA.  *Id.*

16      As of January 13, 2025, 141 Post Card Notices were returned by the USPS with

17  a forwarding address.  (Dudinsky Decl. ¶ 10).  Of those, 139 Post Card Notices were

18  automatically re-mailed to the updated addresses provided by the USPS.  *Id.*   The

19

20  ---

[5] A physical address was unavailable for forty-nine (49) Settlement Class Members for whom all Email Notices sent were undeliverable.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  remaining two (2) Post Card Notices were re-mailed by Settlement to the updated

2  address provided by the USPS.  *Id.*

3        As of January 13, 2025, 2,061 Post Card Notices were returned by the USPS as

4  undeliverable as addressed, without a forwarding address. (Dudinsky Decl. ¶ 11).  The

5  Settlement Administrator ran 1,980[6] undeliverable records through an advanced

6  address search. *Id.* The advanced address search produced 1,284 updated addresses.

7  The Settlement Administrator has re-mailed Post Card Notices to the 1,284 updated

8  addresses obtained from the advanced address search.  *Id.* Of the 1,284 re-mailed Post

9  Card Notices, none have been returned as undeliverable a second time.  *Id.*  Based on

10  the foregoing, the Settlement Administrator estimates its "reach rate" for Class Notice

11  is 99.3%, as is summarized in the following table:

12

13

14

15

16

17

18

---

19  [6] The remaining eighty-one (81) undeliverable Post Card Notices received to date were received after the advanced address search was run and therefore those records were not included in the search. The Settlement Administrator will continue to trace and re-mail these and any additional undeliverable Post Card Notices received through the Final Approval Hearing date.

20

---

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

| Direct Notice Program Dissemination & Reach | | |
|---|---|---|
| **Description** | **Volume of Class Members** | **Percentage of Class Members** |
| Settlement Class Members | 111,305 | 100.0% |
| **Email Notice** | | |
| (+) Settlement Class Members sent Email Notice | 111,305 | 100% |
| (-) Settlement Class Members for whom all Email Notices returned as undeliverable | (25,907) | 23.3% |
| **Initial Post Card Notice Mailing** | | |
| (+) Total Unique Post Card Notices Mailed | 25,858 | 23.2% |
| (-) Total Undeliverable Post Card Notices | (2,061) | 1.9% |
| **Supplemental Post Card Notice Mailing** | | |
| (+) Total Unique Post Card Notices Re-mailed | 1,284 | 1.2% |
| (-) Total Undeliverable (Re-Mailed) Post Card Notices | (0) | 0% |
| **Direct Notice Program Reach** | | |
| (=) Likely Received Direct Notice | 110,479 | 99.3% |

(*Id.* ¶ 12).

          (ii)    **There were only 3 requests for exclusion and no objections**

The Opt-Out and Object deadline date was December 23, 2024. (ECF No. 58 at 6). **There were only three requests for exclusion and no objections.** (Dudinsky Decl. ¶ 15). Plaintiffs timely filed their Motion for Attorneys' Fees and Service Award on December 2, 2024 (ECF No. 60) and the Motion for Attorneys' Fees and Service Award were contemporaneously posted to the Settlement Website. (*See* Dudinsky Decl. ¶ 7).[7]

_____

[7] Separately, on behalf of the Defendant, the Settlement Administrator provided notice of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. §1715(b) ("the CAFA Notice"). On September 6, 2024, Kroll sent the CAFA Notice

    (iii) **Each Settlement Class Member will automatically receive an estimated $6.83 as a Settlement Share**

  The costs of Settlement Administration are to be paid from the Settlement Fund. (Settlement Agreement § IV.D).  The Court's Preliminary Approval Order provides that in this matter that Notice and Administration Costs shall not exceed $89,400, as set forth in the Settlement Agreement.  In the *Declaration of Andrea R. Dudinsky of Kroll Settlement Administration LLC In Connection with Preliminary Approval of Settlement*, filed August 30, 2024 (Dudinsky Prelim. Decl., ECF No. 55-6) the Settlement Administrator stated that the estimated Notice and Administration Costs were approximately $81,091.87, and that the Settlement Administrator had agreed that Notice and Administration Costs would not exceed the amount of $89,400. *See Id.* ¶17.  The Settlement Administrator elaborated therein, however, that the "Not to Exceed" amount was contingent upon certain assumptions, including the maximum number of Post Card Notices being mailed and the maximum number of Settlement Share checks being mailed. *See Id..* ¶17, fn2.

  Following receipt of the rejected/bounced back emails of the Email Notice to approximately 26,000 class members as described in above, the Settlement

_____

to the Attorney General of the United States and the California Attorney General. (Dudinsky Decl. ¶ 4).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Administrator notified the counsel for the Parties that based on the undeliverable rate,

2    both the number of Post Card Notices and the number of checks to be mailed were

3    likely to exceed the originally estimated volumes, resulting in additional cost.

4    Dudinksy Decl. ¶ 17.   Based on the additional mailings required, the Settlement

5    Administrator estimates its total costs at completion will be $117,558.81, subject to

6    change on factors such as change in administration scope.   *See Id*. at ¶ 18.

7        The Settlement Administrator estimated in its Preliminary Declaration that the

8    Settlement Share for each Settlement Class Member would be between $6.91 and $6.99

9    based on Kroll's then estimated and not-to-exceed Notice and Administration Costs, as

10   well as other factors set forth therein, including its then-current understanding of the

11   Settlement Class size.  Dudinsky Decl.  ¶ 19. Based on the Settlement Administrator's

12   updated understanding of the Settlement Class size as well as the current estimated

13   Notice and Administration Costs described herein and in the Dudinsky Declaration, the

14   Settlement Administrator has slightly revised its estimate for the Settlement Share that

15   each Settlement Class Member will receive from $6.91 and $6.99 to $6.83.  *Id.*

16   **IV.   ARGUMENT**

17

18       The Settlement, as preliminarily recognized, was negotiated at arm's length by

19   competent, experienced counsel and would, if approved, provide strong monetary relief

20   to Settlement Class Members, in a prompt and efficient manner.   Accordingly, the

Court should (A) grant final approval of the Settlement and (B) certify the Settlement Class.

### A.    Final Approval of the Settlement is Warranted

In the Preliminary Approval Order, the Court provisionally certified a class consisting of "All Persons who purchased Celebrations Passport in California on or after September 7, 2019 through May 31, 2022 and who incurred at least one automatic renewal charge for Celebrations Passport that was not fully refunded".  (*See* ECF No. 58 at 2; Settlement Agreement § III, ¶¶ 76-77).  The Court should grant Final Approval for the reasons that follow.

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *see also Lane,* 696 F.3d at 818 ("a district court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate, and free of collusion.'") (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998)).  When "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the final approval stage specifically, the court should examine whether there is possible prejudice from "(1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of

adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests." *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989).  Here, a consideration of each factor weighs in favor of finding the Settlement is fair, reasonable, and adequate, warranting Final Approval.

### 1. The Settlement Class Should Be Certified

A class is certifiable for settlement purposes if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met.  *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citations omitted).

### a. The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) the plaintiff's claims are typical of those of the class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a)(1)–(4).  The Settlement Class readily satisfies each of these requirements.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### i.    Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of approximately 111,305 individuals dispersed throughout the state of California and potentially elsewhere.  Joinder of all Settlement Class Members is obviously impractical.  *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is satisfied where at least 40 class members).

Accordingly, the numerosity requirement of Rule 23(a)(1) is satisfied.

### ii.    Commonality

The second requirement is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).   The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

As previously submitted with the Motion for Preliminary Approval, there are several questions of law and fact that are common to the Settlement Class in this case according to Plaintiffs, including, among others; whether Defendant's annual renewal of Celebrations Passport constitutes an "automatic renewal" within the meaning of Cal.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Bus. & Prof. Code § 17601(a); whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); whether Defendant charged Plaintiffs' and Class Members' stored payment method an Automatic Renewal Fee without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code §17602(a)(2); and whether the goods and services provided by Defendant are deemed "unconditional gifts" in accordance with Cal. Bus. & Prof. Code § 17603.  *See Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES (C.D. Cal. Oct. 4, 2017), ECF No. 47 at 8 (finding identical identified common questions of law and fact satisfied Rule 23 commonality analysis in ARL class action); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015)) (commonality satisfied where description and function of autorenewal terms was a common factual question amongst Class Members). Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The

typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

As previously presented to this Court, Plaintiffs' claims are typical of the claims of Settlement Class Members because their claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other class members and are based on the same legal theory according to Plaintiffs. *See, e.g., Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor . . . ."). Plaintiffs and each Settlement Class Member purchased Celebrations Passport in California and paid at least one unrefunded autorenewal fee. (SAC, ¶¶ 27-40).

Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

### iv.    Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) the representatives must not possess interests that are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced, and generally able to

conduct the proposed litigation.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Both components are satisfied because Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class, and because Plaintiffs hired qualified and competent counsel.  Plaintiffs each challenge the same alleged unlawful conduct that each Settlement Class Member challenges, and they each seek the same monetary relief that is sought by each Settlement Class Member. Plaintiffs have retained competent counsel, provided substantial assistance to their counsel in advance of and during the litigation, vigorously prosecuted the case on behalf of the Settlement Class, and assisted their counsel in reaching a proposed resolution to this action on behalf of the Settlement Class. Finally, Plaintiffs' counsel have substantial class action litigation experience, having successfully investigated, prosecuted, and resolved many complex class actions, including prior consumer class actions similar to the instant matter. (*See generally* Hedin Decl.)

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### b.  The Requirements of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiffs seek certification under Rule 23(b)(3), Plaintiffs must additionally show (1) that common questions of law or fact predominate over questions affecting only individual members of the class (predominance); and (2) that a class

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    action is superior to other available methods of resolving the controversy (superiority).

2    Fed. R. Civ. P. 23(b)(3).[8]  Both requirements are easily satisfied here.

3    **<u>Common Questions Predominate</u>**

4    The predominance requirement of Rule 23(b)(3) is satisfied because common

5    questions comprise a substantial aspect of the case and can be resolved for all

6    Settlement Class Members in a single adjudication.  *See Tyson Foods, Inc. v.*

7    *Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in

8    the action are common to the class and can be said to predominate, the action may be

9    considered proper under Rule 23(b)(3) . . .'" (citation omitted)); *True Health*

10   *Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923, 932 (9th Cir. 2018); *accord*

11   *Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is

12   satisfied "if resolution of some of the legal or factual questions that qualify each class

13   member's case as a genuine controversy can be achieved through generalized proof,

14   and if these particular issues are more substantial than the issues subject only to

15   individualized proof").

16

17

18   _____

19   [8] Because the Court is called upon to assess the requirements of Rule 23 in the context of a settlement, the Court need not consider whether any manageability problems would arise at trial if the Settlement Class is certified.  *Amchem*, 521 U.S. at 620

20   ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

27

1    The Settlement Class Members uniformly received the same disclosures via the

2    sales channels they used to purchase Celebrations Passport – desktop, mobile, and

3    telephone – which Plaintiffs submit were non-compliant with the ARL.  Thus, the

4    central questions in this case–whether such disclosures were presented in a clear and

5    conspicuous manner under Cal. Bus. & Prof. Code § 17602(a)(l) and whether

6    Defendant charged Plaintiffs' and Settlement Class Members' stored payment method

7    an Automatic Renewal Fee without first obtaining their affirmative consent to the

8    automatic renewal offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2) –

9    are each capable of resolution by looking at the Defendant's records according to the

10   Plaintiffs.  Because there are no apparent issues requiring individualized proof, the

11   predominance requirement is satisfied for purposes of Final Approval.

12   **Class Treatment of Plaintiffs' Claims is Superior**

13   Rule 23(b)(3) also requires that a class action be superior to other available

14   methods for adjudicating the controversy.  It is axiomatic that cases involving "multiple

15   claims for relatively small individual sums" are well suited to class treatment.  *Local*

16   *Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d

17   1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

18   1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the

19   cost of litigating on an individual basis, this factor weighs in favor of class

20   certification."); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory

28

1  Committee had dominantly in mind vindication of the rights of groups of people who

2  individually would be without effective strength to bring their opponents into court at

3  all").

4      A class action is the superior method for the fair and efficient adjudication of

5  these claims.  Plaintiffs' claims are shared by approximately 111,302 other consumers,

6  each of whom paid at least one unrefunded fee to renew Celebrations Passport

7  receiving the same notification of the Celebrations Programs autorenewal terms which

8  Plaintiffs submit are non-compliant with California's ARL.  Resolution of all claims

9  of all Settlement Class Members in a single proceeding promotes judicial efficiency

10  and avoids inconsistent decisions.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S.

11  147, 155 (1982) (noting "the class-action device saves the resources of both the courts

12  and the parties by permitting an issue potentially affecting every class member to be

13  litigated in an economical fashion under Rule 23").  Further, the damages available

14  under the ARL, which is limited to the cost of the goods purchased insofar as the goods

15  are deemed unconditional gifts, is small in comparison to the costs of litigation.  As a

16  result, it is unlikely any Settlement Class Member would be willing or able to pursue

17  relief on an individual basis.

18      Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

19

20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

### 2.  The Settlement is Appropriate for Final Approval

### a.  The Settlement is Fair, Reasonable, and Adequate

3

4

5

6

7

8

9

10

11

The Court previously conducted a preliminary assessment of the subject Settlement and determined "that the proposed Settlement of $1,200,00.00 is fair, reasonable and adequate[.]" (ECF No. 58 at 1-2).  Among the most important factors relevant to the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.  Still, settlement is necessarily "an amalgam of delicate balancing, gross approximations and rough justice," *Officers for Justice,* 688 F.2d at 625, and thus "the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane,* 696 F.3d at 819.

12

13

14

15

16

Here, each Settlement Class Member will receive approximately $6.83, an amount that is fair, adequate, and reasonable because it fully comports with the ranges articulated in *Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936-JLS-KES (C.D. Cal. Apr. 14, 2016), which involved a finally approved ARL class action before Judge Stanton.[9]  In *Kissel*, the court approved a settlement that created a Settlement Fund in

17

18

19

20

---

[9] This final anticipated amount varies by a few cents from the $6.91-$6.93 cents the Settlement Administrator anticipated would be recovered at the preliminary approval stage.  As set forth above, this *de minimis* variance is attributable to the higher than expected bounce back rate of Email Notice, the primary means of notice under the Settlement Agreement which was selected because it was the most cost effective means of providing primary notice.  In order to ensure sufficient notice to the Settlement Class, Post Card Notice was provided and paper checks will be mailed to those Settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   the amount of $400,000 to pay settlement shares to 32,200 class members.  The product

2   in *Kissel* was an online computer backup service, which renewed monthly under three

3   different subscription plans and cost between $5.00 and $13.99 per month.  Ultimately,

4   the settlement yielded a recovery of $7.00-$7.50 per class member.  The court noted

5   that assessing the recovery was not "straightforward" because of potential disputes

6   about the recoverability of fees.  *Kissel*, No. 8:15-cv-01936-JLS-KES (C.D. Cal. Oct.

7   4, 2017), ECF No. 47 at 15-16.  Similar disputes exist here, as Defendant would assert

8   that the Settlement Class Members were on notice of charges, including at the time of

9   purchase and/or after the first renewal and continued to accept the benefits Celebrations

10  Passport.  (ECF No. 47 at 11).

11      In *Kissel* the court compared the value of the settlement to the class at three

12  levels, a high estimate which assumed recovery of all renewal fees paid by all class

13  members during the class period, a mid-range estimate which assumed recovery of all

14  fees after the first renewal period, and a low range which considered as recoverable

15  damages only the fees paid in the first month of the first autorenewal period.  *Id.* The

16  *Kissel* court found that "[u]sing the highest estimate, and net settlement amount of

17  $247,500, the proposed settlement fund represents approximately 3.7% of Defendant's

18  maximum potential liability. For the mid-range estimate, the settlement award

19

20  Class Members for whom all emails bounced back, which required an increase in
    Settlement Administration costs.

represents approximately 10.3% of the potential liability of $2,396,162. And using the lowest estimate, the settlement represents 93% of the maximum liability." Following the same analysis, assuming approval of a $300,000 Attorneys' Fee Award and Service Awards of $7,500 total, and that the Settlement Administrator's fees were the highest estimated at $117,459, the net Settlement Fund to be distributed to Settlement Class Members would be $775,041. At the low, middle, and high ranges of prospective recovery, this equates to a recovery of **5.24%, 13.98%, and 20.97%,** respectively.[10]

Regarding the settlement's fairness the *Kissel* court stated as follows:

A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted). These various percentages fall in the range of prior approved settlements in class actions. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (approving settlement representing 50% of the first month renewal fees and nine percent of all renewal fees); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-350, 2013 WL 6114379 at *4 (November 20, 2013) (approving settlement recovery of 1.8% or 16% for breach of contract and unfair competition claims related to online fees).

---

[10] As set forth in the Hedin Declaration at paragraph 22, Plaintiffs best estimate of the potential liability Defendant faced had the Proposed Settlement not been reached as $5,544,000, which assumes 1.5 automatic renewals per Settlement Class Member at approximately $33.00 per renewal, which includes sales tax. This would be the "middle range" under the *Kissel* analysis. Defendant would have certainly argued that no refunds were due to any putative class members. And, if only a single renewal was compensable because the customer was on notice of the automatic renewal of Celebrations Passport no later than after incurring the first renewal charge the anticipated damages would be $3,696,000. This would be the low range.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Here, the range of recovery percentages underpinning the Settlement is squarely

2    within the heartland of reasonableness amongst comparable recent California ARL

3    settlements relied upon in *Kissel*, and this Court, like the court in *Kissel*, should find

4    this factor favors final approval.  Notably, on absolute terms, the Settlement, which

5    provides an all-cash benefit with direct payments made to Settlement Class Members,

6    is better than settlements involving similar ARL claims that have involved the issuance

7    of "credits" to have involved a claims process or both.  *See e.g.  Davis v. Birchbox*

8    *Inc.,* No. 3:15-cv-00498-BEN-BGS (S.D. Cal., Mar. 28, 2016), ECF No. 43 at 1 (class

9    members received a $10-$20 credit for use on defendant's goods and subscriptions);

10   *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD (N.D. Cal., Feb. 3, 2017), ECF

11   No. 114, at 2 (approving settlement where auto-renewal class members received $11.50

12   in "value certificates" and could only receive cash upon filing a claim form).

13   Accordingly, the first and most important factor weighs heavily in favor of

14   finding the Settlement fair, reasonable and adequate.  *See In re Tableware Antitrust*

15   *Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (settlement should be

16   preliminarily approved if it is free of "obvious deficiencies" and generally falls within

17   the range of "possible" approval.).

18           **b. Continued Litigation Would Be Complex, Costly, and Lengthy**

19

20   Final approval is also favored where settlement allows the class to avoid the

inherent risk, complexity, time, and cost associated with continued litigation.  *See Nat'l*

33

1  *Rural Telecommc'ns Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)

2  ("The Court shall consider the vagaries of litigation and compare the significance of

3  immediate recovery by way of the compromise to the mere possibility of relief in the

4  future, after protracted and expensive litigation.").

5       This would be lengthy and very expensive litigation if it were to continue,

6  involving extensive motion practice, including, *inter alia*, motions to dismiss and to

7  compel arbitration, a motion for class certification (and possibly a motion for

8  decertification and an interlocutory appeal pursuant to Federal Rule of Civil Procedure

9  23(f)), motions for summary judgment and various pretrial motions, as well as the

10  retention of experts, preparation of expert reports, and conducting expert depositions.

11  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a

12  well-deserved reputation as being most complex."). The case would not go to trial until

13  at least September 2025. (ECF No. 53). At trial Defendant would have likely mounted

14  a vigorous defense at trial and beyond, raised due process challenges to any verdict at

15  all stages. And even if the Settlement Class recovered a judgment at trial in excess of

16  the $1.2 million provided by the Settlement, post-trial motions and the appellate

17  process would deprive them of any recovery for years, and possibly forever in the event

18  of a reversal.

19       Rather than embarking on years of protracted and uncertain litigation, Plaintiffs

20  and their counsel negotiated a Settlement that provides immediate, certain, and

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*meaningful* relief to all Settlement Class Members.  *See DIRECTV, Inc.*, 221 F.R.D. at 526.  Accordingly, this factor weighs in favor of finding the Settlement fair, reasonable and adequate.  *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### c. Class Counsel is Competent, Well-Informed and Experienced, and Strongly Endorse the Settlement

Courts may also examine the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate.  *Officers for Justice,* 688 F.2d at 625.  In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation.  *Id.*

Plaintiffs' counsel and proposed Class Counsel, Frank S. Hedin of Hedin LLP, has extensive experience in similar complex class action litigation, including serving as class counsel in similar consumer class actions concerning the commercial practices of large entities like Defendant. (*See generally* Hedin Decl.).  Mr. Hedin strongly endorses this Settlement, which was negotiated at arm's length before an experienced mediator.  (*See id.*)

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate.  *See, e.g., Smith*, 2013 WL 163293, at *3 (given their "experience and understanding of the strengths and weaknesses of cases such as this,

1    class counsel's endorsement weighs in favor of final approval."); *Bellinghausen v.*

2    *Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled

3    to, and should, rely upon the judgment of experienced counsel for the parties." (citation

4    omitted)).

5                    **d. The Settlement is the Product of a Thorough Investigation,**
                         **Efficiently Prosecuted Litigation, and Arm's-Length**
6                        **Negotiations**

7            The stage of the proceedings and the amount of discovery that has been

8    completed at the time a proposed settlement is reached also bears on whether the

9    settlement is fair, reasonable, and adequate. *Lane,* 696 F.3d at 819.

10           The proposed Settlement was reached after the informal exchange of discovery

11    and following Plaintiffs' serving formal discovery requests on Defendant concerning

12    every aspect of the automatic renewal of Celebrations Passport – the means and

13    methods that Defendant used to disclose Celebrations Passport's terms, the various

14    sales channels Defendant used to sell Celebrations Passport, Defendant's policies for

15    notifying customers about renewal, and the number of California consumers who

16    purchased Celebrations Passport during the class period.  In addition, Plaintiffs'

17    counsel conducted a thorough prefiling investigation, a continuing post-filing

18    investigation concerning every aspect of this case, and conferrals with Defendant's

19    counsel.  Armed with this information, Plaintiffs and their counsel had "a clear view

20    of the strengths and weaknesses" of the case and were in a strong position to negotiate

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  a fair, reasonable, and adequate settlement on behalf of the Settlement Class, at

2  mediation and beyond. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745

3  (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

4      Mediation was hard-fought and lasted an entire day. Prior to the mediation the

5  parties each provided the mediator with confidential position statements.  The initial

6  proposed Settlement was only finalized after several more weeks of post-mediation

7  negotiations between the Parties.  And prior to finalizing the Settlement Agreement,

8  Counsel confirmed the critical information related the size of the Settlement Class with

9  confirmatory discovery from Defendant. Because the Settlement is the product of arm's

10  length negotiations between experienced counsel with the benefit of confirmatory

11  discovery the second factor also weighs in favor of finding the proposed Settlement

12  fair, reasonable, and adequate. *See Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th

13  Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-

14  collusive, negotiated resolution."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,

15  2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness

16  is usually involved if the settlement is recommended by class counsel after arm's-

17  length bargaining."); 4 *Newberg* § 11.41 (presumption of fairness exists where a

18  proposed class settlement "is the product of arm's length negotiations, sufficient

19

20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  discovery has been taken to allow the parties and the court to act intelligently, and

2  counsel involved are competent and experienced.").[11]

3      Accordingly, this factor also weighs in favor of finding the Settlement fair,

4  reasonable and adequate.

5  **V.  CONCLUSION**

6

7      For the foregoing reasons, Plaintiffs respectfully request that the Court: (A) grant

8  Final Approval of the Settlement in the form of the proposed Final Approval Order and

   Judgment filed herewith, and (B) certify the Settlement Class.

9

10 Dated:  January 24, 2025              Respectfully submitted,

                                         **HEDIN LLP**

11                                       By: s/ Frank S. Hedin

12                                       FRANK S. HEDIN (SBN 291289)
                                         535 Mission Street, 14th Floor
13                                       San Francisco, CA 94105
                                         Telephone:  (305) 357-2107
14                                       Facsimile:    (305) 200-8801
                                         E-Mail:        fhedin@hedinllp.com

15                                       *Counsel for Plaintiffs and*
                                         *the Proposed Settlement Class*
16

17

18 [11]   *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL
   3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator
19 in the settlement process confirms that the settlement is non-collusive."); *In re Indep.*
   *Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29,
20 2003) ("the fact that the settlement was reached after exhaustive arm's-length
   negotiations, with the assistance of a private mediator experienced in complex
   litigation, is further proof that it is fair and reasonable").

                                         38