Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSIBLE "SKYLER" FOSTER; MARIE SCOTT; and KRISTA BAUMBACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY & DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE,<br><br>Defendant. | 2:23−cv−07441−AB−PVC<br><br>**DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

# DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am a partner at Hedin LLP and counsel of record for Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement filed concurrently.

2. Prior to initiating any action against Defendants, my firm and I conducted a comprehensive pre-filing investigation concerning the specific factual and legal issues underlying Plaintiffs' claims. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business and its practices with respect to the sales, presentation of autorenewal terms, and autorenewal of its Celebrations Passport at various times and across various sales channels and brands;

- Interviewing numerous California consumers who purchased the Celebrations Passport from the Defendant during the statutory period, including interviewing them about their process of purchasing the Celebrations Passport, any disclosures they received or agreed to during the purchase process, and any notices of renewals they subsequently received;

- Collecting and reviewing documents from numerous individuals who purchased the Celebrations Passport, including documents spanning multiple years;

- Researching and analyzing Defendant's subscription terms, renewal procedures, and renewal notice procedures for its Celebrations Passport;

- Analyzing versions of Defendant's websites across different devices, Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period, including archived versions of webpages;

- Researching the relevant law and assessing the merits of a potential claim under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq., against Defendant and defenses that Defendant might assert; and

- Researching the applicable limitation period for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et. seq.* and other potential defenses.

3. As a result of this thorough pre-filing investigation, Class Counsel was able to develop a viable theory of liability for an ARL claim against Defendant and prepare a thorough complaint against Defendant.

4. On April 20, 2023, my firm filed an initial complaint on behalf of Plaintiff Damon Tate, in the Superior Court of Los Angeles County styled *Tate v. 800-Flowers, Inc,* alleging Defendant violated California's ARL in connection with its Celebrations Passport product. On June 1, 2023, after conducting additional investigation and interviewing more of Defendant's customers, my firm filed an amended complaint, adding Plaintiffs Natasha Paracha, Ian Chen, Brittany Mansfield, and Alba Vargas.

1  5. Defendant removed the case to the Central District of California, causing the case to be re-captioned as 2:23-cv-04340-AB-PVC. Defendant thereafter filed a motion to compel plaintiffs to arbitration and alternatively moved to dismiss the claims of four of the five representative plaintiffs for lack of standing. (*Tate*, ECF No. 16).

6. Our investigation continued while the motion to compel arbitration and dismiss filed in the *Tate* action was pending.

7. The *Tate* Plaintiffs elected to dismiss their action without prejudice on September 6, 2023. (*Tate*, ECF No. 22).

8. On September 7, 2023, plaintiffs Tessible "Skyler" Foster, Anayancy Paiz, Susan Finkbeiner, and Larissa Rapadas filed the initial class action complaint in this Action, which, like the *Tate* action, alleged that Defendant violated the ARL in connection with its Celebrations Passport product. (*See* ECF No. 1). On November 14, 2023, Defendant filed a motion to compel Ms. Paiz and Ms. Rapadas to arbitrate their claims, arguing that the desktop computer purchase interface Ms. Paiz and Ms. Rapadas used to buy Celebrations Passport bound them to arbitrate. (ECF No. 14). Defendant also sought a stay of the case pending final resolution of the arbitrations and, in the same motion, moved to dismiss Ms. Finkbeiner for lack of standing. (*Id.*)

9. On December 5, 2023, Plaintiffs filed a first amended complaint.

3
DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  (ECF No. 20).  The first amended complaint retained plaintiffs Foster, Paiz, and Rapadas as representative plaintiffs, added plaintiffs Marie Scott and Krista Baumbach, and added as representative plaintiffs Kimberly Moore Keller and Latricia Anderson Thompson.  (*Id.*)

10.  On January 18, 2024, Defendant filed a motion to compel to arbitration five of the seven representative plaintiffs—Anayancy Paiz, Larissa Rapadas, Kimberly Moore Keller, Latricia Anderson Thompson, and Marie Scott. Defendant also sought a stay of the case pending final resolution of the arbitrations, and separately moved to dismiss Kimberly Moore Keller and Latricia Anderson Thompson for lack of standing.  (ECF No. 27).  With respect to the motion to compel arbitration, Defendant renewed its argument that the desktop computer and Android mobile platform channels Ms. Paiz, Ms. Rapadas, Ms. Moore Keller, Ms. Thompson, and Ms. Scott used to purchase Celebrations Passport clearly and conspicuously presented an agreement to arbitrate.  (*Id.*).  Contemporaneously, Defendant answered the first amended complaint as to plaintiffs Foster and Baumbach. (ECF No. 28).

11.  The Parties extensively conferred on this second motion to compel arbitration. Based on the conferral, and my firm's ongoing investigation, plaintiffs sought leave to file the operative second amended complaint, which brought a claim on behalf of representative Plaintiffs Foster, Scott, and Baumbach only, and that

4
DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  alleged Defendant violated California's ARL through its telephone sales channel in

2  addition to its violation of the ARL vis-à-vis the sales of Celebrations Passport

3  completed via the internet. (ECF No. 35).

4      12.    The Court granted Plaintiffs leave to file the operative second amended

5  complaint, which Plaintiffs filed on April 12, 2024.[1] (ECF No. 45).

6      13.    On May 10, 2024, Defendant filed a third motion to compel arbitration

7  as to Plaintiffs Scott and Baumbach, to stay the case pending the outcome of the

8  arbitration, and alternatively to dismiss Ms. Baumbach for lack of standing. (ECF

9  No. 46).

10     14.    Plaintiffs served requests for production and interrogatories on May

11 28, 2024.

12     15.    To respond to Defendant's Motion to Compel Arbitration as to Ms.

13 Baumbach, Plaintiffs engaged a web design expert to evaluate Defendant's claim

14 that the mobile flow which Ms. Baumbach used to purchase Celebrations Passport

15 put purchasers on inquiry notice of the site Terms and Conditions which contained

16 an arbitration provision. Additionally, Plaintiffs sought, and obtained leave from

17 the Court to postpone the hearing on the Motion to Compel Arbitration to conduct

18 discovery on the issues raised in the motion, specifically on the existence of a

19

20

---

[1] The SAC also removed the FAL claim and proceeded with the UCL claim only.

5

DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1   recording of Ms. Scott purchasing Celebrations Passport via Defendant's telephone
2   order platform, Defendant's data retention policy for recordings of phone calls
3   which Defendant claimed it did not have, and the online purchase flow used by Ms.
4   Baumbach to purchase Celebrations Passport.

5   16.   The Parties' negotiations about the scope and conduct of discovery in
6   early-June led to the first settlement discussions in the case. By mid-June the Parties
7   had agreed to engage a mediator and to complete mediation by September 1, 2024.
8   Plaintiffs at all times conditioned their participation in the mediation on receiving
9   information from Defendant concerning the number of customers who used the
10  various sales channels used by the representative plaintiffs—online, mobile, and 1-
11  800 hotline—and the number of non-refunded autorenewals corresponding to each.

12  17.   To facilitate the mediation, and with the aim of resolving the case in
13  the most efficient manner possible, the Parties stipulated to extend all deadlines
14  pertaining to the pending motion to compel arbitration by 90 days, and all other case
15  management deadlines, including trial, by 180 days. (ECF No. 52). The Court
16  accepted and entered the stipulation on June 20, 2024. (ECF No. 53).

17  18.   Defendant timely provided the required pre-mediation information,
18  and on July 24, 2024 the parties attended a full day mediation with Jill Sperber, Esq.
19  of Judicate West. Ms. Sperber was selected because of her extensive experience in
20

1  mediating and successfully resolving complex class actions, including consumer
2  class actions.

3      19.    Prior to the mediation, the Parties provided Ms. Sperber with
4  mediation position statements on a confidential basis. Plaintiffs' statement set forth
5  their evaluation of the case, including their prospects for prevailing on the pending
6  motion to compel arbitration in light of consulting with their expert, their
7  assessment of prevailing on the motion to dismiss Ms. Baumbach for lack of
8  standing, and the high likelihood of certifying a class. Armed with the number of
9  customers and number of renewals, Plaintiffs were further able to make a cogent,
10 good faith assessment of the range of potential damages which informed the
11 settlement negotiations.

12     20.    The mediation concluded with the Settlement, which was
13 provisionally approved by this Court, and the Parties' execution of a binding term
14 sheet.

15     21.    The resulting $1,200,000, non-reversionary Settlement secures a very
16 strong result for the estimated 111,305 California consumers who are members of
17 the Settlement Class. Each Settlement Class Member who has not opted out will
18 automatically receive, without the need to file a claim form, an estimated $6.83,
19 which is an appropriate figure considering that the Settlement Class Members are
20 receiving this value over the benefits received from purchasing Celebrations

1  Passport. Settlement Shares shall be paid by default to a Zelle account linked to the
2  email address the Settlement Class Member most recently used to renew
3  Celebrations Passport, or, if Zelle is unavailable, via an electronic MasterCard gift
4  card sent to that same email address. On the Settlement Class Member's election on
5  the Settlement Website, a Settlement Share may be paid by paper check.

6      22.    Plaintiffs estimated the potential liability Defendant faced had the
7  Proposed Settlement not been reached as $5,544,000, which assumes 1.5 automatic
8  renewals per Settlement Class Member at approximately $33.00 per renewal, which
9  includes sales tax.[2] Defendant would have certainly argued that no refunds were
10 due to any putative class members. And, if only a single renewal was compensable
11 because the customer was on notice of the automatic renewal of Celebrations
12 Passport no later than after incurring the first renewal charge the anticipated
13 damages would be $3,696,000.

14     23.    In the weeks following the mediation, the Parties negotiated and
15 finalized the Settlement Agreement, attached as **Exhibit 1**, and jointly interviewed
16 and selected the Settlement Administrator—Kroll Settlement Administration LLC

---

[2] For the purposes of estimating liability and the strength of recovery, the undersigned has assumed one email address per Settlement Class Member linked to a Celebrations Passport account, and these assumptions were based on figures prior to the Settlement Administrator's deduplication. The Class List initially provided contained approximately 112,000 email addresses, which the Settlement Administrator concluded corresponded to 111,305 Settlement Class Members.

DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

("Kroll"). The Court accepted the Parties' proposal and appointed Kroll as Settlement Administrator to perform all the duties set forth in the Settlement Agreement. (ECF No. 58). The Class Notice, as provisionally approved, was followed, and notices are expected to have reached 110,479 of the 111,305 persons to whom the notice was sent, which equates to a reach rate of the direct notice of approximately 99.3%. A true and correct copy of Kroll's administration of the Class Notice and Settlement is attached hereto **as Exhibit 2**.[3] As explained therein, Kroll utilized the list of emails provided by Defendant to carry out the Class Notice.

24. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator. Our firm worked extensively with defense counsel, and where needed, Kroll, to finalize and memorialize the agreement into a formal class action Settlement Agreement, including proposed class notice documents. That process included rounds of revisions.

25. Plaintiffs and Class Counsel recognize that, despite our belief in the

---

[3] As set forth in Exhibit 2, Kroll was required to exceed to $89,400 allocated for Settlement Administration because of a significantly higher-than-expected Email Notice bounce back rate. This ultimately resulted in a de minimis reduction in the Settlement Shares from $6.90-$6.99 to $6.83.

9
DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain in light of the significant risks of non-recovery posed by continued litigation.

26. Indeed, had this litigation continued, Plaintiffs and Settlement Class Members would have faced several significant risks of total non-recovery, on questions concerning the merits of the claims and Plaintiffs' ability to certify a class.

27. In particular, from the outset of the case, Plaintiffs and Class Counsel recognized that the case presented a substantial risk pertaining to whether Defendant could compel Plaintiffs to arbitration. As described above, our firm persisted in pursuing the case through multiple motions to compel, and several iterations of the Complaint, consistently refining the claims through ongoing investigation.

28. Additionally, absent the Settlement, Defendant (through its highly experienced attorneys) indicated that it would have defended against Plaintiffs' claims by arguing that Defendant complied with requirements of California's ARL or substantially complied in good faith per the ARL's good faith defense, that Plaintiffs and the class members waived their right to seek relief by making voluntary repeated payments, and that a class could not be certified because of individualized issues such as whether class members assented to arbitration and whether each class member knew about the Celebrations Passport billing terms

when purchasing Celebrations Passport. Defendant would have mounted a vigorous defense at trial and beyond, including in any appeal from an adverse judgment or an order certifying a class, and that Defendant would argue—in both the trial and appellate courts—for a reduction of any class-wide damages award on substantive due process grounds.

29. Following implementation of the Class Notice, my firm prepared Plaintiffs' Motion for Final Approval, which is being filed contemporaneously herewith.

**FAIRNESS & ADEQUACY OF THE SETTLEMENT**

30. Plaintiffs and Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

31. In this litigation, Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, Plaintiffs worked with proposed Class Counsel to detail their subscription and purchase history, including how they subscribed to the Celebrations Passport and their knowledge of Celebrations Passport's terms and conditions. Each of the Plaintiffs searched their bank records, product order histories with Defendant and its brands, and their communications with Defendant. Moreover, Plaintiffs worked with Class Counsel to prepare the Complaints, carefully reviewed the Complaints for accuracy, and approved them

before they were filed.

32. Plaintiffs filed this case knowing it would cause their names to be associated with litigation. Plaintiffs kept in regular contact with Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement and were prepared to testify at deposition and trial, if necessary.

33. I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representatives, I do not believe such a strong result could have been achieved.

**HEDIN LLP'S EXPERIENCE**

34. Based in Miami, Florida and San Francisco, California, Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *E.g., Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of state statute, negotiated $52.5 million all-cash non-reversionary settlement for class); *Kokoszki v. Playboy Enterpises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.) (class counsel in action alleging sale of *Playboy* subscribers' personal information in violation of the

Michigan PPPA, obtained $3.8 million non-reversionary class settlement); *Rivera et al. v. Google,* LLC, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), successfully defeated defendant's motion to compel arbitration and obtained $16 million non-reversionary class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614-MGC (S.D. Fla.) (class counsel in action alleging the improper assessment of overdraft fees when accounts were not actually overdrawn, obtained $4.95 million class settlement); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in action alleging the improper assessment of overdraft fees for "non-recurring" debit card transactions misclassified as "recurring" debit card transactions, obtained $2.7 million class settlement). Over the past five years alone, my firm has recovered over $400 million in all-cash relief for the classes we have

1 | represented.  *See* Firm Resume of Hedin LLP, a true and accurate copy of which is

2 | attached hereto as **Exhibit 3.**

3 |     I declare under penalty of perjury that the above and foregoing is true and

4 | accurate. Executed this 24th day of January 2025 in Miami, Florida.

                                                */s Frank S. Hedin*
                                                 Frank S. Hedin

DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT